CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

02/21/2019

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | | |
|---|---|---|
| CFA INSTITUTE, a Virginia Non-Stock Corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19CV00012 |
| AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES, a Texas Corporation; AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES, a Texas Corporation, D/B/A NATIONAL ASSOCIATION OF PLAN ADVISORS; and AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES, a Texas Corporation, D/B/A AMERICAN RETIREMENT ASSOCIATION, | § § § § § § § § § § § § | |
| Defendants. | § § | |

### COMPLAINT

Plaintiff CFA Institute ("CFA Institute" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint for Trademark Infringement, Unfair Competition, and Accounting against Defendants American Society of Pension Professionals & Actuaries ("ASPPA"), ASPPA d/b/a National Association of Plan Advisors ("NAPA"), and ASPPA d/b/a American Retirement Association ("ARA") (ASPPA, NAPA, and ARA, collectively, "Defendants"), and avers as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1. CFA Institute is a Virginia non-stock corporation located and doing business at 915 East High Street, Charlottesville, Virginia 22902.

2. Upon information and belief, ASPPA is a Texas non-profit corporation, registered to do business in the Commonwealth of Virginia, with a principal place of business at 4245 North Fairfax Drive, Suite 750, Arlington, Virginia 22203.

3. Upon information and belief, NAPA is a "doing business as" ("d/b/a") name for ASPPA, not a separate legal entity, with a principal place of business at 4245 North Fairfax Drive, Suite 750, Arlington, Virginia 22203. Defendants promote NAPA as a sister organization of ASPPA.

4. Upon information and belief, ARA is another d/b/a for ASPPA, not a separate legal entity, with a principal place of business at 4245 North Fairfax Drive, Suite 750, Arlington, Virginia 22203. Defendants promote ARA as the parent organization of ASPPA and NAPA.

5. This is an action for trademark infringement and unfair competition under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051, *et seq*., accounting under 15 U.S.C. § 1117, the Commonwealth of Virginia trademark infringement statute, Va. Code § 59.1-92.12, and the common law of the Commonwealth of Virginia.

6. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a) and (b), because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

7. The Court has supplemental jurisdiction over the claims of CFA Institute arising under the laws of the Commonwealth of Virginia pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the claims of CFA Institute under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

- 2 -

8. The Court has personal jurisdiction over the Defendants consistent with the principles underlying the United States Constitution and the Commonwealth of Virginia because, among other things, Defendants are located and transact business in Virginia.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are located in Virginia, upon information and belief transact business in Albemarle County, Virginia, and have committed the tort of trademark infringement in Albemarle County, Virginia, as well as outside of Virginia, causing injury to CFA Institute in Albemarle County, Virginia, where a substantial part of the events or omissions giving rise to the claims occurred and are occurring.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS
## CFA INSTITUTE'S VALUABLE RIGHTS

10. CFA Institute is an internationally renowned global, not-for-profit association of investment professionals with over 147,000 members in 150 countries worldwide and 155 local member societies in seventy-two countries. CFA Institute is the world's largest and best-known association of investment professionals. In connection therewith, CFA Institute uses in interstate commerce and owns the well-known and distinctive trademarks CFA, CFA INSTITUTE, and CHARTERED FINANCIAL ANALYST, and variations thereof (the "CFA Trademarks"), including several United States trademark registrations. Since as early as 1962, CFA Institute and its predecessors-in-interest have continuously used the CFA Trademarks in interstate commerce.

11. CFA Institute's predecessor-in-interest coined the designation "Chartered Financial Analyst" or "CFA" and began using it to identify its certification program to its members and those belonging to its sister organization. CFA Institute has all the rights, benefits,

and interests of its predecessors in connection with and arising out of the CFA Trademarks and associated certification program, including all intellectual property rights therein.

12. CFA Institute owns at least nine United States trademark registrations for the CFA Trademarks, with a date of first use at least as early as 1962.

13. CFA Institute certifies the financial analysis services of others (the "Certification Services") under its CFA CHARTERED FINANCIAL ANALYST & Design Mark (U.S. Reg. No. 2661114) (the "Certification Mark"), and, separate and distinct from and without providing the financial analysis services that it certifies in others, offers educational, publication, and association goods and services "in the field of financial analysis" (collectively hereinafter, together with the Certification Services, the "CFA Institute Goods & Services") under its marks C.F.A. (U.S. Reg. No. 935504), CFA (U.S. Reg. No. 2493899), CFA (U.S. Reg. No. 2495459), CFA INSTITUTE (U.S. Reg. No. 3202615), CFA INSTITUTE & Design (U.S. Reg. No. 4296372), CFA INSTITUTE (U.S. Reg. No. 4389314), and CFA INSTITUTE (U.S. Reg. No. 4768863) (collectively hereinafter, together with the CFA Certification Mark, the "CFA Marks").

14. CFA Institute has duly and properly registered the CFA Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register.

15. CFA Institute filed its federal trademark application for C.F.A. for "association services—namely, the promotion of interest and professional standards in the field of financial analysts" in International Class 42, on August 14, 1970, with a claimed date of first use of September 15, 1963. This registration issued on June 6, 1972 as Registration No. 935504. This registration was deemed incontestable by the USPTO on September 19, 1977. A true and correct

copy of this incontestable United States Trademark Registration No. 935504 is attached hereto as **Exhibit 1**.

16.     CFA Institute filed its federal trademark application for CFA for "educational services, namely arranging, conducting and providing courses of instruction, workshops, seminars, and conferences in the field of financial analysis and distributing course materials in connection therewith" in International Class 41, on August 30, 1999, with a claimed date of first use of December 31, 1962.  This registration issued on October 2, 2001 as Registration No. 2493899.  This registration was deemed incontestable by the USPTO on October 16, 2007.  A true and correct copy of this incontestable United States Trademark Registration No. 2493899 is attached hereto as **Exhibit 2**.

17.     CFA Institute filed its federal trademark application for CFA for "printed publications in the field of financial analysis and in support of the interests of financial analysts" in International Class 16, on August 30, 1999, with a claimed date of first use of December 31, 1965.   This registration issued on October 9, 2001 as Registration No. 2495459.   This registration was deemed incontestable by the USPTO on October 28, 2008.  A true and correct copy of this incontestable United States Trademark Registration No. 2495459 is attached hereto as **Exhibit 3**.

18.     CFA Institute filed its federal certification mark application for CFA CHARTERED FINANCIAL ANALYST & Design for "financial analysis services" in Class B, on August 30, 1999, with a claimed date of first use of May 1, 1999.  This registration issued on December 17, 2002 as Registration No. 2661114.  This registration was deemed incontestable by the USPTO on September 3, 2008.  A true and correct copy of this incontestable United States Trademark Registration No. 2661114 is attached hereto as **Exhibit 4**.

19.    CFA Institute filed its federal trademark application for CFA INSTITUTE for "printed publications, namely, newsletters, brochures, books, digest books, and monographs in the fields of investment management and financial analysis and in support of the interests of investment professionals and financial analysts" in International Class 16, "association services, namely, the promotion of professional standards and practices and providing career information in the fields of investment management and financial analysis; promoting the interests of investment professionals and financial analysts" in International Class 35, and "educational services, namely, arranging, conducting, and providing courses of instruction, examinations, workshops, seminars and conferences in the fields of investment management and financial analysis and distributing course materials in connection therewith" in International Class 41, on April 30, 2004, with a claimed date of first use of June 1, 2004.  This registration issued on January 23, 2007 as Registration No. 3202615.  This registration was deemed incontestable by the USPTO on January 25, 2013.  A true and correct copy of this incontestable United States Trademark Registration No. 3202615 is attached hereto as **Exhibit 5**.

20.    CFA Institute filed its federal trademark application for CFA INSTITUTE & Design for "printed publications, namely, newsletters, brochures, books, digest books, and monographs in the fields of investment management and financial analysis and in support of the interests of investment professionals and financial analysts" in International Class 16, "association services, namely, the promotion of professional standards and practices and providing career information in the fields of investment management and financial analysis; promoting the interests of investment professionals and financial analysts" in International Class 35, and "educational services, namely, arranging, conducting, and providing courses of instruction, examinations, workshops, seminars and conferences in the fields of investment

- 6 -

management and financial analysis and distributing course materials in connection therewith" in International Class 41, on November 22, 2011, with a claimed date of first use of May 18, 2012 for International Class 16 and May 7, 2012 for International Classes 35 and 41. This registration issued on February 26, 2013 as Registration No. 4296372. A true and correct copy of this United States Trademark Registration No. 4296372 is attached hereto as **Exhibit 6**.

21.    CFA Institute filed its federal trademark application for CFA INSTITUTE for "downloadable publications, in the nature of newsletters, magazines, books, digest books, and monographs and downloadable video and audio content, all in the fields of investment management and financial analysis" in International Class 9, on June 13, 2012, with a claimed date of first use of June 2004. This registration issued on August 20, 2013 as Registration No. 4389314. A true and correct copy of this United States Trademark Registration No. 4389314 is attached hereto as **Exhibit 7**.

22.    CFA Institute filed its federal trademark application for CFA INSTITUTE for "carry all bags, tote bags and leather goods, namely, briefcases, wallets and handbags" in International Class 18, "apparel, namely, shirts, jackets and headwear" in International Class 25, and "on-line retail store services featuring general consumer merchandise" in International Class 35 on September 24, 2010, with a claimed date of first use of May 7, 2012. This registration issued on July 7, 2015 as Registration No. 4768863. A true and correct copy of this United States Trademark Registration No. 4768863 is attached hereto as **Exhibit 8**.

23.    The federal trademark registrations referenced above and attached hereto as Exhibits 1 through 8 are valid and subsisting, and provide conclusive evidence of the right of CFA Institute to use the CFA Marks in commerce.

- 7 -

24.    The CFA Marks clearly establish that CFA Institute has senior trademark rights in its family of CFA Marks and consequently there is no question of priority of rights, as such priority clearly belongs to CFA Institute.

25.    CFA Institute's United States Trademark Registration Nos. 935504, 2493899, 2495459, 2661114, and 3202615 referenced above and attached hereto as Exhibits 1 through 5, are valid and incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and are therefore conclusive evidence of the validity of the registered marks and of the registration of the marks, of the ownership of the marks by CFA Institute, and of the exclusive right to use the registered marks in commerce by CFA Institute under Section 33 of the Lanham Act, 15 U.S.C. § 1115.  As such, CFA Institute's incontestable federal trademark registrations confer exclusive use of the CFA Marks throughout the United States in connection with the CFA Institute Goods & Services.

26.    CFA Institute has extensively used the CFA Marks and has advertised, promoted, and offered the CFA Institute Goods & Services under the CFA Marks in interstate commerce through various channels of trade.  As a result, the customers and potential customers of CFA Institute, and the public in general have come to know and recognize the CFA Marks as identifying the CFA Institute Goods & Services as goods and services of the highest quality offered by CFA Institute, and associate the CFA Marks with the CFA Institute Goods & Services.  CFA Institute has, thus, built up extensive and invaluable goodwill in connection with the sale of its goods and services under the CFA Marks.

27.    CFA Institute administers the internationally recognized CFA Program.  The CFA Program is a self-study examination system for investment professionals.  The CFA Program sets

- 8 -

the global standard for investment knowledge, standards, and ethics, and is highly esteemed worldwide.

28.    The CFA charter has been internationally benchmarked as comparable in scope and depth to a post-graduate degree. Candidates who seek the CFA charter and membership in CFA Institute must:

> (i)    have at least four years of acceptable work experience as a financial analyst; that is, someone who spends a substantial portion of time collecting, evaluating, or applying financial, economic, and statistical data, as appropriate, in the investment decision-making process;
>
> (ii)    pass a series of three rigorous, six-hour examinations, covering, *inter alia*, the fields of accounting, economics, securities analysis, and asset portfolio management;
>
> (iii)    submit sponsorship forms from other members and a supervisor; and
>
> (iv)    comply at all times with the Code of Ethics and Standards of Professional Conduct of CFA Institute.

29.    Upon successful completion of CFA Institute's registration process and examination, candidates are awarded the right to use the CFA Certification Mark, the professional designation "Chartered Financial Analyst" or "CFA" (collectively hereinafter, the "Professional Designation"), and become eligible for CFA Institute's membership. Members must pay annual dues and sign a professional conduct statement each year.

30.    CFA Institute offers a range of educational programs and services for members, program candidates, investors, employers, institutions, and the press. CFA Institute's mission is to lead the investment profession globally by setting the highest standards of ethics, education,

and professional excellence. To reflect this, CFA Institute has developed a code of ethics and standards of professional conduct for investment professionals. All members of CFA Institute and all CFA Program candidates must adhere to the CFA Institute Code of Ethics and Standards of Professional Conduct.

31. CFA Institute has used the CFA Marks for over fifty years, and has invested significant amounts of time, money, and effort in advertising and promoting the CFA Marks. CFA Institute's advertisements are seen and heard around the world by potential candidates, investment professionals, high-net-worth investors, employers, and regulators. CFA Institute regularly advertises in print and online versions of *The Economist, Bloomberg Markets, Financial Times, Wall Street Journal, Reuters, Business Insider, Globe and Mail*, and other high-profile publications read by investment professionals worldwide. CFA Institute also advertises on social media sites such as Facebook, Twitter, SinaWeibo, LinkedIn, and Google+.

32. CFA Institute's charterholders heavily use and rely upon the CFA Certification Mark and Professional Designation to signify their mastery of the CFA Program and rigorous examinations, adherence to a code of ethics, and specific work and education requirements.

33. The CFA Certification Mark and Professional Designation hold great value for CFA Institute's charterholders.

34. CFA Institute's CFA Marks, including in particular the CFA Certification Mark and Professional Designation, are known as the gold standard of professional credentials within the global investment community.

35. Investors and financial professionals recognize the CFA Marks as the definitive standard for measuring competence and integrity in the fields of portfolio management and investment analysis.

36.     The CFA Marks are well-known among the general public as signifying the CFA Institute Goods & Services, including in particular the Certification Services, and have been well-known since long before Defendants began engaging in the complained of conduct in this Complaint.

## DEFENDANTS' WRONGFUL CONDUCT

37.     Defendants are related organizations for retirement plan professionals.  According to its website, ASPPA is a non-profit professional organization with one of its two "major goals" being "to educate retirement plan professionals."   ASPPA purports to offers its members "extensive educational opportunities," which include "credentialing, certificate and continuing education programs, . . . conferences and networking opportunities in the industry."   Upon information and belief, ASPPA, including through its sister organizations, offers at least nine different credentials.

38.     Upon information and belief, ASPPA was the initial organization, creating the d/b/a NAPA as a sister organization and "professional society" in 2011, and more recently creating the d/b/a ARA as a parent organization and "non-profit professional organization."

39.     Notwithstanding CFA Institute's exclusive and long-standing rights in and to the CFA Marks, and well after 1972, the earliest federal trademark registration date for the CFA Marks, Defendants recently adopted and began using the alleged mark CPFA ("Infringing Mark") in connection with their certification program for professionals in the field of financial planning and retirement, and related educational and administrative services ("Defendants' Goods & Services").   The Infringing Mark is an initialism for "Certified Plan Fiduciary Advisor," which Defendants also spell as "Certified Plan Fiduciary Adviser."

40.     Upon information and belief, Defendants purport to allow a candidate to use the Infringing Mark as a credential/designation after passing an examination consisting of seventy-

five multiple-choice questions. The exam is proctored at specific testing centers in different places of the country and administered over three hours. While there is no specific experience level required, to prepare for the exam, Defendants make available "CPFA Coursework" or "study modules," which include case studies, practice activities, multiple-choice sample questions, and additional learning resources. Defendants have a mandatory program of continuing education for all members who hold the Infringing Mark as a credential/designation.

41.    Upon information and belief, prior to the Infringing Mark, Defendants were already using the credential/designation PFC, which is an initialism for "Plan Financial Consulting," purportedly to certify individuals in this same area. Defendants phased-out the credential/designation PFC following the adoption of the Infringing Mark.

42.    Upon information and belief, prior to the Infringing Mark, Defendants were also already using the credential/designation QPFC, which is an initialism for "Qualified Plan Financial Consultant," purportedly to certify individuals in this same area. Defendants are still offering the credential/designation QPFC, and qualified candidates can opt back-and-forth between the Infringing Mark and QPFC designation.

43.    Prior to CFA Institute's filing of the Complaint in this action, CFA Institute made good faith efforts to resolve this matter amicably with Defendants. Nevertheless, as has become readily apparent, Defendants have no intention of resolving this matter amicably, but instead appear to be moving forward with expanding their business under the Infringing Mark. As a result, CFA Institute has had no choice but to commence this action.

44.    On February 12, 2018, CFA Institute filed a Notice of Opposition against ASPPA's United States Service Mark Application Serial No. 87103390 for the mark NAPA CPFA CERTIFIED PLAN FIDUCIARY ADVISER & Design ("CPFA Application"), in the

United States Trademark Trial and Appeal Board, which Opposition Proceeding was assigned No. 91239462 ("Opposition Proceeding"). ASPPA's CPFA Application had been filed in connection with "educational services, namely, providing seminars and training for professionals in the field of financial planning and retirement," and "developing and administrating standards and procedures for certifying professionals in the field of advising clients and professionals with respect to retirement plan investments."

45. In its Amended Answer filed in the Opposition Proceeding, ASPPA has alleged that CFA Institute does not direct its goods and services *primarily* to professionals in the field of retirement financial planning, whereas ASPPA does so *exclusively*. As such, ASPPA has admitted that, at the least, the Defendants' Goods & Services under the Infringing Mark are a subset of the CFA Institute Goods & Services under the CFA Marks and that CFA Institute is using the CFA Marks in connection with goods and services used by professionals in the field of retirement financial planning.

46. Further, in the Opposition Proceeding, ASPPA has asserted a legally defective counterclaim for cancellation by restriction of the United States Trademark Registrations which comprise the CFA Marks on the faulty premise that CFA Institute does not direct its goods and services primarily to professionals in the field of retirement financial planning, and thus these Registrations should be restricted accordingly. But ASPPA failed to allege, because it cannot allege, that CFA Institute has not used the CFA Marks in the Registrations on the goods or services that ASPPA seeks to restrict.

47. In addition to the erratic spelling of "Advisor" and "Adviser" in the underlying name of the Infringing Mark, Defendants' also use the Infringing Mark inconsistently, sometimes standing alone as CPFA and other times as NAPA CPFA.

- 13 -

48. Defendants use and intend to use the Infringing Mark without the authorization of CFA Institute, thereby confusing consumers as to the source of the goods and services and resulting in damage and detriment to CFA Institute and its reputation and goodwill, and harm to its authorized CFA charterholders.

49. Consumers are likely to believe mistakenly that Defendants are affiliated or connected with, or otherwise authorized or sponsored by CFA Institute. Thus, Defendants' misleading conduct is likely to harm consumers.

50. Defendants' use of the Infringing Mark is nearly identical to and confusingly similar to CFA Institute's CFA Marks in appearance, sound, meaning, and commercial impression.

51. The Defendants' Goods & Services are identical and closely related to the CFA Institute Goods & Services, and target CFA Institute's consumers, as well as those seeking the services of its authorized CFA charterholders, including hiring professionals and the ultimate end-user consumer. Both the CFA Marks and the Infringing Mark are used in connection with goods and services used by professionals in the field of retirement financial planning. Indeed, Defendants advertise that their consumers are "retirement plan professionals" who make financial investment decisions for retirees.

52. Defendants' use of the Infringing Mark trades off the goodwill of CFA Institute's CFA Marks and is without permission or license from CFA Institute.

53. Defendants advertise their goods and services in commerce using the Infringing Mark, which is nearly identical and confusingly similar to the CFA Marks of CFA Institute. Both Parties utilize the same or similar channels of trade and there is a clear overlap of targeted consumers.

- 14 -

54.     Defendants advertise the Defendants' Goods & Services under the Infringing Mark on their websites at http://napacpfa.org/, https://www.asppa.org/educate/retirement-plan-academy/credential-programs,                https://www.napa-net.org/education/napa-academy/, https://www.napa-net.org/education/certificationcredentials/,      and       http://napacpfa.org/wp-content/uploads/2018/01/2018_CPFA_Syllabus.pdf.  True and correct copies of screenshots from the websites are attached hereto as **Exhibit 9**.

55.     Upon information and belief, Defendants knew or had reason to know of the CFA Marks of CFA Institute at the time Defendants commenced use of the Infringing Mark.

56.     Upon information and belief, Defendants intentionally adopted and use the Infringing Mark so as to create consumer confusion and trade off CFA Institute's reputation and goodwill under the CFA Marks.

57.     CFA Institute has used its CFA Marks continuously on or in connection with the CFA Institute Goods & Services in interstate commerce prior to the date Defendants commenced use of the Infringing Mark.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement – 15 U.S.C. § 1114)

58.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 57 above, as if set forth herein in full.

59.     Defendants' Infringing Mark is nearly identical to or substantially indistinguishable from the CFA Marks of CFA Institute in appearance, sound, meaning, and commercial impression that the use and registration thereof is likely to cause confusion, mistake, and deception as to the source or origin of the Defendants' Goods & Services, and will injure and damage CFA Institute and the goodwill and reputation symbolized by the CFA Marks of CFA Institute.

- 15 -

60.     The Defendants' Goods & Services offered under the Infringing Mark are identical and so closely related to the goods and services offered under the CFA Marks by CFA Institute, including CFA Institute's Certification Services under the Certification Mark, that the public is likely to be confused, deceived, and to assume erroneously that the Defendants' Goods & Services are those of CFA Institute or that Defendants are in some way connected with, licensed, or sponsored by or affiliated with CFA Institute, all to CFA Institute's and its authorized CFA charterholders' irreparable damage, as well as the public's detriment.

61.     Likelihood of confusion is enhanced by the fact that the CFA Marks of CFA Institute are strong, well-known, and entitled to a broad scope of protection.

62.     Likelihood of confusion is also enhanced by the fact that Defendants' Infringing Mark is visually and phonetically nearly identical to or substantially indistinguishable from the CFA Marks, and Defendants' Goods & Services are identical and closely related to the CFA Institute Goods & Services, including CFA Institute's association services under the CFA Marks.

63.     Likelihood of confusion is further enhanced by the fact that Defendants' Infringing Mark and the CFA Marks of CFA Institute both prominently incorporate the identical, key component "CFA" and the Defendants' Goods & Services are identical and closely related to the CFA Institute Goods & Services.  Specifically, the Infringing Mark wholly incorporates the identical letters "C," "F," and "A," in the same order, and the Infringing Mark is used as part of educational and association services and for the benefit of the association's professional members in the field of financial planning and retirement.

64.     Likelihood of confusion is even further enhanced by the fact that CFA Institute and Defendants market and will likely market their goods and services in the same or similar channels of trade.

- 16 -

65. Defendants are not affiliated or connected with CFA Institute and have not been endorsed or sponsored by CFA Institute, nor has CFA Institute approved any of the Defendants' Goods & Services offered or sold or intended to be sold by Defendants under the Infringing Mark.

66. Defendants have never sought or obtained the permission of CFA Institute to use the Infringing Mark, nor has CFA Institute approved any of the Defendants' Goods & Services offered under Defendants' Infringing Mark.

67. CFA Institute's United States Trademark Registrations identified above provide, at the very least, constructive notice to Defendants of the rights of CFA Institute in and to the CFA Marks.

68. Defendants' use of the Infringing Mark in connection with Defendants' Goods & Services is likely to cause confusion, mistake, or deception of consumers as to the source of origin or sponsorship of the goods and services, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

69. Consumers are likely to purchase or engage the Defendants' Goods & Services being offered under the Infringing Mark believing them to be those of CFA Institute or its authorized CFA charterholders, thereby resulting in a loss of goodwill and economic harm to CFA Institute and its authorized CFA charterholders.

70. Upon information and belief, Defendants intentionally adopted and use the Infringing Mark so as to create consumer confusion and trade off CFA Institute's reputation and goodwill under the CFA Marks.

71. CFA Institute is informed and believes, and on that basis, alleges that Defendants have derived unlawful gains and profits from their infringing use of the Infringing Mark.

- 17 -

72. The goodwill of CFA Institute's business under the CFA Marks is of great value, and CFA Institute will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of CFA Institute for which damage CFA Institute cannot be adequately compensated at law.

73. CFA Institute has no control over the quality of the goods and services offered by Defendants. Thus, the great value of the CFA Marks of CFA Institute is subject to damage by an entity CFA Institute cannot control.

74. Unless enjoined by this Court from so doing, Defendants will continue to engage in their acts of infringement, to the irreparable damage and injury of CFA Institute.

75. Upon information and belief, Defendants have engaged in acts of infringement, with knowledge of CFA Institute's exclusive rights in and to the CFA Marks in connection with the CFA Institute Goods & Services, and Defendants continue in such acts of intentional infringement, thus entitling CFA Institute to an award of treble its actual damages, Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

**SECOND CLAIM FOR RELIEF**
**(Federal Unfair Competition and False Designation of Origin and**
**False and Misleading Representations – 15 U.S.C. § 1125(a))**

76. CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 75 above, as if set forth herein in full.

77. Defendants' use of the Infringing Mark constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that the Defendants' Goods & Services offered for sale under Defendants' Infringing Mark are those of CFA Institute in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

- 18 -

78. Defendants' actions cause or are likely to cause confusion or mistake among the public as to the true origin and sponsorship of the Defendants' Goods & Services offered for sale under Defendants' Infringing Mark, and to confuse the public into believing that the Defendants' Goods & Services have the approval of CFA Institute, or are otherwise affiliated, connected, associated with, or sponsored by CFA Institute, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. CFA Institute has no control over Defendants and the nature and quality of Defendants' Goods & Services offered for sale under Defendants' Infringing Mark. Any failure, neglect, or default of Defendants in providing goods and services will reflect adversely on CFA Institute and its authorized CFA charterholders.

80. Upon information and belief, Defendants intentionally adopted and use the Infringing Mark so as to create consumer confusion and trade off CFA Institute's reputation and goodwill under the CFA Marks.

81. CFA Institute is informed and believes, and on that basis, alleges that Defendants have derived unlawful gains and profits from their infringement of the CFA Marks.

82. The goodwill of the business of CFA Institute under the CFA Marks is of great value, and CFA Institute will suffer irreparable harm should Defendants' acts of unfair competition, and false representation and designations, be allowed to continue, to the detriment of the trade reputation and goodwill of CFA Institute for which damage CFA Institute cannot be adequately compensated at law.

83. CFA Institute has no control over the quality of the goods and services offered by Defendants. Thus, the value of the CFA Marks of CFA Institute is subject to damage by an entity it cannot control. Unless enjoined by this Court from so doing, Defendants will continue

- 19 -

to engage in acts of unfair competition, and false representation and designation, to the irreparable damage and injury of CFA Institute and its authorized CFA charterholders, as well as the public's detriment.

84. Upon information and belief, from the outset, Defendants have engaged in acts of unfair competition, and false representation and designation, with knowledge of the exclusive rights of CFA Institute in and to the CFA Marks in connection with identical and closely related goods and services, and Defendants continue in such acts of unfair competition, false representation and designation, in violation of 15 U.S.C. § 1125(a), thus entitling CFA Institute to an award of its actual damages, Defendants' profits, plus attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## THIRD CLAIM FOR RELIEF
### (Trademark Infringement and Unfair Competition Under the Commonwealth of Virginia Statutes Va. Code §§ 59.1-92.12, 59.1-92.13)

85. CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 84 above, as if set forth herein in full.

86. Defendants' use of the Infringing Mark constitutes trademark infringement and unfair competition in violation of the Commonwealth of Virginia trademark infringement statute, Va. Code §§ 59.1-92.12 & 59.1-92.13, as such acts are likely to mislead and deceive customers and prospective customers into believing that the Defendants' Goods & Services are those of CFA Institute.

87. Defendants' actions are likely to cause confusion or mistake among the public and create material misrepresentations as to the true origin and sponsorship of the Defendants' Goods & Services and to confuse and mislead the public into believing that the Defendants' Goods & Services have the approval of CFA Institute and/or that those goods and services have been

- 20 -

passed off as those of CFA Institute in violation of the Commonwealth of Virginia trademark infringement statute, Va. Code §§ 59.1-92.12 & 59.1-92.13.

88.     Upon information and belief, Defendants intentionally adopted and use the Infringing Mark so as to create consumer confusion and trade off CFA Institute's reputation and goodwill under the CFA Marks.

89.     Defendants have been using the Infringing Mark without the consent of CFA Institute.

90.     CFA Institute has no control over the nature and quality of the Defendants' Goods & Services.  Consumers, believing CFA Institute to be the source of such goods and services, are likely to blame CFA Institute or its authorized CFA charterholders for any failure, neglect or default of Defendants in providing quality goods and services, hampering efforts by CFA Institute to continue to protect its outstanding reputation for the CFA Institute Goods & Services. Defendants' wrongful conduct is likely to deceive the consuming public and to result in a loss of goodwill and economic harm for CFA Institute and its authorized CFA charterholders, all to the irreparable harm of CFA Institute, its authorized CFA charterholders, and the public.

91.     Unless enjoined by this Court from so doing, Defendants will continue their conduct of passing off and engaging in acts of unfair competition, to the irreparable damage and injury of CFA Institute.

92.     CFA Institute is informed and believes and on that basis alleges that Defendants have derived unlawful gains and profits from their acts of unfair competition, as alleged above, and have caused loss, injury and damage to CFA Institute, its goodwill and the CFA Marks, in an amount as yet unknown but to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Trademark Infringement and Unfair Competition
### Under the Commonwealth of Virginia Common Law)

93.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 92 above, as if set forth herein in full.

94.     CFA Institute owns and enjoys common law rights in the Commonwealth of Virginia and elsewhere in the United States in and to the CFA Marks for the CFA Institute Goods & Services.  CFA Institute is the exclusive owner of the common law trademark rights in the CFA Marks.  No license or authorization has been granted to Defendants to use any of these marks, or variations thereon.

95.     Defendants, with full knowledge of the public awareness and value of the CFA Marks, has traded off and misappropriated the reputation and valuable goodwill of the CFA Marks of CFA Institute in the Commonwealth of Virginia and acted in a manner that has created and will continue to create a likelihood of confusion and mistake as to the source of the Defendants' Goods & Services.  By falsely suggesting a connection with or sponsorship by CFA Institute, Defendants' acts are likely to lead the public to believe mistakenly that Defendants' Goods & Services are in some way associated with, connected with, or sponsored by CFA Institute, to the detriment of CFA Institute, and without CFA Institute's authorization.  Defendants' activities constitute unfair competition, misappropriation of the goodwill of CFA Institute, and palming off.

96.     Upon information and belief, Defendants intentionally adopted and use the Infringing Mark so as to create consumer confusion and trade off CFA Institute's reputation and goodwill under the CFA Marks.

- 22 -

97.     CFA Institute is informed and believes and, on that basis, alleges that Defendants have derived unlawful gains and profits from their unlawful acts, and will continue to do so, as alleged above, and have caused loss, injury, and damage to CFA Institute, its goodwill, and the CFA Marks, in an amount as yet unknown but to be proven at trial.

98.     Unless enjoined by this Court from so doing, Defendants will continue their conduct of passing off and engaging in acts of unfair competition and cause irreparable damage and injury to CFA Institute's goodwill, business identity and reputation and its authorized CFA charterholders, as well as the public's detriment.   CFA Institute is therefore entitled to a permanent injunction enjoining and restraining Defendants from use of the Infringing Mark or any other mark that is identical or confusingly similar to the CFA Marks.

## FIFTH CLAIM FOR RELIEF
### (Accounting)

99.     CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 98 above, as if set forth herein in full.

100.     CFA Institute is entitled, pursuant to 15 U.S.C. § 1117, to recover any and all profits of Defendants that are attributable to the acts of infringement and unfair competition.

101.     CFA Institute is entitled, pursuant to 15 U.S.C. § 1117, to actual damages or statutory damages sustained by virtue of Defendants' acts of infringement and unfair competition.

102.     The amount of money due from Defendants to CFA Institute is unknown to CFA Institute and cannot be ascertained without a detailed accounting by Defendants of the precise revenues received under Defendants' Infringing Mark.

- 23 -

**ALLEGATION OF DAMAGE COMMON TO ALL CLAIMS FOR RELIEF**

103. CFA Institute repeats and realleges each and every allegation contained in Paragraphs 1 through 102 above, as if set forth herein in full.

104. CFA Institute has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendants' wrongful conduct. Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of CFA Institute. CFA Institute's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

**PRAYER FOR RELIEF**

WHEREFORE, CFA Institute respectfully prays the Court:

1. Order Defendants never to file for any trademark for or incorporating the Infringing Mark, the CFA Marks of CFA Institute, or any other designation that is confusingly similar to the CFA Marks;

2. Order Defendants to abandon expressly and with prejudice U.S. Service Mark Application Serial No. 87103390 for the mark NAPA CPFA CERTIFIED PLAN FIDUCIARY ADVISER & Design;

3. Order Defendants to withdraw with prejudice any and all counterclaims asserted in Opposition Proceeding No. 91239462 before the United States Trademark Trial and Appeal Board, and never again to challenge, oppose, cancel, or seek to cancel any CFA Marks of CFA Institute;

4. Enter a judgment against Defendants that Defendants have committed and are committing acts of trademark infringement in violation of the rights of CFA Institute under 15 U.S.C. § 1114;

- 24 -

5.      Enter a judgment against Defendants that Defendants have willfully infringed the registered trademark rights of CFA Institute in and to the CFA Marks under 15 U.S.C. § 1114;

6.      Enter a judgment against Defendants that Defendants have committed and are committing acts of false designation of origin, false or misleading description of fact, or false or misleading representation in violation of the rights of CFA Institute under 15 U.S.C. § 1125(a);

7.      Enter a judgment designating this action an exceptional case entitling CFA Institute to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

8.      Enter a judgment against Defendants that Defendants have engaged in trademark infringement and unfair competition in violation of the Commonwealth of Virginia statutory and common law;

9.      Enter a judgment refusing registration in its entirety to U.S. Service Mark Application Serial No. 87103390 for the mark NAPA CPFA CERTIFIED PLAN FIDUCIARY ADVISER & Design;

10.     Issue preliminary and permanent injunctive relief against Defendants, and that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from:

(i)     imitating, copying, or making any other infringing use of the CFA Marks and Defendants' Infringing Mark, and any other mark now or hereafter confusingly similar to the CFA Marks;

(ii)    manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing,

- 25 -

promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the CFA Marks, Defendants' Infringing Mark, or any mark confusingly similar thereto;

(iii)   using any false designation of origin or false description or statement which can or is likely to lead the trade or public or individuals erroneously to believe that any service has been provided, produced, distributed, offered for distribution, circulation, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for CFA Institute, when such is not true in fact;

(iv)   using the names, logos, or other variations thereof of the CFA Marks or Defendants' Infringing Mark in any of Defendants' trade or corporate names;

(v)   engaging in any other activity constituting an infringement of the CFA Marks, or of the rights of CFA Institute in, or right to use or to exploit the CFA Marks; and

(vi)   assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

11.   Order Defendants, at their own expense, to recall all marketing, promotional and advertising materials that bear or incorporate Defendants' Infringing Mark, or any mark identical or confusingly similar to the CFA Marks, which have been distributed, sold, or shipped, by Defendants or on their behalf, and to reimburse all customers from which said materials are recalled;

- 26 -

12.     Order Defendants to destroy all labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under their control, bearing Defendants' Infringing Mark, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

13.     Order Defendants to publish notice to all customers or members of the trade who may have seen or heard of Defendants' use of Defendants' Infringing Mark, which notice shall disclaim any connection with CFA Institute and shall advise them of the Court's injunction order and of Defendants' discontinuance from all use of Defendants' Infringing Mark;

14.     Order Defendants to file with this Court and to serve upon CFA Institute within thirty (30) days after service upon Defendants of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

15.     Order Defendants to pay the costs of corrective advertising;

16.     Order Defendants to hold in trust, as constructive trustee for the benefit of CFA Institute, their profits obtained from their provision of Defendants' Goods & Services offered for sale under Defendants' Infringing Mark;

17.     Order Defendants to provide CFA Institute a full and complete accounting of all amounts due and owing to CFA Institute as a result of Defendants' illegal activities;

18.     Order Defendants to pay the general, special, actual, and statutory damages of CFA Institute as follows:

(i)     CFA Institute's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of the federally registered trademarks of CFA Institute; and

- 27 -

      (ii)    CFA Institute's damages and Defendants' profits pursuant to the Commonwealth of Virginia common law;

19.    Order Defendants to pay to CFA Institute both the costs of this action and reasonable attorneys' fees incurred by CFA Institute in prosecuting this action pursuant to 15 U.S.C. § 1117(a); and

20.    Award such other and further relief as the Court deems just and proper.

Dated: February 21, 2019

DLA PIPER LLP (US)

By: /s/ Anthony D. Gill
    Anthony D. Gill (Virginia State Bar No. 88390)
    Ann K. Ford (DC Bar No. 341479, *pro hac vice* application pending)
    John M. Nading (DC Bar No. 981625, *pro hac vice* application pending)
    500 8th Street, NW
    Washington, DC 20004
    Telephone: 202-799-4000
    Facsimile: 202-799-5000
    anthony.gill@dlapiper.com
    ann.ford@dlapiper.com
    john.nading@dlapiper.com

    *Attorneys for Plaintiff CFA Institute*

## DEMAND FOR JURY TRIAL

CFA Institute demands a trial by jury as to all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.

Dated:  February 21, 2019

DLA PIPER LLP (US)

By: /s/ Anthony D. Gill
    Anthony D. Gill (Virginia State Bar
    No. 88390)
    Ann K. Ford (DC Bar No. 341479,
    *pro hac vice* application pending)
    John M. Nading (DC Bar No. 981625,
    *pro hac vice* application pending)
    500 8th Street, NW
    Washington, DC  20004
    Telephone: 202-799-4000
    Facsimile: 202-799-5000
    anthony.gill@dlapiper.com
    ann.ford@dlapiper.com
    john.nading@dlapiper.com

    *Attorneys for Plaintiff CFA Institute*