**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **CFA INSTITUTE, a Virginia Non-Stock Corporation,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **3:19-cv-00012-NKM-JCH** |
| **AMERICAN SOCIETY OF PENSION** | § | |
| **PROFESSIONALS & ACTUARIES,** | § | |
| **a Texas Corporation; AMERICAN SOCIETY** | § | |
| **OF PENSION PROFESSIONALS &** | § | |
| **ACTUARIES, a Texas Corporation, D/B/A** | § | |
| **NATIONAL ASSOCIATION OF PLAN** | § | |
| **ADVISORS; and AMERICAN SOCIETY OF** | § | |
| **PENSION PROFESSIONALS &** | § | |
| **ACTUARIES, a Texas Corporation, D/B/A** | § | |
| **AMERICAN RETIREMENT** | § | |
| **ASSOCIATION,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY

**TABLE OF CONTENTS**

I. BACKGROUND...................................................................................................1

    A. Claims and Relief in Federal Case Are Significantly Different........................1

    B. Opposition Proceeding Already Suspended and Issues Not Even Joined........4

II. ARGUMENT ....................................................................................................4

    A. Stage of Litigation................................................................................5

    B. Simplification of the Matters at Issue................................................6

    C. Prejudice to Plaintiff........................................................................14

III. CONCLUSION ...............................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000) .................................................................................11

*American Bakeries Co. v. Pan-O-Gold Baking Co.*,
650 F. Supp. 563, 2 USPQ2d 1208 (D. Minn. 1986) .............................................7

*ASCII Corp. v. STD Entm't USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994) ....................................................................14

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
135 S.Ct. 1293 (2015) ......................................................................................9, 10

*Biogaia AB v. Nature's Way Prod., Inc.*,
No. 5:10-CV-449-FL, 2011 WL 3664350 (E.D.N.C. Aug. 18, 2011) ..................14

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
No. 12-cv-1107-GMS, 2014 U.S. Dist. LEXIS 47430 (D. Del. Apr. 7, 2014) .....13

*C–Cure Chemical Co. v. Secure Adhesives Corp.*,
571 F. Supp. 808 (W.D.N.Y. 1983) .....................................................................11

*Canatelo LLC v. AXIS Commc'ns AB*,
No. 13-1227-GMS, 2014 U.S. Dist. LEXIS 161801
(D. Del. May 14, 2014) ........................................................................................13

*Cellectis S.A. v. Precision Biosciences, Inc.*,
No. 5:08-CV-00119-H, 2010 WL 3430854 (E.D.N.C. Aug. 31, 2010)................14

*Celorio v. On Demand Books LLC*,
No. 12-821-GMS, 2013 U.S. Dist. LEXIS 121449
(D. Del. Aug. 21, 2013)........................................................................................14

*Citicasters Co. v. Country Club Commc'ns*,
No. 97-0678-RJK, 1997 WL 715034 (C.D. Cal. July 21, 1997) ..........................12

*Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*,
No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374
(E.D.N.C. Feb. 15, 2008)......................................................................................13

*Driving Force, Inc. v. Manpower, Inc.*,
498 F. Supp. 21 (E.D. Pa. 1980) .....................................................................10, 11

*Duke Univ. v. Universal Prod. Inc.*,
　　2014 WL 1795708 (M.D.N.C. May 6, 2014) ...............................................................*passim*

*E. & J. Gallo Winery v. F. & P. S.p.A.*,
　　899 F. Supp. 465 (E.D. Cal. 1994) ....................................................................................7, 8

*Ever Win Int'l Corp. v. RadioShack Corp.*,
　　902 F. Supp. 2d 503 (D. Del. 2012) ....................................................................................13

*General Mills Inc. v. Fage Dairy Processing Indus. SA*,
　　100 USPQ2d 1584 (TTAB 2011) ...........................................................................................6

*Goya Foods, Inc. v. Tropicana Prod., Inc.*,
　　846 F.2d 848 (2d Cir. 1988) .............................................................................................*passim*

*MercExchange, L.L.C. v. eBay, Inc.*,
　　500 F. Supp. 2d 556 (E.D. Va. 2007) ..................................................................................13

*Microchip Tech., Inc. v. Motorola, Inc.*,
　　No. 01-264-JJF, 2002 WL 32332753 (D. Del. May 28, 2002) .............................................12

*Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
　　922 F. Supp. 2d 486 (D. Del. 2013) ....................................................................................14

*Mushroom Makers, Inc. v. R.G. Barry Corp.*,
　　580 F.2d 44 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022 (1979).....................8

*Nat'l Mktg. Consultants, Inc. v. Blue Cross Blue Shield Ass'n*,
　　No. 87 C 7161, 1987 WL 20138 (N.D. Ill. Nov. 19, 1987)...................................................12

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
　　No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013)............................13

*New Orleans La. Saints LLC v. Who Dat? Inc.*,
　　99 USPQ2d 1550 (TTAB 2011) ...........................................................................................10

*Nexans Inc. v. Belden Inc.*,
　　No. 12-1491-SLF-SRF, 2014 U.S. Dist. LEXIS 20116 (D. Del. Feb. 19, 2014) ..................13

*NSM Res. Corp. v. Microsoft Corp.*,
　　113 USPQ2d 1029 (TTAB 2014) ...........................................................................................6

*NTP, Inc. v. Palm, Inc.*,
　　No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007).........................13

*Other Tel. Co. v. Conn. Nat'l Tel. Co., Inc.*,
　　181 USPQ 125 (TTAB 1974), *petition denied*, 181 USPQ 779 (Comm'r 1974)...................10

*PHC, Inc. v. Pioneer Healthcare, Inc.*,
   75 F.3d 75 (1st Cir. 1996) ............................................................................................ 7, 15

*Rhoades v. Avon Prod., Inc*.,
   504 F.3d 1151 (9th Cir. 2007) ............................................................................................ 7

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
   No. CV 14-1142-GMS, 2015 WL 4624164 (D. Del. July 31, 2015) ................................... 14

*SafeRack, LLC v. Bullard Co.*,
   No. 2:17-CV-1613-RMG, 2018 WL 3696557 (D.S.C. Aug. 3, 2018) .......................... *passim*

*Spring Air Co. v. Englander Licensing Liab. Co.*,
   No. 01 C 7140, 2001 WL 1543510, at *2 (N.D. Ill. Nov. 29, 2001) .................................... 12

*Sun Drop Sales Corp. of Am. v. Seminole Flavor Co.*,
   159 F. Supp. 828 (E.D. Tenn. 1958) .................................................................................. 12

*Univ. of Va. Patent Found. v. Hamilton Co.*,
   No. 3:13-cv-00033, 2014 U.S. Dist. LEXIS 135202 ......................................................... 13

## Statutes & Rules

15 U.S.C. § 1052(d) .................................................................................................................. 8

15 U.S.C. § 1071(b) .................................................................................................................. 3

Fed. R. Civ. P. 12(b) ................................................................................................................. 1

Fed. R. Civ. P. 26(f) .................................................................................................................. 5

## Other Authorities

37 C.F.R. § 2.120(h)(1) ............................................................................................................. 6

37 C.F.R. § 2.127(f) .................................................................................................................. 6

Plaintiff CFA Institute ("CFA Institute" or "Plaintiff"), by and through the undersigned counsel, files this Response in Opposition to Defendants American Society of Pension Professionals & Actuaries ("ASPPA"), ASPPA d/b/a National Association of Plan Advisors ("NAPA"), and ASPPA d/b/a American Retirement Association's ("ARA") (ASPPA, NAPA, and ARA, collectively, "Defendants") Motion to Stay (Dkt. No. 16) ("Motion to Stay" or "Motion").  For all of the reasons set forth herein, Defendants' Motion is without merit and must be denied.

On February 21, 2019, Plaintiff filed a five-count Complaint for federal and state trademark infringement and unfair competition arising out of Defendants' use of the infringing mark CPFA in connection with a certification program for professionals in the field of financial planning and retirement, and related educational and administrative services ("Complaint") (Dkt. No. 1).  On the deadline to respond to the Complaint (March 18, 2019), Defendants instead filed the Motion to Stay, without raising any of the grounds in Fed. R. Civ. P. 12(b) for responding in the alternative to a Complaint.  For this reason, Defendants have not filed a responsive pleading to the Complaint and have waived their right to assert any of the Rule 12(b) defenses.

## I.    BACKGROUND

### A.    Claims and Relief in Federal Case Are Significantly Different

Defendants' Motion is misleading as it glosses over the significant differences in the claims and relief sought by Plaintiff in its Complaint in this federal case as compared to a pending Opposition Proceeding before the United States Trademark Trial and Appeal Board ("Board" or "TTAB"), No. 91239462 ("Opposition Proceeding" or "TTAB Opposition").  Contrary to Defendants' characterization of the two actions, the only issue in the Opposition

Proceeding – the right to registrability of an applied-for mark for the applied-for services – is a mere subset of the federal case.

Specifically, the TTAB Opposition concerns one U.S. service mark application, Serial No. 87103390, for the mark NAPA CPFA CERTIFIED PLAN FIDUCIARY ADVISER & Design ("Application") (depicted in the Motion (Mot. at 2), and reproduced here), filed by one of the Defendants, ASPPA:[1]



The outcome of the TTAB Opposition will have no impact on Defendants' ability to use the composite mark depicted in the Application;[2] it will only impact the registration thereof for the specific applied-for services.  Importantly, too, the outcome of the TTAB Opposition will have no impact on Defendants' ability to use the infringing mark CPFA by itself or in any other variation.

By comparison, in the federal case, Plaintiff seeks an injunction as to use and registration of Defendants' infringing mark CPFA, Plaintiff's CFA Marks, or any mark confusingly similar to the CFA Marks, and related damages.  In other words, Plaintiff's claims for relief in the federal case are not limited to the specific manner in which "CPFA" appears in the Application, and a ruling by the Board as to the validity of the Application alone would have no bearing on Defendants' ability to use the infringing mark CPFA in any and all forms, including with or

---

[1] Defendants mislead again in their Motion by stating that: "In the instant action [(federal case)], all of Plaintiff's claims revolve around the central allegation that the NAPA CPFA Trademark [(which is defined as the composite mark depicted in the Application)] is likely to cause confusion with Plaintiff's CFA mark."  (Mot. at 5.)  A simple read of the Complaint shows that this is incorrect.

[2] Indeed, as stated in the Complaint, Defendants' are inconsistent in the spelling of "ADVISER" and "ADVISOR," appearing to use it both ways.  (Compl. at 11 ¶ 39; 13, ¶ 47.)

without other words, designs, or stylization.  Moreover, any decision of the Board would not simplify the issues in question in this case as it would not have a preclusive effect on this Court's consideration of the claims for trademark infringement and unfair competition arising out of Defendants' use of the infringing mark CPFA.[3]

Further, a decision of the Board is not final as it may be "appealed" to district court where it would be subject to *de* novo review.  15 U.S.C. § 1071(b).  *See, e.g.*, *Duke Univ. v. Universal Prod. Inc.*, 2014 WL 1795708, at *3 (M.D.N.C. May 6, 2014) (acknowledging "the availability of a de novo proceeding in the district court, as well as the availability of suits in federal court without any prior resort to the TTAB") (internal citations omitted).

For at least these reasons then, the Board's determination would not have a preclusive effect or materially aid or streamline the Court's disposition of this case.  Fairness and judicial efficiency dictate that the federal case must continue for the injunctive relief Plaintiff seeks relating to any and all use and registration of the infringing mark CPFA by all Defendants and the damages resulting therefrom.  To do otherwise would seriously prejudice Plaintiff because a Board decision can be re-litigated in court while Plaintiff suffers harm and prejudice from the delay.  Accordingly, on March 7, 2019, prior to Defendants' filing of the instant Motion, Plaintiff moved to suspend the TTAB Opposition pending the outcome of this federal case ("Motion to Suspend Opposition") (Dkt. No. 16-1 (Exh. A (Compl.), omitted)), because the federal case encompasses all claims in the TTAB Opposition (the Application and claims and issues relating to the Application), but the TTAB Opposition will not resolve all claims in this case.

---

[3] In fact, Defendants conclude their Motion with the assertion that "if the Board grants Plaintiff's motion and dismisses ARA's counterclaim with prejudice, it is questionable whether the Board's [sic] would be accorded preclusive effect."  (Mot. at 15.)  Defendants are clearly trying to have it both ways.

**B.     Opposition Proceeding Already Suspended and Issues Not Even Joined**

Defendants' Motion is also misleading in the characterization of the procedural posture of the TTAB Opposition.  Plaintiff initiated the TTAB Opposition on February 12, 2018, when it filed the Notice of Opposition as to the Application (Dkt. No. 16-2), and the TTAB Opposition is still in the early stages as the claims have not even been joined.  ASPPA has not stated a counterclaim to which Plaintiff has had to answer; indeed, the Board has suspended any further proceedings pending resolution of Plaintiff's Motion to Dismiss ASPPA's Amended Counterclaim, which Plaintiff filed after successfully dismissing ASPPA's initial counterclaim.

As alleged in the Complaint, Plaintiff filed this action to stop Defendants' expansion of a business under the infringing mark CPFA by enjoining any and all use of "CPFA."  (Compl. at 12, ¶ 43.)  At the time Plaintiff filed the TTAB Opposition a year earlier, Plaintiff was aware of the Application, but the extent and manner of Defendants' actual use of "CPFA" was not clear; in fact, the identity of Defendants was also unclear.  (*See, e.g.*, Compl. at 2, ¶¶ 2-4; 11, ¶ 39; 12, ¶¶ 41-42.)[4]  As it became apparent Defendants were in fact determined to move forward with rolling out a business under "CPFA," Plaintiff promptly filed this federal case for injunctive relief and damages given the urgency and harm to Plaintiff caused by Defendants' use of the infringing mark CPFA.

**II.     ARGUMENT**

"A court's power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  When considering a motion to stay, the court should consider:

---

[4] For one thing, some of the Defendants appear to "offer" at least nine different credentials, including the credentials/designations PFC and QPFC, which may or may not have been phased-out following the recent adoption of the infringing mark CPFA.  (*See, e.g.*, Compl. at 11, ¶ 37; 12, ¶¶ 41-42.)

(1) whether discovery is complete and a trial date is scheduled; (2) whether a stay would simplify the matters at issue; and (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party.  Regardless, to issue a stay, a court must be satisfied that a pressing need exists, and that need outweighs any possible harm to the interests of the non-moving party." *SafeRack, LLC v. Bullard Co.*, No. 2:17-CV-1613-RMG, 2018 WL 3696557, at *1 (D.S.C. Aug. 3, 2018) (internal citations and quotation marks omitted).  Here, none of these factors favor a stay of this case.  Indeed, to do so would be an abuse of discretion under these circumstances.

### A.    <u>Stage of Litigation</u>

The procedural posture of the two matters does not favor a stay, because this case will proceed more quickly than the TTAB Opposition and will resolve all contested issues between the parties.  Plaintiff filed its Complaint on February 21, 2019.  In lieu of answering, Defendants filed their Motion on March 18, 2019.  Pursuant to the Court's March 18, 2019 Pretrial Order (Dkt. No. 15), counsel for the parties held their Fed. R. Civ. P. 26(f) Conference on March 27, 2019, and submitted a Joint Motion to Amend Pretrial Order on March 28, 2019.  (Dkt. No. 18.) As such, discovery formally opened following the parties' Rule 26(f) Conference.

By comparison, though the TTAB Opposition was filed a year earlier in February 2018, the TTAB Opposition is still in the very early stages as the claims have not even been joined.  In fact, the TTAB Opposition is currently suspended pending resolution of Plaintiff's Motion to Dismiss ASPPA's Amended Counterclaim.  Moreover, under the Board's scheduling order, the Discovery period has not opened in the TTAB Opposition and thus the parties have not exchanged Initial Disclosures nor any discovery requests.

As such, this factor favors denying the Motion to Stay and proceeding in the federal case.

### B.  Simplification of the Matters at Issue

The TTAB Opposition will not simplify matters in the federal case, while the federal case will be entirely dispositive of and binding on the Board proceeding.  An opposition proceeding is unlike adversarial proceedings in federal court for several reasons.  Foremost, the Board is an administrative tribunal with limited subject matter jurisdiction.  The rules of procedure for the TTAB state that: the "Board is empowered to determine only the right to register . . . .  The Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition.  Similarly, the Board, being an administrative tribunal, has no authority to declare any portion of the Act of 1946 [(the Lanham Act)], or any other act of Congress, unconstitutional."    Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 102.01.

In addition, the Board cannot award monetary damages or injunctive relief, such as to stop trademark use (*see* TBMP § 102.01), and the Board has only a limited ability to sanction. *See NSM Res. Corp. v. Microsoft Corp.*, 113 USPQ2d 1029, 1035 n.10 (TTAB 2014) (stating Board cannot assess monetary damage awards); *General Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1591 (TTAB 2011) (stating Board has no authority to determine the right to use, or the broader questions of infringement, unfair competition, damages or injunctive relief); *see, e.g.*, TBMP §§ 502.05 & 527.01(a); 37 C.F.R. §§ 2.127(f) ("Board will not hold any person in contempt, or award attorneys' fees, other expenses, or damages to any party") & 2.120(h)(1).  As such, because "[t]he Board is empowered to determine only the right to register" (TBMP § 102.01), the only issue in the TTAB Opposition is the registrability of the Application.

Recognizing the differences in relief available between the TTAB and federal court, district courts in the Fourth Circuit and other Courts of Appeals have declined to grant a stay of a federal case pending a TTAB decision.[5]  *See, e.g.*, *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) ("On the other hand, if, as here, a potential infringement claim 'requires the district court to resolve much or all of [the registration issues], it would waste everyone's time not to settle the registration issue now[, in district court].'") (citations omitted); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 81 (1st Cir. 1996) ("If no infringement claim were made in the district court but only a claim that a federal registration was or was not valid, a good argument might exist . . . for awaiting the completion of any pending [TTAB] proceeding addressed to the mark's validity. . . .  But where an infringement claim is also present and is going to be considered promptly by the court, it normally makes sense for the court to resolve a companion validity claim [pending before the TTAB] at the same time, if the issues underlying the two claims overlap to an extent that makes this course sensible."); *Goya Foods, Inc. v. Tropicana Prod., Inc.*, 846 F.2d 848 (2d Cir. 1988) (same); *SafeRack, LLC v. Bullard Co.*, No. 2:17-CV-1613-RMG, 2018 WL 3696557 (D.S.C. Aug. 3, 2018) (denying motion to stay proceedings pending decision by TTAB); *Duke Univ.*, 2014 WL 1795708, at *3 (denying motion to stay, stating that "'the [TTAB] cannot give relief for an infringement claim, either injunctive or by way of damages'" (quoting *PHC*, 75 F.3d at 80); *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465 (E.D. Cal. 1994) (same); *American Bakeries Co. v. Pan-O-Gold Baking Co.*, 650 F. Supp. 563, 2 USPQ2d 1208 (D. Minn. 1986) (same).

---

[5] To the extent Defendants' argument in its Motion to Stay relies on the doctrine of primary jurisdiction without expressly naming it, the analysis set out herein applies equally, as demonstrated by the cases cited herein that considered requests to stay.

Courts often refuse to grant stays because "[l]ikelihood of consumer confusion, which is relevant to the registration determination under 15 U.S.C. § 1052(d), is a legal standard with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition." *Goya Foods*, 846 F.2d at 853. *See also, e.g.*, *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022 (1979). Trademark suits do not deal with "a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control." *Goya Foods*, 846 F.2d at 853. "Though potentially helpful, the TTAB's special expertise is hardly necessary in federal district courts which regularly adjudicate trademark matters." *E. & J. Gallo Winery*, 899 F. Supp. at 468.

"[T]he legal question in trademark registration proceedings—particularly those involving opposition on grounds of consumer confusion—is within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of th[e particular] case." *Goya Foods*, 846 F.2d at 853 (citation omitted). Although a stay may be warranted where "a district court action involves only the issue of whether a mark is entitled to registration," in a suit that concerns infringement, "the interest in prompt adjudication far outweighs the value of having the view of the PTO." *Id.* at 854-55.

For example, in *SafeRack*, the plaintiff alleged the same claims at issue here, including infringement and unfair competition, seeking both injunctive relief and damages, which the court recognized was more than "merely whether a trademark should be registered, an issue squarely in the purview of the TTAB." The court refused to grant a stay, holding:

> Unlike in a patent infringement case with a parallel USPTO reexamination proceeding, Lanham Act claims brought before a court cannot be resolved by the USPTO, especially where there are claims for damages or related state law claims. While this Court has not yet had the opportunity to opine on the issue, a number of Courts of Appeal, and at least one district court in the Fourth Circuit, have recognized that Lanham Act cases often "involve[ ] claims that the TTAB cannot directly resolve" and "where a district court suit concerns infringement, the interest in prompt adjudication far outweighs the value of having the views of the [TTAB]."

2018 WL 3696557, at *2 (quoting *Duke Univ.*, 2014 WL 1795708, at *5 (citing *Goya Foods*, 846 F.2d at 853)). The court found that issues of infringement and unfair competition "would not be significantly simplified by waiting for the resolution of the TTAB proceedings." *SafeRack*, 2018 WL 3696557, at *2 (citing *Goya Foods*, 846 F.2d at 854 ("These presumptions [conferred by registration of a trademark] are nonetheless rebuttable, and by obtaining (or resisting cancellation of) a federal registration a party does not significantly affect the course of an infringement action.")).

Here too, for the reasons set out above, a decision by the Board in the Opposition Proceeding will not simplify the issues in the federal case nor be binding on this Court's own decision. To the contrary, the final determination of the federal case will have a bearing on the issues before the Board because the TTAB Opposition involves the same claims and issues as related to ASPPA's Application, but this case also involves broader claims and issues far beyond the right to registration of this one Application, namely, injunctive relief relating to use and registration of CPFA in any manner or form, and damages. There can be no doubt then that the final resolution of the federal case will be dispositive of the claims and issues in the TTAB Opposition.

The Defendants argue a stay is appropriate because of the U.S. Supreme Court's 2015 decision in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1293 (2015), but that decision

does not support the argument a Board decision would have preclusive effect here in this Court. To the contrary, in *B&B Hardware*, the Court was keen to note that, "for a great many registration decisions issue preclusion obviously will not apply because the ordinary elements will not be met. For those registrations, nothing we say today is relevant." 135 S.Ct. at 1306. Indeed, this point was the sole basis of Justice Ginsburg's concurrence. *Id*. at 1310 (Ginsburg, J., concurring).

The TTAB's own rules of procedure provide that, "the Board's policy to suspend in favor of a civil action has not changed [since the U.S. Supreme Court's decision in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 U.S. 1293, 135 S.Ct. 1293, 113 USPQ2d 2045 (2015)]." TBMP § 510.02(a). "Most commonly, a request to suspend pending the outcome of another proceeding seeks suspension because of a civil action pending between the parties in a federal district court." *Id.* "A civil action may involve other matters outside Board jurisdiction and may consider broader issues beyond right to registration and, therefore, judicial economy is usually served by suspension." *Id.* "Unless there are unusual circumstances, the Board will suspend proceedings in the case before it if the final determination of the other proceeding may have a bearing on the issues before the Board." *Id. See, e.g.*, *New Orleans La. Saints LLC v. Who Dat? Inc.*, 99 USPQ2d 1550, 1552 (TTAB 2011) (civil action need not be dispositive of Board proceeding, but only needs to have a bearing on issues before the Board). "The only question for determination [by the Board] . . . is whether the outcome of the civil action will have a bearing on the issues involved in the opposition proceeding." *Other Tel. Co. v. Conn. Nat'l Tel. Co., Inc.*, 181 USPQ 125, 126 (TTAB 1974), *petition denied*, 181 USPQ 779 (Comm'r 1974).

Defendants rely heavily on *Driving Force, Inc. v. Manpower, Inc.*, 498 F. Supp. 21 (E.D. Pa. 1980), to argue a Board decision has "substantial persuasive value," but that case was

- 10 -

abrogated by *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220 (3d Cir. 2000). The Third Circuit held that, contrary to the court's reasoning in *Driving Force*, "although an initial PTO determination by an examining attorney may be considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court." *A & H Sportswear, Inc.*, 237 F.3d at 221. The court found that "the PTO in this case was making a low-level preliminary determination, and did not have the benefit of the complete record before the District Court." *Id.* As a result, because the district court's conclusion that the marks were not confusingly similar relied on matters not considered by the examining attorney, the district court was right not to accord deference to the TTAB's decision. *Id.* Moreover, "the court in *Driving Force* later refused to continue the stay pending appeal of the TTAB decision, recognizing the limited impact of the decision and the fact that the issues before the court remained broader than the matters before the TTAB and its appellate body." *Duke Univ.*, 2014 WL 1795708 at *4 (citing *Driving Force*, 538 F. Supp. at 59-60).

The Second Circuit in *Goya Foods* persuasively distinguished two of the main district court cases relied upon by Defendants on the level of deference courts should accord TTAB decisions, *Driving Force* and *C–Cure Chemical Co. v. Secure Adhesives Corp.*, 571 F. Supp. 808 (W.D.N.Y. 1983). *Goya Foods*, 846 F.2d at 853. The Second Circuit held that, while federal courts may give a narrow scope of deference to administrative agencies in the trademark context where the district court action involves "only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available," such deference is not appropriate where infringement is at issue and "the interest in prompt adjudication far outweighs the value of having the views of the PTO." *Goya Foods*, 846 F.2d at 853. *See also Duke Univ.*, 2014 WL 1795708 at *5 (declining to follow *Driving Force* on the basis that *Duke Univ.* involved claims

that the TTAB could not directly resolve, including damages claims for infringement).  In sum, courts that have been faced with facts similar to the instant case have found that stays were not warranted pending TTAB proceedings.  *See, e.g.*, *Goya Foods*, 846 F.2d at 854.

The handful of other trademark cases cited by Defendants do not countenance a contrary holding.  *Cf. Microchip Tech., Inc. v. Motorola, Inc.*, No. 01-264-JJF, 2002 WL 32332753 (D. Del. May 28, 2002) (defendant counterclaimed for cancellation of plaintiff's mark as generic in the federal case, then filed separate cancellation proceeding before the Board on the same basis – genericness – and the Court concluded that "a determination that the 'PIC' designation is generic, if adopted by the Court, would be dispositive of all of Microchip's claims, as each claim depends on Microchip owning a valid trademark"); *Citicasters Co. v. Country Club Commc'ns*, No. 97-0678-RJK, 1997 WL 715034, at *1 (C.D. Cal. July 21, 1997) (acknowledging *C-Cure* and *Driving Force*, on the one hand, and *Goya Foods* and *E & J Gallo Winery*, on the other hand, the court concluded "[i]t appears . . . that these contrasting holdings merely reinforce the accepted canon that a decision to stay rests primarily within the district court's discretion – either under the briefed 'primary jurisdiction' doctrine or through the court's power to monitor its own docket"); *Nat'l Mktg. Consultants, Inc. v. Blue Cross Blue Shield Ass'n*, No. 87 C 7161, 1987 WL 20138 (N.D. Ill. Nov. 19, 1987) (declined to follow by a more recent district court decision within the same district in *Spring Air Co. v. Englander Licensing Liab. Co.*, No. 01 C 7140, 2001 WL 1543510, at *2 (N.D. Ill. Nov. 29, 2001)); *Sun Drop Sales Corp. of Am. v. Seminole Flavor Co.*, 159 F. Supp. 828 (E.D. Tenn. 1958) (decision bereft of any discussion of the legal basis).

Defendants' Motion relies heavily on patent cases involving district court litigation and proceedings before the United States Patent Trial and Appeal Board ("PTAB"), whether *inter partes* review ("IPR") or patent re-examinations, claiming those cases provide an "analogous

context."  But all of those cases are highly distinguishable from trademark litigation in district court and proceedings before the TTAB.  For one thing, as this Court has considered, IPRs in particular are subject to a short timeline.  *See Univ. of Va. Patent Found. v. Hamilton Co.*, No. 3:13-cv-00033, 2014 U.S. Dist. LEXIS 135202, at *3-4; 8 (W.D. Va. Sept. 25, 2014) (Moon, J.) ("stay will be relatively short and for a definite amount of time").  There, this Court noted that, "Congress created IPR to shift the burden of reviewing the validity of a patent from the courts to the USPTO in order to utilize the USPTO's specialized expertise and reduce costly litigation." In reaching its decision, this Court found three factors compelling: (a) plaintiff was a non-practicing entity which "does not sell or license products under the asserted patents," and thus "cannot show the type of prejudice that would weigh in favor of denying a stay;" (b) "stay will be relatively short and for a definite amount of time; and (c) "Defendant acted diligently in filing its IPR petitions and moving for the stay."  And contrary to Defendants' repeated assertion, stays of district court litigation for IPR or patent re-examinations are far from "routinely granted."  *See id.* at *5 (setting out non-exclusive factors courts "normally consider" in determining whether to issue a stay).

The numerous patent cases Defendants cite involve IPR and/or patent re-examinations and, thus, are of no consequence and have no bearing on this case as they are not trademark cases.[6]  Unlike the registration of a patent, a trademark registration of itself does not create an

---

[6] As such, all of these cases cited by Defendants are distinguishable: *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No. 12-cv-1107-GMS, 2014 U.S. Dist. LEXIS 47430 (D. Del. Apr. 7, 2014); *Nexans Inc. v. Belden Inc.*, No. 12-1491-SLF-SRF, 2014 U.S. Dist. LEXIS 20116 (D. Del. Feb. 19, 2014); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416 (D. Del. July 2, 2013); *Cornerstone BioPharma, Inc. v. Vision Pharma, LLC*, No. 5:07-CV-00389-F, 2008 U.S. Dist. LEXIS 76374 (E.D.N.C. Feb. 15, 2008); *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556 (E.D. Va. 2007); *NTP, Inc. v. Palm, Inc.*, No. 3:06-CV-836, 2007 U.S. Dist. LEXIS 97141 (E.D. Va. Mar. 22, 2007); *Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503 (D. Del. 2012); *Canatelo LLC v. AXIS*

underlying right to exclude, nor is a trademark created by registration.  By contrast, in patent cases, courts have noted the specific benefits of staying litigation pending a reexamination proceeding and the increased utility of USPTO expertise based on the technical nature of patents and the significance of prior art references.  *See, e.g.*, *Biogaia AB v. Nature's Way Prod., Inc.*, No. 5:10-CV-449-FL, 2011 WL 3664350, at *1 (E.D.N.C. Aug. 18, 2011); *Cellectis S.A. v. Precision Biosciences, Inc.*, No. 5:08-CV-00119-H, 2010 WL 3430854, at *1 (E.D.N.C. Aug. 31, 2010); *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1379 (N.D. Cal. 1994); *Mkt.-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 488 (D. Del. 2013); *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. CV 14-1142-GMS, 2015 WL 4624164, at *1 (D. Del. July 31, 2015) (which case did not even involve a parallel action before the PTAB).  These factors are not applicable in the trademark context.

For all of these reasons, a ruling in the TTAB Opposition cannot simplify the matters at issue before this Court which are different and far broader, and include claims for injunctive relief and damages.  This factor strongly favors denying the Motion to Stay and proceeding in the federal case.

## C.   Prejudice to Plaintiff

Given the urgency of the injunctive relief Plaintiff seeks and the harm to Plaintiff that occurs with delay, Plaintiff would suffer significant prejudice if it were forced to wait to proceed with its claims in the federal case.  *See SafeRack*, 2018 WL 3696557, at *2.  *See also Duke Univ.*, 2014 WL 1795708, at *3 ("at least where an infringement claim is involved—whether directly asserted by an 'owner' or challenged in a declaratory action—there is often some

---

*Commc'ns AB*, No. 13-1227-GMS, 2014 U.S. Dist. LEXIS 161801 (D. Del. May 14, 2014); *Celorio v. On Demand Books LLC*, No. 12-821-GMS, 2013 U.S. Dist. LEXIS 121449 (D. Del. Aug. 21, 2013).

urgency." (internal citations omitted)).  Plaintiff's claims for an injunction and damages are not pending before the TTAB, and the TTAB does not have authority to provide legal or equitable relief.  *See SafeRack*, 2018 WL 3696557, at *2 (citing *Duke Univ.*, 2014 WL 1795708 at *3 ("the [TTAB] cannot give relief for an infringement claim, either injunctive or by way of damages") (quoting *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996))).  Further, the TTAB cannot adjudicate Plaintiff's claims under state law.  *See SafeRack*, 2018 WL 3696557, at *2.  Plaintiff will suffer undue prejudice and continuing harm from a stay of the federal case because it requires an injunction foremost and cannot be fully compensated with money damages to redress the harm that would be inflicted if Defendants were enabled to continue their rollout and expansion of use of the infringing mark CPFA over the years it would take to complete the TTAB Opposition and any appeals thereof, and all prior to a resumption of this case.

To grant a stay of the federal case pending a Board decision, which could take years, would be a severe prejudice and cause irreparable harm to Plaintiff, as Defendants' continued use of the infringing mark CPFA continues unfettered and unabated.  A stay would also prejudice Plaintiff's right to an injunction in a timely manner, and waste the resources of the agency and the parties, as the Court must still consider the broader claims and issues beyond the right to registration of one application at issue in the TTAB Opposition.

Accordingly, this factor strongly favors Plaintiff.

## III.    CONCLUSION

For all of these reasons, Defendants' Motion to Stay the federal case should be denied, and the Court should grant other relief as the Court deems just and proper.

Dated:  April 1, 2019

Respectfully submitted,

DLA PIPER LLP (US)

By: /s/ Anthony D. Gill
    Anthony D. Gill
    Virginia Bar No.: 88390
    Ann K. Ford (admitted *pro hac vice*)
    John M. Nading (admitted *pro hac vice*)
    500 8th Street, NW
    Washington, DC  20004
    Telephone: 202-799-4000
    Facsimile: 202-799-5000
    anthony.gill@dlapiper.com
    ann.ford@dlapiper.com
    john.nading@dlapiper.com

    *Attorneys for Plaintiff CFA Institute*

EAST\165522840