CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/03/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| CFA INSTITUTE a Virginia Non-Stock Corporation,<br>  Plaintiff,<br>v.<br><br>AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES, et al.,<br>  Defendant. | Civil Action No. 3:19cv00012<br><br>MEMORANDUM OPINION<br><br>By: Joel C. Hoppe<br>   United States Magistrate Judge |

This matter is before the Court on Defendant American Society of Pension Professionals & Actuaries's ("ASPPA") Motion to Stay. ECF No. 16. The parties have briefed the issues, *see* ECF Nos. 16, 23, and the Court held a hearing on April 12, 2019, ECF No. 29. Based on the parties' written submissions, oral arguments, and the relevant law, I find that ASPPA's Motion to Stay will be denied.

      I.  Background and Procedural History

This case concerns allegations by Plaintiff CFA Institute ("CFA") that ASPPA infringed various trademarks held by CFA. CFA is not-for-profit association of investment professionals that offers educational and certification services to various entities. *See* Compl. ¶¶ 10, 13, ECF No. 1. It has applied for and obtained a series of registered trademarks, including CFA CHARTERED FINANCIAL ANALYST; C.F.A.; and CFA INSTITUTE. (collectively, the "CFA Marks"). *Id*. ¶ 13; *see also* Def.'s Mot. to Stay, Ex. 2 ("Notice of Opp'n"), ECF No. 16-2. It uses some of these marks in connection with its CFA Program through which investment professionals can become certified by CFA, be awarded the right to use the professional CFA or "Chartered Financial Analyst" designation, and become eligible for CFA membership. Compl. ¶

1

29. CFA also offers various educational programs for its "members, program candidates, investors, employers, institutions, and the press." *Id*. ¶ 30.

ASPPA is a non-profit professional organization that offers educational and credentialing programs in the field of employer-based retirement plans. Def.'s Mot. to Stay 1, ECF No. 16. Specifically, ASPPA offers a program in which retirement plan advisors can earn the right to use the ASPPA designation, "CPFA," or "Certified Plan Fiduciary Advisor." *See id*. at 2–3. In July 2016, ASPPA applied for trademark protection for the mark, NAPA CPFA CERTIFIED PLAN FIDUCIARY ADVISER (the "ASPPA Mark"). *See id*. at 2. This mark was published in the Federal Register on August 15, 2017. *See* Notice of Publication, United States Patent and Trademark Office, Serial No. 87-103,390 (July 26, 2017).[1]

On February 12, 2018, CFA filed a Notice of Opposition against ASPPA with the United States Trademark Trial and Appeal Board ("TTAB"), pursuant to 15 U.S.C. § 1063, alleging that it was or would be damaged by registration of the ASPPA Mark (the "Opposition Proceeding"). Pl.'s Notice of Opp'n 1, ECF No. 16-2. In March 2018, ASPPA filed a counterclaim to restrict the registration of the CFA Marks to reflect that CFA does not direct its goods and services specifically or exclusively to professionals in the field of retirement financial planning. *See* ASPPA Answer & Countercl., *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, Opp'n No. 91239462 (T.T.A.B. 2018), Filing No. 5. ASPPA similarly alleged in an affirmative defense that because the uses of the ASPPA Mark were directed toward retirement-based financial planning or investments, the distinction between the services offered was sufficient to avoid likelihood-of-

---

[1] Though the parties have not appended all relevant filings from the Opposition Proceeding to their briefs, I nonetheless take judicial notice of these filings, which are publically available on the USPTO's website. *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, Opp'n No. 91239462 (T.T.A.B. Feb. 12, 2018), http://ttabvue.uspto.gov/ttabvue/v?qt=adv&procstatus=All&pno=91239462&propno=&qs=&propnameop =&propname=&pop=&pn=&pop2=&pn2=&cop=&cn=. *See Dixon v. Cole*, Civ. No. 16-3922, 2018 U.S. Dist. LEXIS 25909, at *3 (Feb. 15, 2018) ("The court may . . . take judicial notice of matters of public record, such as administrative proceedings.").

confusion between the parties' marks. *Id*. ¶¶ 51–57. In September 2018, the TTAB granted CFA's motion to dismiss ASPPA's counterclaim, finding that ASPPA's proposed restriction of CFA's mark was "ambiguous." TTAB Order of Sept. 27, 2018, Opp. No. 91239462, Filing No. 12. ASPPA filed an amended counterclaim in October 2018 similarly seeking to restrict the registration of the CFA Marks to services "offered primarily to professionals outside the field of retirement financial planning." ASPPA Am. Answer & Countercl., Opp'n No. 91239462, Filing No. 13. In November, CFA again moved to dismiss ASPPA's counterclaim, CFA Mot. to Dismiss, Opp'n No. 91239462, Filing No. 14, and the TTAB suspended proceedings pending the resolution of CFA's motion, TTAB Order of Nov. 20, 2018, Opp'n No. 91239462, Filing No. 15. In March 2019, CFA moved to suspend the Opposition Proceeding pending the disposition of the matter pending before this Court. CFA Mot. to Suspend, Opp'n No. 91239462, Filing No. 18.

In February 2019, CFA filed the present infringement action in this Court alleging that the ASPPA Mark infringed the CFA Marks and asserting claims under federal and state law for trademark infringement, unfair competition, and accounting. *See generally* Compl. 3–24. The following month, CFA filed a motion with the TTAB seeking to suspend the Opposition Proceeding pending the outcome of the present civil action. *See* Def.'s Mot. to Stay Ex. 1, ECF No. 16-1. Several days later, ASPPA filed its Motion to Stay, asking this Court to stay the case pending the outcome of the Opposition Proceeding. On April 26, 2019, the TTAB issued an order granting CFA's Motion to Suspend and denying, without prejudice, CFA's Motion to Dismiss. TTAB Order of Apr. 26, 2019, Opp'n No. 91239462, Filing No. 21. It found that this civil action "involves the same parties and marks at issue in the opposition proceeding, and the same issues, namely, which party has priority and whether there is a likelihood of confusion between the parties' marks." *Id.* at 4. Thus, the TTAB suspended the Opposition Proceeding

3

"pending final disposition of the Civil Action" and noted, "[i]f the District Court grants [CFA's] motion to stay the Civil Action in favor of [the Opposition Proceeding], the [TTAB] will resume [the Opposition Proceeding]." *Id*. at 5. For the reasons that follow, I find that the circumstances of this case do not merit a stay of the proceedings in this Court.

II. Discussion

Under the Lanham Act, a person who "believes that he would be damaged by the registration of a mark upon the principal register" may "file an opposition" with the United States Patent and Trademark Office ("USPTO") to challenge the proposed registration. 15 U.S.C. § 1063(a). This filing gives rise to an opposition proceeding before the TTAB. *See* 15 U.S.C. § 1067; *Lodestar Anstalt v. Bacardi & Co.*, No. CV-16-06411, 2016 U.S. Dist. LEXIS 167983, at *2 (C.D. Cal. Nov. 16, 2016). Opposition proceedings under § 1063(a) are similar to civil actions in federal district court. *See* TTAB Manual of Procedure § 102.03 (2018) ("TBMP"). The proceedings are largely governed by the Federal Rules of Civil Procedure, and they permit discovery and depositions. *See B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1300 (2015) (citing 37 C.F.R. §§ 2.116(a), 2.120, 2.122(a), 2.123(a)). The party opposing registration bears the burden of proof. *Id*.

A party seeking review of the TTAB's decision may appeal to the United States Court of Appeals for the Federal Circuit. 15 U.S.C. § 1071(a). Alternatively, a party may seek review in federal district court, *id.* § 1071(b), at which time the parties may conduct additional discovery, and the judge resolves the registration dispute *de novo*. *B&B Hardware*, 135 S. Ct. at 1301. Notwithstanding these options, the Lanham Act also provides for a civil cause of action for trademark infringement that may be filed, in the first instance, with the district court. *See* 15 U.S.C. §§ 1114 (registered marks), § 1125 (unregistered marks). Unlike with opposition

4

proceedings under § 1063(a), a district court in infringement litigation "considers the full range of a mark's usages, not just those in the application." *B&B Hardware*, 135 S. Ct. at 1301.

ASPPA argues that this Court should stay CFA's infringement action pending CFA's Opposition Proceeding against the ASSPA Mark currently pending before the TTAB. It is well-settled that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Derosa v. J.P. Walsh & J.L. Marmo Enters.*, 541 F. App'x 250, 252 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Accordingly, in determining whether to grant a motion to stay, the Court must exercise its discretion to "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections*, 729 F.3d 370, 375 (4th Cir. 2013). The Court considers the following factors: "(1) the length of the stay; (2) the hardship the movant would face if the stay were denied; (3) the burden of the stay on the nonmovant; and (4) whether the stay would promote judicial economy by avoiding duplicative litigation." *City of Galax v. Perdue Pharma, L.P.*, No. 7:18cv617, 2019 U.S. Dist. LEXIS 24551, at *10 (W.D. Va. Feb. 14, 2019). The moving party bears the burden to show good cause for the stay. *See Landis*, 229 U.S. at 254–55. I find, on balance, that the relevant factors weigh against granting ASPPA's motion.

A. *Length of the Stay and Judicial Economy*

As to the first and fourth factors, CFA argues that the Opposition Proceeding is in its "early stages" and that this civil action "will proceed more quickly" than the Opposition Proceeding. Pl.'s Br. in Opp'n 4–5, ECF No. 23. ASPPA has not produced any specific evidence that the Opposition Proceeding will necessarily advance at a faster pace than proceedings in this

Court, and I am unaware of any reason that this Court could not bring this case to conclusion at least as expeditiously as the TTAB. Indeed, the Court in this case has already issued a preliminary Scheduling Order, ECF No. 15, and the parties are expected to begin discovery shortly. Alternatively, the Opposition Proceeding before TTAB has been pending for over one year and the parties have not exchanged any discovery, nor set a date for trial. Moreover, pursuant to the most recent scheduling order entered in the TTAB proceeding, the parties would not be able to secure a hearing date for trial until at least July 2020, a date that will almost certainly be postponed in light of the fact that the Opposition Proceeding remains suspended. *See* Order of Sept. 27, 2018, Opp'n No. 91239462, Filing No. 12. At bottom, ASPPA has failed to show any efficiency to be gained by permitting CFA's case to proceed before TTAB rather than this Court.[2]

I further reject ASPPA's argument that the stay would assist in avoiding duplicative litigation before the TTAB and this Court. The principal dispute between the parties on this issue concerns whether, in light of the Supreme Court's decision in *B&B Hardware*, the TTAB's decision in the Opposition Proceeding would result in issue preclusion. In *B&B Hardware*, the Court explained that so long as "the usages adjudicated by the TTAB are materially the same as those before the district court" in a civil infringement action, issue preclusion would bind the district court to the TTAB's decision in an opposition proceeding. 135 S. Ct. at 1310. CFA argues that *B&B Hardware* is inapposite because the ruling does not apply where "the ordinary elements [of issue preclusion] will not be met" Pl.'s Br. in Opp'n10 (quoting *B&B Hardware*,

---

[2] I am also not persuaded by ASPPA's argument that CFA could elect to pursue expedited opposition proceedings. Though the TTAB rules do offer "Accelerated Case Resolution," this option requires both "consent of the parties and agreement by a [TTAB] attorney or judge." TBMP § 702.04(a). Because it is not clear whether either party would be willing to agree to such proceedings, I cannot find that such an option is would necessarily be available to CFA.

6

135 S. Ct. at 1306). It is unnecessary for me to reach a conclusion on this point because, irrespective of whether TTAB's decision would result in preclusion before this Court, I find that duplicative litigation can also be avoided—and judicial economy best served—by moving forward with litigation pending before this Court. First, the TTAB has already suspended the Opposition Proceeding pending the outcome of this civil action. Accordingly, any issues that TTAB would have decided that might have lead to issue preclusion in this Court will instead be decided by this Court and may result in issue preclusion at the TTAB. *See B&B Hardware*, 135 S. Ct. at 1305–06 ("Neither is issue preclusion a one-way street. When a district court, as part of its judgment, decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment."); *see also* TTAB Order of Apr. 26, 2019, Opp'n No. 91239462, Filing No. 21 ("[T]he Civil Action may have a bearing on the [O]pposition [P]roceeding such that proceeding here prior to the resolution of the Civil Action would be inefficient and pose a risk of inconsistent judgments."). Because preclusion—if it applies—will inevitably bind one forum to the judgment of the other, there is no distinct benefit to permitting the TTAB proceeding, which is currently suspended, to advance ahead of this Court's disposition of the case. Judicial economy will be best served by permitting the forum that will conclude more quickly to move forward. As discussed above, this Court, at least at the moment, appears to be moving forward at a faster pace.

Second, it is not clear that the TTAB's decision will necessarily bind this Court as the TTAB has not reached a final judgment and the matter of issue preclusion has not yet been presented to this Court. Ultimately, this Court would need to perform a somewhat complex preclusion analysis on each of CFA's claims. Any decision reached would then be subject to an appeal that could extend this litigation far beyond the time it would have taken to simply decide

the case on its merits. For these reasons, I find that the judicial economy factor weighs in favor of denying ASPPA's Motion to Stay.

B. *Burden on ASPPA*

As to the second factor, I find that any harm ASPPA might suffer as a result of this Court's refusal to grant a stay would be negligible. In its briefing, ASPPA does not identify any particular concern it has with respect to the burden of moving forward with CFA's infringement action. At worst, ASPPA implies that it would "be forced to divert its resources to defend itself" in the infringement action during the pendency of the Opposition Proceeding. *See Tigercat Int'l v. Caterpillar Inc.* No. 16-cv-1047, 2018 U.S. Dist. LEXIS 83010, at *17 (D. Del. May 2, 2018). This argument no longer has merit, however, in light of the TTAB's recent decision to suspend the Opposition Proceeding in favor of the civil infringement action. Moreover, because the TTAB proceeding is still in a very early stage, ASPPA has not yet had to invest significant time and resources in its defense of CFA's Notice of Opposition. Accordingly, I do not find that ASPPA would be significantly harmed by moving forward in this Court.

C. *Burden on CFA*

As to the third factor, CFA argues that it would suffer significant prejudice from a delay in the district court proceedings because TTAB cannot provide the legal or equitable relief it seeks in its Complaint. ASPPA responds that CFA's allegations of prejudice are bellied by its delay in seeking relief from this Court. ASPPA points to two decisions where courts found that a party's delay in filing suit in district court undermined its claim for prejudice in opposing a stay of the district court proceedings. I find that the procedural histories from those cases are distinguishable from the facts at bar. In *Tigercat*, the defendant began opposition proceedings in TTAB in November 2013, but the plaintiff waited approximately three years before seeking a

declaratory judgment action, which the defendant sought to stay. 2018 U.S. Dist. LEXIS 83010, at *2–5. The district court balked at the "three years [the plaintiff] seemed unconcerned" with the prejudice it now alleged it would suffer if its declaratory judgment action were stayed, and the court further noted that the plaintiff offered "no explanation for its delay in bringing the instant claims." *Id.* at *15. Similarly, in *Lodestar Anstalt*, the plaintiff filed an infringement action more than three years after the defendant's registration application and nearly two and one-half years after the filing of its opposition proceedings with TTAB. 2016 U.S. Dist. LEXIS 167983, at *4–6. The court found "the fact that [the plaintiff] did not assert its claims for trademark infringement . . . until almost three years after [the defendant] began using [its] mark undermines its argument that these claims require immediate resolution." *Id*. at *12. It further found, "[a]fter dragging [the defendant] through more than two years of litigation before TTAB, [the plaintiff[ should not be allowed to start all over again in a different forum on the eve of TTAB's decision." *Id*. at *13. In each case, the TTAB proceedings were far along, and the district courts viewed the actions commenced in their courts as delay tactics. That situation is not presented here.

In this case, CFA filed its opposition with the TTAB in February 2018, approximately seven months after publication of the ASPPA Mark. *See* Notice of Publication, United States Patent and Trademark Office, Serial No. 87-103,390 (July 26, 2017) (identifying intended publication date of August 15, 2017). It filed its civil action almost exactly one year later. I cannot find this delay tantamount to the multi-year delays by the plaintiffs in *Tigercat* and *Lodestar Anstalt*. Moreover, at the hearing on this motion, CFA provided a justifiable excuse for its delays, explaining that it had filed the TTAB proceeding earlier because of a pending limitations deadline, but that it needed additional time to collect the requisite information for the civil filing. Though I do not find that CFA would suffer extraordinary prejudice by staying this

9

case in favor of the Opposition Proceeding, I do find, as described above, that proceedings in this action are advancing at a faster pace and that this Court could handle CFA's claims at least as expeditiously as the TTAB. *See Goya Foods, Inc. v. Tropicana Prods.*, 846 F.2d 848, 854 (2d Cir. 1988) (stating that litigants in trademark-infringement cases are "entitled to have the infringement issue resolved promptly so that [they] may conduct [their] business affairs in accordance with the court's determination of its rights"); *cf. PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (4th Cir. 1996) ("[A]t least where an infringement claim is involved . . . there is often some urgency. Ongoing business conduct is likely to be involved and harm, possibly irreparable, may be accruing."). Accordingly, I also find that the third factor does not weigh in favor of ASPPA's Motion to Stay.

III. Conclusion

For the foregoing reasons, ASPPA's Motion to Stay will be denied in an order accompanying this opinion.

ENTER: May 3, 2019

*/s/ Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge