CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/24/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| CFA INSTITUTE, a Virginia Non-Stock Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES, *et al.*,<br><br>*Defendants*. | CASE NO. 3:19-cv-00012<br><br>**MEMORANDUM OPINION**<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff CFA Institute's Motion to Dismiss Defendant American Society of Pension Professionals & Actuaries' ("ASPPA") Counterclaim for Cancellation by Restriction under Section 18 of the Lanham Act, 15 U.S.C. § 1068 ("Section 18"). Dkt. 39. Plaintiff initiated this action against Defendants alleging, *inter alia*, trademark infringement and unfair competition relating to the parties' respective financial advisor certification programs. Dkt. 1. Defendants brought the present Counterclaim in its Answer to Plaintiff's Complaint. Dkt. 35. For the reasons stated herein, the Court will grant Plaintiff's Motion to Dismiss Defendant's Counterclaim.

## I.   Facts as Alleged

The parties to this dispute are organizations in the business of certifying, training, and providing a network for financial advisors. Dkt. 1, ¶ 10; Dkt. 35 at 12. Plaintiff, the CFA Institute, is a non-stock corporation based in Charlottesville, Virginia, and caters to financial advisors generally, rather than industry-specific advisors as the Defendants do. *Id*. Plaintiff claims a worldwide membership of 147,000. Dkt. 1, ¶ 10. In addition to services offered to its members,

1

such as networking events and seminars, it also provides a training and certification program: the "Chartered Financial Analyst" program, or the "CFA Program." Dkt. 1, ¶ 27. Plaintiff federally trademarked "CFA" on June 6, 1972, for "association services—namely, the promotion of interest and professional standards in the field of financial analysts." Dkt. 1, ¶ 15. The USPTO deemed this registration incontestable in 1977. *Id*. It has since received incontestable trademark registrations for CFA for "educational services," printed financial publications, and "financial analysis services" (referred to collectively herein as "CFA Marks"). Dkt. 1 at 3–8.

To earn Plaintiff's CFA certification, investment professionals must have at least four years of relevant experience and complete a self-study course followed by three six-hour examinations. Dkt. 1, ¶¶ 27–28. Plaintiff claims the CFA Program is comparable to a post-graduate degree in "scope and depth." *Id*. Those who pass the examination become a CFA Institute member and may use the professional designation "Chartered Financial Analyst" or "CFA." Dkt. 1, ¶ 29. CFAs are then bound by the CFA Institute's codes of ethics and professional conduct, and they must pay annual dues to Plaintiff to maintain their certification. *Id*. Plaintiff claims "investors and financial professionals recognize the CFA Marks as the definitive standard for measuring competence and integrity in the fields of portfolio management and investment analysis." Dkt. 1, ¶ 28.

The named Defendants are three of five subsidiary organizations under the umbrella of the American Retirement Association ("ARA"). Dkt. 35 at 12. The ARA trains, educates, and offers membership services for those providing financial advice to employers on retirement plans offered to their employees. *Id*. The ARA claims a worldwide membership of 14,000. *Id*.

One of the ARA's subsidiaries named in the Complaint is the National Association of Plan Advisors ("NAPA"), which offered a "Plan Financial Consulting" or "Qualified Plan Financial Consultant" certification until 2016, when it was replaced by the "Certified Plan Fiduciary

Advisor" or "CPFA" certification. Dkt. 35 at 6, 12. Defendants allege that this new certification corresponded with the U.S. Department of Labor broadening the definition of a "fiduciary" under the Employee Retirement Income Security Act of 1974.[1] Dkt. 35 at 12. The CPFA credential can be earned by candidates who pass a three-hour multiple-choice test. CPFAs must complete continuing education to maintain the credential. Dkt. 35 at 5.

Prior to this action's commencement, Defendant ASPPA sought to register its CPFA mark with the U.S. Patent and Trade Office (U.S. Application No. 87103390). Dkt. 16 at 1. This mark was published in the Federal Register on August 15, 2017. *See* Notice of Publication, United States Patent and Trademark Office, Serial No. 87-103,390 (July 26, 2017). Plaintiff subsequently filed a Notice of Opposition against ASPPA with the Trademark Trial and Appeal Board ("TTAB"), alleging that its CFA Marks were or would be damaged by the registration of the CPFA Mark. Dkt. 16, Ex. 2. ASPPA then filed a counterclaim—nearly identical to the counterclaim presently at issue—to restrict the registration of the CFA Marks to reflect that Plaintiff does not direct its goods and services specifically to professionals in the field of retirement financial planning at the employer level. *See* ASPPA Answer & Countercl., *CFA Inst. v. Am. Soc'y of Pension Prof'ls & Actuaries*, Opp'n No. 91239462 (T.T.A.B. 2018), Filing No. 5. ASPPA also alleged as an affirmative defense that there was no likelihood of confusion, because the two marks catered to distinct segments of financial planning. *Id*.

---

[1] *See* Department of Labor (DOL), Employee Benefits Security Administration (EBSA), "Definition of the Term ''Fiduciary''; Conflict of Interest Rule—Retirement Investment Advice; Best Interest Contract Exemption; ... Final rule," 81 Federal Register, April 8, 2016; *see also* Annette L. Nazareth, *Department of Labor's Final Rule on "Fiduciary" Definition*, Harvard Law School Forum on Corporate Governance and Financial Regulation (April 21, 2016), available at https://corpgov.law.harvard.edu/2016/04/21/department-of-labors-final-rule-on-fiduciary-definition/.

While the TTAB proceedings progressed, Plaintiff filed an action in this Court, bringing the following claims: Federal Trademark Infringement pursuant to 15 U.S.C. § 1114; Federal Unfair Competition, False Designation of Origin, and False and Misleading Representations pursuant to 15 U.S.C. § 1125(a); Trademark Infringement and Unfair Competition under Va. Code §§ 59.1-92.12, 59.1-92.13; Trademark Infringement and Unfair Competition under Virginia Common Law; and Accounting under 15 U.S.C. § 1117. Dkt. 1. Shortly after, Plaintiff moved the TTAB to stay its proceedings pending this Court's disposition of the matter, which the TTAB granted. TTAB Order of Apr. 26, 2019, Opp'n No. 91239462, Filing No. 21. ASPPA filed a similar motion to stay this action, which U.S. Magistrate Judge Joel C. Hoppe denied. Dkt. 31.

In this action, Plaintiff claims that Defendants' CPFA mark violates its CFA Marks in numerous ways. Plaintiff alleges that "[c]onsumers are likely to believe mistakenly that Defendants are affiliated or connected with, or otherwise authorized or sponsored by CFA Institute." Dkt. 1, ¶ 49. In addition, Plaintiff alleges that the CPFA mark is "nearly identical to and confusingly similar to CFA Institute's CFA Marks in appearance, sound, meaning, and commercial impression." Dkt. 1, ¶ 50. Finally, Plaintiff alleges that both the CFA Marks and Defendants' CPFA mark are "used in connection with goods and services used by professionals in the field of retirement financial planning." Dkt. 1, ¶ 51.

In their Answer to Plaintiff's Complaint, Defendants do not deny that they use the CPFA mark, that they publish this mark on their website and marketing materials, and that it is geared toward financial advisors targeting employer-level retirement planning. Dkt. 35, ¶¶ 8–10. However, Defendants allege that there is no likelihood of confusion because the markets Plaintiff and Defendants target are entirely distinct. *Id.* Specifically, Defendants claim that while Plaintiff advises on individual-level retirement planning, among other financial advising, Defendants

4

advise on the employer level. *Id*. To this end, Defendants assert an Affirmative Defense that even if the Court finds that a likelihood of confusion exists, any such risk of confusion may be avoided by amending Defendants' CPFA mark to restrict it, pursuant to 15 U.S.C. § 1068, to services exclusively related to "retirement plan advisors who provide fiduciary advice to employers at the plan level." Dkt. 35, ¶ 105.

Defendants also bring a Counterclaim for Cancellation by Restriction pursuant to Section 18 of the Lanham Act to restrict Plaintiff's CFA Marks. Dkt. 35, ¶ 12; 15 U.S.C. § 1068. Specifically, Defendants seek to alter the trademark registrations of Plaintiff's CFA Marks to specifically exclude "fiduciary advice to employers at the plan level regarding retirement [planning]." This restriction would coincide with the restriction to Defendants' own CPFA mark suggested in their Affirmative Defense.

Plaintiff now moves to dismiss Defendants' Counterclaim, alleging that Section 18 applies exclusively in TTAB proceedings. Dkt. 39. Even if such a claim does apply in federal court, Plaintiff argues, Defendants fail to plead allegations sufficient to withstand a motion to dismiss under Fed R. Civ. P. 12(b)(6). *Id*. The Court agrees with Plaintiff that Defendants' allegations are legally insufficient, regardless of whether a claim under Section 18 is cognizable in federal court.

## II. Legal Standard

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). This same standard of review applies to both claims and counterclaims. *Falls Lake Nat'l Ins. Co. v. Martinez*, No. 7:16-cv-00075, 2016 WL 4131995, at *2 (W.D. Va. Aug. 1, 2016); *First Data Merch. Servs. Corp. v. SecurityMetrics, Inc.*,

No. 12-cv-2568, 2013 WL 6234598, at *4 (D. Md. Nov. 13, 2013). "To survive the motion, a complaint (or counterclaim, as is the case here) must contain sufficient facts to state a claim that is 'plausible on its face.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all well-pleaded factual allegations in the complaint. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). The Court must further take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555, 557. This rule applies even when legal conclusions are couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *SD3, LLC v. Black & Decker, Inc.*, 801 F.3d 412, 422 (4th Cir. 2015).

### III. Analysis

Defendants bring this Counterclaim seeking Cancellation by Restriction under Section 18 of the Lanham Act. 15 U.S.C. § 1068. Through Section 18, Defendants requests that this Court restrict the federal registrations of Plaintiff's CFA Marks, alleging that any likelihood of confusion that Plaintiff seeks to prove in its case-in-chief may be avoided by essentially writing out an aspect of Plaintiff's trademarks allegedly not in use. Dkt. 35 at 13–14. To sustain such an action, the TTAB held in *Eurostar Inc. v. "Euro-Star" Reitmoden Gmbh & Co.*, that the plaintiff must allege two elements: "(1) the entry of a proposed restriction to the goods or services in its opponent's application or registration will avoid a finding of likelihood of confusion, and (2) the opponent is not using its mark on those goods and services that will be effectively excluded from the application or registration if the proposed restriction is entered." 34 U.S.P.Q.2d 1266 at *7

(T.T.A.B. 1995). Defendants ask that the Court restrict the language of Plaintiff's CFA Marks by inserting the following limiting clause at the end of each registration:

> ... all of the foregoing not directed to retirement plan advisors who provide fiduciary advice to employers at the plan level regarding retirement plan implementation, design, and investment selection and monitoring.

Dkt. 35 at 14. As a threshold issue, it is far from clear that Section 18 even applies in federal court, or that it instead provides a remedy exclusively available in TTAB proceedings. Defendants, in their briefs and at oral argument, failed to identify a single federal district court that has entertained either a claim or counterclaim for Cancellation by Restriction pled under Section 18 in the decades since its enactment.[2] That being said, courts have been almost equally silent as to Section 18's *inapplicability* in federal court,[3] although several appear to have assumed Section 18's exclusive applicability in TTAB proceedings without directly addressing the issue.[4]

Regardless, even if this Court were to accept that Section 18 and *Eurostar* apply in federal court, Defendants' Counterclaim would nonetheless be legally insufficient. *Eurostar* requires proof that "(1) the entry of a proposed restriction to the goods or services in its opponent's

---

[2] Specifically, Defendants argue that Section 18 applies "by virtue of" Section 37 of the Lanham Act, 15 U.S.C. § 1119, but Defendants fail to cite any caselaw supporting this theory either.

[3] *See Ferring B.V. v. Fera Pharms., LLC*, No. 13-cv-4640, 2015 WL 1359073, at *3–4 (E.D.N.Y. Mar. 24, 2015) ("It is unclear whether *Eurostar* applies to trademark infringement disputes in federal courts and not solely to *inter party* proceedings before the T.T.A.B."); *Easton v. Primal Wear, Inc.*, No. 17-cv-06081, 2019 WL 1430985, at *4 (N.D. Ill. Mar. 29, 2019) ("[T]he Court is unaware of any caselaw suggesting that a federal court may, in an infringement dispute, modify a senior user's trademark registration in order to eliminate the likelihood of confusion.").

[4] *Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437, 443 (4th Cir. 2007) ("As an administrative tribunal of limited jurisdiction, the TTAB is empowered only to decide whether a given trademark is registrable. *See* 15 U.S.C.A. §§ 1067, 1068 (West Supp.2007)."); *Younique, L.L.C. v. Youssef*, No. 215-cv-00783JNPDBP, 2016 WL 6998659, at *8 (D. Utah Nov. 30, 2016) (describing the TTAB's cancellation authority under Section 18); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. CIV. WDQ-08-2764, 2011 WL 6202479, at *2 (D. Md. Dec. 6, 2011) ("Under 15 U.S.C. § 1068, the TTAB may determine whether the marks are likely to be confused based on "the evidence adduced ... as to the actual goods or services" instead of limiting it to considering confusion based on the recitation of goods or services in the registration application) (citations omitted); *Buck's, Inc. v. Buc-ee's, Ltd.*, No. 8:08CV519, 2009 WL 1839007, at *2 (D. Neb. June 25, 2009) ("As an administrative tribunal of limited jurisdiction, the TTAB is empowered only to decide whether a given trademark is registrable. *See* 15 U.S.C. § 1068.").

application or registration will avoid a finding of likelihood of confusion, and (2) the opponent is not using its mark on those goods and services that will be effectively excluded from the application or registration if the proposed restriction is entered." *Eurostar*, 34 U.S.P.Q.2d 1266 at *7. To survive Plaintiff's motion to dismiss, that means Defendants must plead sufficient facts to make their claim for relief plausible. Defendants plead just a single paragraph to each of *Eurostar*'s two elements; the Court's analysis of each demonstrates their legal insufficiency.

    *i)*    *Likelihood of Confusion*

In Defendants' Counterclaim, they allege the following to prove *Eurostar*'s likelihood of confusion prong:

> Entry of the proposed restriction will avoid any alleged likelihood of confusion between the parties' identifications because the proposed restriction—in conjunction with the proposed restriction to ARA's pending U.S. Application No. 87103390—makes it clear that the parties' credentials are directed to distinct customer segments comprised of sophisticated professionals, each of which engages with its own distinct client base that exercises a high degree of care.

Dkt. 35 at 14. The first portion of Defendants' single allegation to this element, "Entry of the proposed restriction will avoid any alleged likelihood of confusion between the parties' identifications," Dkt. 35 at 14, is a bare-bone recitation of *Eurostar*'s first element and is thus disregarded. *Twombly*, 550 U.S. at 555. The second portion of this allegation—"the proposed restriction—in conjunction with the proposed restriction to ARA's pending U.S. Application No. 87103390—makes it clear that the parties' credentials are directed to distinct customer segments comprised of sophisticated professionals, each of which engages with its own distinct client base that exercises a high degree of care"—is less of a regurgitation of *Eurostar*'s first element but still insufficient to move the needle into plausibility. Dkt. 35 at 14.

Defendants argue that their allegation on the first element is sufficient because "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'" Dkt. 40 at 10. But this downplays the impact of *Bell Atlantic Corp. v. Twombly*, in which "the Supreme Court announced a new pleading standard." *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017). Under this standard, "allegations must be sufficient to raise a right to relief above the speculative level, including sufficient facts to state a claim that is plausible on its face." *Id*. (citations omitted). Furthermore, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Finally, assuming the veracity of "well-pleaded factual allegations," a court must conduct a 'context-specific' analysis drawing on 'its judicial experience and common sense' and determine whether the factual allegations 'plausibly suggest an entitlement to relief.'" *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, No. 4:11-cv-75, 2012 WL 2673242, at *3 (E.D. Va. July 5, 2012) (quoting *Iqbal*, 556 U.S. at 679–80).

Absent from Defendants' allegations are *any* facts that, if proven, would demonstrate how this proposed change would affect any likelihood of confusion in the actual marketplace.[5] *Easton*, 2019 WL 1430985, at *4 (distinguishing likelihood of confusion in the Federal Register from likelihood of confusion in the marketplace). *See also, Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. CIV. WDQ-08-2764, 2011 WL 6202479, at *3 (D. Md. Dec. 6, 2011) (affirming the TTAB's determination that partially cancelling the senior trademark would not avoid a likelihood of confusion in the actual marketplace). Furthermore, alleging that CPFA- or CFA-certified advisors serve their "own distinct client base" or "distinct customer segments" bears little on whether the proposed restriction would avoid a likelihood of confusion, and replacing "avoids a likelihood of

---

[5] Although the Court should not take Plaintiff's allegations as true in considering their Motion, it is far from clear how the proposed restriction would abate the likelihood of confusion alleged by Plaintiff. Namely, that "[c]onsumers are likely to believe mistakenly that Defendants are affiliated or connected with, or otherwise authorized or sponsored by CFA Institute." Dkt. 1, ¶ 49. The type of confusion Plaintiff alleges—similarity in "appearance, sound, meaning, and commercial impression"—would hardly be abated by a cleaner delineation of the parties' respective customer segments in the Federal Register. Dkt. 1, ¶ 50.

confusion" with the synonymous "makes it clear" is merely an attempt to recast a legal conclusion as a factual allegation. *See Papasan*, 478 U.S. at 286. Defendants have failed to allege facts to make their counterclaim plausible, at least with respect to *Eurostar*'s first element.

    *ii)*    *Actual use*

Even if I determined that Defendants had adequately pleaded *Eurostar*'s first element, their pleading with respect to the second element, which requires that Defendants show that Plaintiff "is not using its mark on those goods or services that will be effectively excluded from the application or registration if the proposed restriction is entered," is even more deficient. To this element, Defendants pleaded:

> The proposed restriction to Plaintiff's asserted registrations is consistent with Plaintiff's actual use of its marks in U.S. commerce because Plaintiff does not direct its goods and services to retirement plan advisors who provide fiduciary advice to employers at the plan level regarding retirement plan implementation, design, and investment selection and monitoring.

Dkt. 35 at 14. First, Defendants do not allege that "Plaintiff does not use its CFA Marks in connection with retirement plan advising at the employer level." Rather, Defendants allege that Plaintiff "does not direct its goods and services to" retirement planning at the employer level. Dkt. 35 at 14. Even if the Court were to construe "does not direct" to allege non-use, this allegation would do no more than recite *Eurostar*'s second element. Defendants merely state that the proposed restrictions are consistent with actual use, when it should instead "sufficiently allege facts to allow the Court to infer" as much. *Jordan v. Alternative Res. Corp*., 458 F.3d 332, 344–45 (4th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," more is required than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Defending their allegations under both elements, Defendants cite three TTAB decisions in their briefings where Section 18 claims were upheld despite containing comparably thin factual allegations. Dkt. 40 at 10 (citing *IdeasOne, Inc. v. Nationwide Better Health, Inc.*, 89 USPQ2d 1952, 1954 (TTAB 2009); *Covidien LP v. Massimo Corp.*, Cancellation No. 92057336, 2014 WL 977444, at *5 (TTAB 2014); *East West Bank v. Plubell Firm LLC*, Opposition No. 91233279, 2018 WL 1110045, at *5 (TTAB Feb. 27, 2018)). However, TTAB cases do not have precedential force in this Court. *JFY Properties II LLC v. Gunther Land, LLC*, No. CV ELH-17-1653, 2019 WL 4750340, n.22 (D. Md. Sept. 30, 2019). No Section 18 claims exist in this or indeed any circuit to which Defendants' claim can be compared, but where courts within the Fourth Circuit have examined sufficiency of factual allegations to survive a Rule 12(b)(6) motion post-*Twombly* and *Iqbal*, they have consistently required far more than Defendants have alleged in the present case. *See e.g.*, *Rothy's, Inc. v. JKM Techs.*, LLC, 360 F. Supp. 3d 373, 380 (W.D. Va. 2018); *Rose v. Centra Health, Inc.*, No. 6:17-CV-00012, 2017 WL 3392494, at *7 (W.D. Va. Aug. 7, 2017); *Jeffrey J. Nelson & Assocs., Inc. v. LePore*, No. 4:11-CV-75, 2012 WL 2673242, at *3 (E.D. Va. July 5, 2012).

    *iii)    Implications of dismissing Defendants' Counterclaim*

Finally, Defendants argue that certain practical implications warrant sustaining their action. First, Defendants argue that unless this Court were to allow Defendants to maintain their Section 18 Counterclaim, this Court "would effectively allow Plaintiff the opportunity to persuade a jury that a likelihood of confusion exists based on the parties' identifications alone, which are much broader than the parties' actual use." Dkt. 40 at 6. This concern is plainly unfounded. As part of Plaintiff's case-in-chief, it will be required to prove that Defendants' "use in commerce" of the CPFA trademark will be "likely to cause confusion." 15 U.S.C. § 1114. Regardless of whether

Defendants' Counterclaim is maintained, likelihood of confusion based on actual use will remain a central inquiry in at least resolving Plaintiff's Section 1114 claim. *See, e.g.*, *Grayson O Company v. Agadir International LLC*, 856 F.3d 307, 319 (4th Cir. 2017); *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 271 (4th Cir. 2006) ("[T]he likelihood-of-confusion analysis looks to the actual use of competing marks").

Second, Defendants state that Plaintiff's arguments on Section 18's inapplicability in federal court stand in "stark contrast" to those made during its Motion to Stay the parallel TTAB proceedings, where "Plaintiff argued that the issues pending before the TTAB could be decided by this Court." Dkt. 40 at 5. To prevent such a bait-and-switch, Defendants also ask, if the Court were to dismiss their Section 18 Counterclaim, that the Court then issue an order "directing the TTAB to consider [Defendants'] restriction claim." Dkt. 40 at 9. Defendants provide no support for their accusation leveled at Plaintiff, and Plaintiff denies that it has taken any contradictory position. Regardless, taking Defendants' allegations as true, if Plaintiff merely represented "the issues pending before the TTAB could be decided by this Court," Dkt. 40 at 5, that is indeed correct regardless of whether this Court were to hold that Section 18 applies. This Court is empowered to hear and address all issues that were before the TTAB, even if it may cognize and adjudicate the claims differently than the TTAB proceeding would. *Durox Co. V. Duron Paint Mfg. Co*., 320 F.2d 882, 886 (4th Cir. 1963). Furthermore, the Court is now dismissing Defendants' Counterclaim on the same ground that Plaintiff sought dismissal before the TTAB: that Defendants failed to allege specific facts to support a Section 18 claim. CFA Mot. to Dismiss, Opp'n No. 91239462, Filing No. 14 at 1–2.

## IV. Conclusion

Even if Section 18 does apply in federal court, Defendants fail to adequately allege facts sufficient to make their claim for relief plausible. Consequently, their Counterclaim for Cancellation by Restriction pursuant to Section 18 will be dismissed without prejudice.

An accompanying order shall issue.

Entered this 24th day of October, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE