CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED

02/04/2020
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| CFA INSTITUTE, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-cv-00012 |
| AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES; AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES D/B/A NATIONAL ASSOCIATION OF PLAN ADVISORS; and AMERICAN SOCIETY OF PENSION PROFESSIONALS & ACTUARIES D/B/A AMERICAN RETIREMENT ASSOCIATION, | § § § § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This trademark infringement case is before me on Defendants' (collectively, "ARA") motion to compel discovery responses from Plaintiff CFA Institute ("CFA"). Dkt. 61. The motion has been fully briefed and the Court heard oral argument. On January 30, 2020, the Court entered an order summarily setting forth its ruling, Dkt. 66, and now provides the following analysis.

**I.     Background**

CFA brought this action for trademark infringement, unfair competition and accounting against ARA, alleging that ARA's CPFA mark – CPFA - violates the CFA trademarks ("CFA Marks") in numerous ways. Dkt. 1. CFA is a not-for-profit association of investment professionals, and owns several trademarks, including "CFA," "CFA

Institute," and "Chartered Financial Analyst." Id. at ¶ 10. CFA uses the "CFA" trademark to identify its certification program for investment professionals. Id. at ¶ 11.

ARA consists of three of five subsidiary organizations under the umbrella of the American Retirement Association. Dkt. 35 at 12. ARA trains, educates and offers membership services for those providing financial advice to employers on retirement plans offered to their employees. Id. ARA offers a "Certified Plan Fiduciary Advisor" or "CPFA" certification for those who go through its programs. Id.

ARA attempted to register its CPFA mark with the USPTO, but CFA filed a notice of opposition and the initiated this suit. Dkt. 16. CFA asserts that the CPFA mark infringes on its trademark due to likelihood of confusion. ARA asserts that there is no likelihood of confusion because the two marks cater to distinct segments of the financial planning market.

**II.     Analysis**

ARA's discovery requests seek three main categories of information:
1) agreements CFA has entered into relating to its CFA Marks (including coexistence agreements and license agreements); 2) CFA's enforcement efforts against third-parties involving its CFA Marks (such as demand letters) and the resolution of any enforcement action whether by settlement, judicial order or administrative proceeding; and 3) CFA's awareness of third-party trademarks, including trademark watch notices and search reports. See Dkt. 61, Exs. A–F. ARA alleges that this information is relevant to determining the strength or weakness of the CFA Marks and whether and to what extent CFA has compromised or restricted its rights by contracting away or admitting that

2

certain uses are non-infringing and not likely to cause confusion. In the oral argument hearing, ARA agreed to limit its requests to a 10 year look back provision.

CFA objects to the discovery alleging that: 1) ARA has not shown that there is an abundance of third-party marks similar to CFA to warrant sweeping third-party discovery; 2) the third-party marks sought are irrelevant because they are not identical to CFA Marks, the goods and services offered by the third-parties are distinct from the goods and services provided by CFA and ARA, and the sales and advertising under the third-party marks are *de minimus*; and 3) the burden of the discovery sought outweighs the probative value because CFA has "vigorously" protected its trademark rights for decades by pursuing third-party marks. Dkt. 63. CFA also asserts that most of the information responsive to the requests is protected by privilege and/or contains highly confidential information, and much of the information sought is publicly available.

Having reviewed the parties' briefs and heard oral argument, I find that the categories of information sought by ARA are relevant areas of inquiry in this trademark litigation. I find it appropriate, however, to limit certain requests such that the discovery sought remains proportional to the needs of this case.

   a. **Relevance:**

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Bell Inc. v. GE Lighting, LLC, 6:14-CV-00012, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) (citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003)). A party is entitled to information that is relevant to a claim or defense in the matter at issue. Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)(iii) requires the court to limit the frequency or extent of proposed discovery

if it "is outside the scope permitted by Rule 26(b)(1)." A discovery request must be relevant and "proportional to the needs of the case," considering the importance of the issues, the amount in controversy, the parties' access to information and their resources, the importance of the discovery, and whether the burden or expense of discovery outweighs any likely benefit. Fed. R. Civ. P. 26(b)(1). If a party fails to produce requested information, the requesting party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B).

### i. Third-Party Use

Third-party trademark use is relevant to determining the conceptual and commercial strength or weakness of plaintiff's mark. Valador, Inc. v. HTC Corp., 241, F. Supp. 3d 650, 661–63 (E.D. Va. 2017). In Swatch AG v. Beehive Wholesale, LLC, 739 F.3d 150, 158 (4th Cir. 2014), the Court explained that the following nine factors guide the determination whether an applied-for mark is likely to cause confusion with a registered mark: (1) the strength or distinctiveness of the senior mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

The strength of the mark is "paramount" in determining the likelihood of confusion. Grayson O Co. v. Agadir Int'l LLC, 856 F. 3d 307, 314–15 (4th Cir. 2017). The stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d

4

383, 393 (4th Cir. 2009). A mark's strength is evaluated in light of the mark's "conceptual strength" and "commercial strength." CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006). A mark's conceptual strength considers the degree to which the mark describes the product branded by the mark and the similarity of other marks in the same field of merchandise. See Grayson O, 856 F. 3d at 315. A mark's conceptual strength is diminished if many third-parties in the same field as the mark holder have used a portion of the text of the senior mark in their own marks. Combe Inc. v. Dr. August Wolff GMBH & Co. KG Arzneimittel, 382 F. Supp. 3d 429, 448 (4th Cir. 2019). "Third party registrations are relevant to prove that some segment of the composite marks which both contesting parties use has a normally understood and well-recognized descriptive or suggestive meaning, leading to the conclusion that that segment is relatively weak." 2 McCarthy on Trademarks and Unfair Competition § 11:90 (5th ed. 2020). "[C]ourts have concluded that extensive third-party use of a component of the plaintiff's mark, such as the prefix, undermines the conceptual strength of the plaintiff's mark as a whole." Combe Inc., 382 F. Supp. 3d at 448. "[I]t is well-established that, even without evidence of commercial impact, the widespread use of similar marks by third parties is 'powerful on its face' to weaken the inherent distinctiveness of the plaintiff's mark." Id. at 449 (quoting Juice Generation, Inc. v. GS Enter. LLC, 794 F.3d 1334, 1339 (Fed. Cir. 2015)).

  CFA attempts to limit ARA's relevant discovery to "identical" third-party marks; however, case law does not support CFA's assertion that only identical or third-party marks are relevant to the strength analysis. Rather, the cases consider third-parties using a portion, segment or component of a party's mark. See Combe Inc., 382 F. Supp. 3d at

448; Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88, 93 (4th Cir. 1997).

CFA also argues that the third-party marks identified by ARA are irrelevant because they will not lessen the strength of CFA's Marks for various reasons—they are not identical to the CFA Marks, their goods and services are distinct, and they are not widely known. These arguments relate to the dispositive analysis regarding the strength of CFA's Marks, rather than a relevance analysis for purposes of discovery. The standard for relevance to conduct discovery is not whether the evidence will be persuasive in a summary judgment hearing or at trial, but rather, whether it is relevant to any party's claim or defense.

### ii. Enforcement of Mark

A trademark holder's enforcement efforts impact the strength of a mark. See McAirlaids, Inc. v. Kimberly-Clark Corp., No. 7:12cv578, 2014 WL 495748, at *3 (W.D. Va. Feb. 6, 2014) ("Any failure by McAirlaids to protect its trademark against a purported infringer could be considered an 'act of omission' under the Lanham Act and cause the trade dress to lose significance.") (quoting Quality Inns, Int'l, Inc. v. McDonald's Corp., 695 F. Supp. 198, 214 (D. Md. 1988)); see also Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 602 (5th Cir. 1985) ("A trademark holder is required to police his mark; else, it may become generic, diluted, or otherwise lessened in value.").

 "A licensor of a trademark or tradename must exercise control over its use in order to avoid abandonment of the trademark or tradename." Fuel Clothing Co., Inc. v. Nike, Inc., 7 F.Supp.3d 594, 605 (D.S.C. 2014) (quoting Stanfield v. Osborne Indus. Inc.,

839 F. Supp. 1499, 1504 (D. Kan. 1993)).  In Fuel, the court considered evidence of the plaintiff's litigation proceedings against five separate companies and consent agreements with numerous other companies regarding allegedly infringing use of its mark and found it relevant to the extent it prevents weakening of the mark's distinctiveness in the relevant market. Id. at 612; see also ConsumerInfo.com, Inc. v. One Tech. LP, No. CV 09-3783-VBF, 2010 WL 11507581, at *7 (C.D. Cal. May 4, 2010) (ordering production of settlement agreements from prior litigations and pre-litigation enforcement efforts).

CFA asserts that it vigorously defends its marks and that there can be no argument of abandonment, and thus discovery related to enforcement of its marks is irrelevant. Dkt. 63, p. 25. This argument fails because CFA's enforcement efforts impact the strength of its marks. See Quality Inns Intern., Inc., 695 F. Supp. at 214 (A trademark owner's tolerance of third-party uses of his marks will bear on the issue of the strength of his mark.) ARA is entitled to seek evidence regarding CFA's representation that it robustly enforces its marks.

CFA also objects to ARA's request for CFA's watch notices or other monitoring programs for its CFA Marks, arguing that the volume of such discovery would be unduly burdensome, and it is irrelevant because CFA can attest to its strong enforcement efforts. Dkt. 63, p. 25.  CFA uses trademark watch notices to police its marks. These documents concern CFA's prior enforcement efforts concerning its marks and are thus relevant to the claims and defenses in this case. See ConsumerInfo.com, Inc., 2010 WL 11507581, at * 6; Cytosport, Inc. v. Nature's Best, Inc., No. CIV S-06-1799 DFL EFB, 2007 WL 1040993, at * 2 (E.D. Ca. Apr. 4, 2007).

I have carefully considered the discovery requests and the arguments of counsel as to whether ARA's various discovery pleadings are relevant. The Federal Rules broadly allow discovery regarding matters which may impact on a claim or defense. ARA has satisfied its burden that its discovery requests are relevant to the issues in this case. The broad discovery permitted by the Rules is then limited by proportionality and burden.

### b. Proportionality and Privilege

Relevant ESI may still not be discoverable under Rule 26 if the party can show that the information is "not reasonably accessible because of undue burden or cost." Wagoner v. Lewis Gale Med. Ctr., LLC, 2016 WL 3893135, at *2 (W.D. Va. July 14, 2016).

CFA argues that the burden of the discovery sought outweighs its probative value because CFA has "vigorously" protected its trademark rights for decades by pursuing third-party marks, and thus the requests for production will result in large amounts of responsive documents. CFA represents that it sends out 100 demand letters per year, has prosecuted 8 trademark infringement lawsuits in federal court in the past 10 years, and has entered into arrangements with a number of third-party users of marks or designations incorporating the letters "C" and "F" or "C," "F," and "A," in the financial field which restrict the third-party's use or registration in specific ways. Dkt. 63, pp. 8–9. CFA also closely monitors these third-party users to ensure compliance. Id. As evidence of its enforcement efforts, CFA provided a summary chart of its federal court and US Trademark Trial and Appeal Board proceedings for the past ten years, with 28 entries. Dkt. 63-1, Ex. A.

CFA also asserts that most of the information responsive to requests is protected by privilege, contains highly confidential information, and further, that much of the information sought is publicly available. Despite these arguments, CFA did not provide details as to the financial burden or time strain of producing the information sought, nor did it provide a privilege log.

**III.     Conclusion**

Here, ARA's discovery requests are aimed at gathering information regarding CFA's efforts to police its trademarks, which is relevant to the parties' claims and defenses in this case.  However, having considered CFA's representations as to the potential burden of the requested discovery and the proportionality of the requested discovery to the needs of the case, I find it appropriate to limit the discovery sought as set forth in the January 30, 2020 Order. Dkt. 66.

Specifically, I find it appropriate to limit the majority of ARA's discovery requests to a five year look back period. The only exceptions are Interrogatory 9, Request for Production 14 and Deposition Topic 13, which address the judicial, administrative and legal proceedings brought by CFA against third-parties involving any of the CFA Marks.  Given the summary chart provided by CFA providing a portion of this information and the importance of the information to the strength of CFA's marks, I find a ten year look back period appropriate for those specific requests.

I find Interrogatory 11, Request for Production 16 and Deposition Topic 15 relating to "all third parties Plaintiff is aware of that offer certifications or credentials relating to any sort of financial analysis;" and Interrogatory 12, Request for Production 17 and Deposition Topic 16, "all third-party certification marks, etc. that contain two or

three of the letters 'C' 'F' 'A,'" overly broad and vague and that the relevant information sought will be obtained through other discovery requests. Thus, ARA's motion to compel responses to those requests are denied.

I also find it appropriate to limit all the requests to third-party marks in the financial planning industry. I specified other specific limitations on many of the requests, as set forth in the Order (Dkt. 66). These limitations address CFA's concern that the discovery requests seek all documents involving its enforcement efforts. Rather, I intend for CFA to produce its demand letters and any responses, charging documents (i.e. complaints, claims, etc.), and resolutions of such claims whether through court order, trial or agreement. Should ARA believe further documents are relevant regarding any particular enforcement efforts, it can propound carefully tailored requests targeted for specific information.

Accordingly, ARA's motion to compel is granted in part and denied in part, as set forth more fully in the January 30, 2020 Order. Dkt. 66.

Entered: February 4, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge