UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| CFA INSTITUTE, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | **3:19-cv-00012-NKM-RSB** |
| AMERICAN SOCIETY OF PENSION | § | |
| PROFESSIONALS & ACTUARIES; | § | |
| AMERICAN SOCIETY OF | § | |
| PENSION PROFESSIONALS & | § | |
| ACTUARIES D/B/A NATIONAL | § | |
| ASSOCIATION OF PLAN ADVISORS; | § | |
| and AMERICAN SOCIETY OF PENSION | § | |
| PROFESSIONALS & ACTUARIES D/B/A | § | |
| AMERICAN RETIREMENT | § | |
| ASSOCIATION, | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO EXCLUDE THE TESTIMONY OF RANY SIMMS**

## TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................... 1

II. RELEVANT BACKGROUND ........................................................................... 2

    A.  Factual Background ................................................................................ 2

    B.  Judge Simms' Opinions ......................................................................... 4

III. ARGUMENT ...................................................................................................... 6

    A.  Expert Testimony on USPTO Practice and Procedure is Generally
        Admissible ............................................................................................... 8

    B.  Judge Simms' Expert Opinions are Highly Probative of the Issues in this
        Case and Critical to an Understanding of the Scope of Plaintiff's
        Trademark Rights ................................................................................... 9

    C.  Expert Opinions on USPTO Practice and Procedure are Regularly
        Recognized as Helpful .......................................................................... 13

    D.  Judge Simms Discusses the Impact of What the USPTO Examining
        Attorneys and CFA Institute *Did* and *Stated*, Not What They Were
        *Thinking* ............................................................................................... 18

    E.  Plaintiff Offers No Support for Its Argument That a Factfinder May Give
        Undue Weight to Judge Simms' Testimony ......................................... 22

IV. CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aetna Health Care Sys., Inc., v. Health Care Choice, Inc.*,
    No. 84-C-642-E, 1986 U.S. Dist. LEXIS 25527 (N.D. Okla. May 14, 1986) ..................18, 22

*Alyn v. S. Land Co.*,
    No. 3:15-CV-00596, 2016 WL 7451546 (M.D. Tenn. Dec. 28, 2016) ....................................8

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
    No. 13-cv-324, 2017 WL 3528606 (D. Del. Aug. 16, 2017)...............................................8, 13

*Amstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir. 1980) .................................................................................................12

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*,
    79 F. Supp. 2d 252 (W.D.N.Y. 2000) ....................................................................................14

*Best Buy Warehouse v. Best Buy Co.*,
    751 F. Supp. 824 (W.D. Mo. 1989) .........................................................................................9

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*,
    561 F.2d 1365 (10th Cir. 1977) ...............................................................................................9

*In re C. R. Bard, Inc.*,
    No. MDL No. 2187, 2013 U.S. Dist. LEXIS 183718 (S.D. W. Va. July 1,
    2013) ......................................................................................................................................17

*In re C. R. Bard, Inc.*,
    No. MDL No. 2187, 2013 U.S. Dist. LEXIS 90210 (S.D. W. Va. June 27,
    2013) ......................................................................................................................................17

*In re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation*,
    No. MDL 2187, 2018 WL 4212409 (S.D.W. Va. Sept. 4, 2018) ...........................................21

*C.P. Interests, Inc. v. Cal. Pools, Inc.*,
    238 F.3d 690 (5th Cir. 2001) .................................................................................................13

*In re C.R. Bard, Inc.*,
    948 F. Supp. 2d 589 (S.D.W. Va. 2013).................................................................................17

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
    350 F.3d 316 (3d Cir. 2003).....................................................................................................7

*Cameco Indus., Inc. v. La. Cane Mfg., Inc.*,
    No. 92-3158, 1995 U.S. Dist. LEXIS 11294 (E.D. La. July 28, 1995) ..................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).............................................................................................6, 7

*Deckers Outdoor Corp. v. Australian Leather Pty Ltd.*,
   340 F. Supp. 3d 706 (N.D. Ill. 2018) ..............................................................19, 21

*Drew Estate Holding Co. v. Fantasia Distribution, Inc.*,
   875 F. Supp. 2d 1360 (S.D. Fla. 2012) .................................................................19

*EFCO Corp. v. Symons Corp.*,
   219 F.3d 734 (8th Cir. 2000) ..................................................................................7

*Family Circle, Inc. v. Family Circle Assocs., Inc.*,
   205 F. Supp. 940 (D.N.J. 1962), *aff'd*, 332 F.2d 534 (3d Cir. 1964)......................22

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
   No. 1:08-CV-2376-TWT, 2010 U.S. Dist. LEXIS 82638 (N.D. Ga. Aug. 4,
   2010) ...........................................................................................................10, 11, 22

*In re Fosamax Products Liability Litigation*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009)....................................................................21

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
   432 F.3d 463 (3d Cir. 2005)...................................................................................19

*Glamorene Prods. Corp. v. Boyle-Midway, Inc.*,
   188 USPQ 145 (S.D.N.Y. 1975).......................................................................19, 22

*Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*,
   No. 3:02-CV-2518-G, 2004 U.S. Dist. LEXIS 23691 (N.D. Tex. Nov. 22,
   2004) .........................................................................................................................7

*Heartland Corp. v. Sifers*,
   No. 02-CV-2136, 2002 U.S. Dist. LEXIS 13581 (D. Kan. July 12, 2002) ........9, 18

*Hines v. Wyeth*,
   No. 2:04-0690, 2011 WL 2680842 (S.D.W. Va. July 8, 2011) ..............................17

*Int'l Mkt. Brands v. Martin Int'l Corp.*,
   882 F. Supp. 2d 809 (W.D. Pa. 2012).....................................................................9

*Interstate Brands Corp. v. Celestial Seasonings, Inc.*,
   576 F.2d 926 (C.C.P.A. 1978) ...............................................................................21

*Juice Generation, Inc. v. GS Enters. LLC*,
   794 F.3d 1334 (Fed. Cir. 2015)..............................................................................19

*K.E.L.K. Corp. v. CCA Indus., Inc.*,
No. 8:18-cv-644-T-30JSS, 2019 U.S. Dist. LEXIS 141132 (M.D. Fla. May 21, 2019) .................................................................................................................13, 15

*Kay Corp. v. Weisfield's, Inc.*,
190 USPQ 565 (TTAB 1976) ...................................................................................19

*Knaack Mfg. Co. v. Rally Accessories, Inc.*,
955 F. Supp. 991 (N.D. Ill. 1997) .......................................................................18, 22

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).....................................................................................................6

*Morgan v. On Deck Capital, Inc.*,
No. 3:17-CV-00045, 2019 WL 4093754 (W.D. Va. Aug. 29, 2019) ..............21, 22

*Newmark Realty Capital v. Bgc*,
No. 16-cv-01702-BLF, 2017 U.S. Dist. LEXIS 228902 (N.D. Cal. Nov. 16, 2017) ..........................................................................................................................19

*Olympia Grp., Inc. v. Cooper Indus., Inc.*,
No. 5:01-CV-423, 2003 U.S. Dist. LEXIS 27857 (E.D.N.C. Apr. 12, 2003) ...........8

*Petro Shopping Ctrs L.P. v. James River Petroleum*,
130 F.3d 88 (4th Cir. 1997) ......................................................................................20

*Platypus Wear, Inc. v. Clarke Modet & Co.*,
No. 06-20976-CIV-MORENO/TORRES, 2008 U.S. Dist. LEXIS 85140 (S.D. Fla. Oct. 6, 2008) .......................................................................................................7

*Pods Enters., Inc., v. U-Haul Int'l, Inc.*,
No. 8:12-cv-01479, 2014 U.S. Dist. LEXIS 193897 (M.D. Fla. July 7, 2014) ......18

*Reiffin v. Microsoft Corp.*,
270 F. Supp. 2d 1132 (N.D. Cal. 2003) ...................................................................10

*Revlon Consumer Prods. Corp. v. L'Oreal S.A.*,
No. 96-192, 1997 U.S. Dist. LEXIS 4117 (D. Del. Mar. 26, 1997) ........................10

*Ricon Corp. v. Adaptive Driving Sys., Inc.*,
229 USPQ 731 (C.D. Cal. 1986)...............................................................................10

*Ronaldo Designer Jewelry, Inc. v. Cox*,
No. 1:17-CV-2-DMB-DAS, 2020 U.S. Dist. LEXIS 39252 (N.D. Miss. Mar. 6, 2020) ......................................................................................................................13

*Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*,
1994 U.S. Dist. LEXIS 13725 (N.D. Ill. Sept. 26, 1994) ..............................8, 10, 11

iv

*Scentsational Technologies, LLC v. Pepsi, Inc.*,
No. 13-CV-8645, 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ...........................................17

*Secular Orgs. for Sobriety, Inc. v. Ullrich*,
213 F.3d 1125 (9th Cir. 2000) ................................................................................................19

*Smart Vent, Inc. v. USA Floodair Vents, Ltd.*,
193 F. Supp. 3d 395 (D.N.J. 2016) .........................................................................................13

*Specialized Seating, Inc. v. Greenwich Indus., L.P.*,
472 F. Supp. 2d 999 (N.D. Ill. 2007) ............................................................................18, 20, 22

*Sterling Acceptance Corp. v. Tommark, Inc.*,
227 F. Supp. 2d 454, 462 (D. Md. 2002) ................................................................................10

*United States v. Barile*,
286 F.3d 749 (4th Cir. 2002) ..................................................................................................22

*United States v. Offill*,
666 F.3d 168 (4th Cir. 2011) ..................................................................................................21

*United States v. Wilson*,
484 F.3d 267 (4th Cir. 2007) ..................................................................................................18

*Vail Assocs, Inc. v. Vend-Tel-Co., Ltd.*,
516 F.3d 853 (10th Cir. 2008) ................................................................................................15

*VMR Prods., LLC v. V2H ApS*,
No. 2:13-CV-7719, 2016 WL 7669497 (C.D. Cal. Dec. 29, 2016)..........................................19

*Westberry v. Gislaved Gummi AB*,
178 F.3d 257 (4th Cir. 1999) ..............................................................................................7, 23

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
No. A-15-CV-597-RP, 2017 U.S. Dist. LEXIS 11162 (W.D. Tex. Jan. 27,
2017) ........................................................................................................................................8

**Rules**

Fed. R. Evid. 702 ...........................................................................................................6, 7, 13, 23

**Other Authorities**

3 GILSON ON TRADEMARKS § 8.03 (2020).......................................................................6, 7, 15, 22

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION .............................12, 13, 14, 15, 19, 20

Defendants (collectively, "ARA") submit this memorandum of points and authorities in opposition to Plaintiff CFA Institute's Motion to Exclude the Testimony of Judge Rany L. Simms.

## I.      INTRODUCTION

Over the last several months, the parties have engaged in substantial expert discovery. ARA disclosed six experts (three affirmative experts and three rebuttal experts):

1.  Rany Simms, a former Administrative Trademark Judge with the Trademark Trial and Appeal Board ("TTAB") of the USPTO, TTAB Interlocutory Attorney, and USPTO Trademark Examining Attorney.  Mr. Simms has opined on USPTO practice and procedure, particularly as it relates to the prosecution of ARA's trademark application at issue in this case and the positions CFA Institute has historically taken before the TTAB and USPTO.

2.  Dr. Melissa Pittaoulis, a consumer survey expert with a doctorate in sociology who specializes in survey research, statistical sampling, and demography.  Dr. Pittaoulis conducted a consumer survey showing that there is no likelihood of confusion between the parties' respective credentials and marks among professionals providing 401(k) plan sponsors (employers) with fiduciary advice on ERISA compliance or expecting to complete an educational program/earn a credential in that subject area within the next 12 months.

3.  C. Frederick Reish, an attorney who has focused on retirement and retirement planning throughout his career, works closely with employers who offer employee 401(k) benefit plans, and advises clients on regulatory compliance (including ERISA).  Mr. Reish has opined on the vast financial credentialing landscape, the distinct services performed by those who hold a CPFA credential in comparison to a CFA charterholder, and the distinct hiring processes and compensation methods for these individuals.

4.  W. Todd Schoettelkotte, a Certified Public Accountant (CPA) and Certified Valuation Analyst (CVA) who has provided financial consulting services in a variety of litigation matters (including intellectual property cases) for over 20 years.  Mr. Schoettelkotte rebuts the opinions of CFA Institute's damages expert, Carrie L. Distler.

5.  Sarah Butler, an expert in survey research, market research, sampling, and statistical analysis.  Ms. Butler rebuts the opinions of CFA Institute's damages expert, Carrie L. Distler, and another expert, Dr. Kenneth M. Eades, through a consumer survey designed to measure (a) whether the CPFA credential name is likely to cause confusion with CFA Institute and/or the CFA charter among plan sponsors (employers) who offer retirement benefits plans (e.g., 401(k) benefit

plans) to their employees and (b) whether use of CPFA as compared to QPFC (a name not at issue in this case) caused any source or affiliation-based actual harm to CFA Institute (including a comparative analysis to the third-party credential CFP and professional designation CPA) or resulted in any source or affiliation-based unjust enrichment to ARA.

6. Jeff Masom, *a CFA charterholder* (and the only CFA charterholder appearing in the case) who has worked in investment management for decades and also has experience with 401(k) plans.  Mr. Masom rebuts CFA Institute's expert, Dr. Kenneth M. Eades, by examining differences between the CPFA credential and the CFA charter curricula and explaining the different roles CPFA credential holders and CFA charterholders play in the marketplace.

CFA Institute has moved to exclude *all six* experts *in their entireties*.

In this motion, CFA Institute claims that Judge Simms' opinions regarding USPTO practice and procedure should be excluded on the grounds they are irrelevant, consist of an improper factual narrative, improperly infer others' state of mind, and are susceptible to being given undue weight based on his status as a former TTAB judge.  As discussed in detail below, none of these criticisms have merit and, even if they did, only go to the *weight* ultimately afforded to Judge Simms' testimony.  Because none of CFA Institute's critiques warrants exclusion, ARA respectfully requests that this Court deny CFA Institute's Motion to Exclude.

## II.    RELEVANT BACKGROUND

### A.    Factual Background

The parties to this trademark infringement and unfair competition dispute are organizations in the business of certifying professionals within the broad and diverse financial industry—an industry that, as detailed in ARA's motion for summary judgment (Dkt. 94), is saturated with scores of abbreviations, acronyms, and initialisms of professional credentials and designations.

CFA Institute is a not-for-profit association that offers a credential program for investment professionals under the name "**C**hartered **F**inancial **A**nalyst," which is abbreviated as

"CFA."  (Dkt. 1, at ¶ 10.)  The *financial-analyst*-focused CFA charter is for investment professionals who—as the "Chartered Financial Analyst" name suggests—work as financial analysts and collect, evaluate, and apply various data in the investment decision-making process. (*Id.* at ¶ 28.)

ARA (as the name "**A**merican **R**etirement **A**ssociation" suggests) trains, educates, and offers membership services for professionals in the retirement planning sector.  (Dkt. 35 at 12.) Through the National Association of Plan Advisors ("NAPA"), one of ARA's sister organizations, ARA offers a credential program for individuals providing fiduciary advice to employers (known as "plan sponsors") who offer employee 401(k) plans (a specific type of retirement plan) subject to ERISA under the name "**C**ertified **P**lan **F**iduciary **A**dvisor," which is abbreviated as "CPFA."[1]  (*Id.*; Ex. 1, ARA's Resp. to Interrog. No. 1.)  The *fiduciary*-focused CPFA credential is used by those professionals who successfully pass the CPFA exam and meet various other requirements.  (Dkt. 35 at 5.)  ARA has offered the CPFA credential for over four years, beginning in 2016.  (Ex. 2, Deposition of Brian Graff, February 19, 2020 ("Graff 30(b)(6) Dep."), 93:16-94:4.)  CFA Institute claims that ARA's use of the CPFA credential infringes its trademark rights in the CFA Marks (as defined in Plaintiff's Complaint, Dkt. 1, ¶ 13) under federal and state law and seeks both injunctive and monetary relief.  (Dkt. 1, ¶ 51.)

While ARA has openly and extensively offered and managed its CPFA credential for more than four years (*see* Ex. 2, Graff 30(b)(6) Dep., 93:16-94:4), both parties are unaware of

---

[1] ARA prominently uses the following color logo in advertising, a black and white rendering of which is also the subject of ARA's federal trademark application (U.S. App. No. 87103390):



any instances of actual confusion.  (*See*, *e.g.*, Ex. 3, CFA Institute's Resp. to Request for Admission Nos. 164 and 166; Ex. 4, CFA Institute's Resp. to Interrog. No. 15; Ex. 2, Graff 30(b)(6) Dep., 349:1-5.)  That is, no doubt, attributable to the fact that the credentials at issue do not compete given the *fiduciary* focus of the CPFA credential and the *financial analyst* focus of the CFA charter.

### B.  Judge Simms' Opinions

Judge Simms worked at the USPTO from 1972-2004, serving as a USPTO Examining Attorney, Interlocutory Attorney before the TTAB, and an Administrative Trademark Judge with the TTAB.  (Dkt. 94, Ex. 20, Expert Report of Rany Simms ("Simms Report"), ¶¶ 1, 5-6.)  Since retiring from the TTAB, Judge Simms has worked as a consultant in numerous trademark cases. (*Id.*)

In his report, Judge Simms opines on various aspects of USPTO practice and procedure relevant to this case.  (*Id.*)  Specifically, he discusses the USPTO's examination of the following logo which is the subject of ARA's U.S. Application No. 87103390 (the "NAPA CPFA Logo"):



Contrary to CFA Institute's assertion that this case does not "center on" the NAPA CPFA Logo depicted above (*see* Dkt. 83, Plaintiff's Motion to Exclude the Testimony of Rany Simms and Memorandum in Support ("Mot."), at 3), this logo is certainly at issue: (1) CFA Institute has requested that the Court order ARA to abandon its application for the logo (*see* Dkt. 1, at 24, ¶ 2) and enter a judgment refusing registration of the logo (*see* Dkt. 1, at 25, ¶ 9); (2) the logo incorporates the letters "CPFA," which CFA Institute claims infringes its rights (Mot., at 3); and

(3) ARA prominently uses a color version of the logo in advertising, which CFA Institute also claims infringes its rights (Ex. 2, Graff 30(b)(6) Dep., 243:19-244:9):



In his report, Judge Simms discusses the significance of the fact that the USPTO—the specialized administrative body charged by Congress with making likelihood-of-confusion determinations—did not cite any of CFA Institute's asserted trademarks (defined in Plaintiff's Complaint, Dkt. 1, ¶ 13 as the "CFA Institute Marks") or any other mark as a basis for refusing registration of ARA's NAPA CPFA Logo.  (Dkt. 94, Ex. 20, Simms Report), at ¶ 2.)  In this regard, Judge Simms discusses the significance of the USPTO examination process, which considers the similarities/differences between an applied-for mark and the marks covered by prior applications/registrations, the similarities/differences between the services identified in those applications/registrations, the nature and existence of similar third-party marks covered by prior applications/registrations for related services, and statements and representations made by applicants.  (*Id.* at ¶¶ 2-3.)

To the extent CFA Institute took issue with any of Judge Simms' opinions regarding USPTO practice and procedure, CFA Institute had every opportunity to submit a rebuttal USPTO expert.  Having failed to do so, CFA Institute took the calculated risk of seeking to exclude Judge Simms' testimony in its entirety.  The four grounds CFA Institute raises in its attempt to do so are meritless:

(1)     CFA Institute argues that Judge Simms does not offer testimony on issues relevant to this case.  (*See* Mot., at section A, 2-4.)  However, Judge Simms provides the necessary context for various issues relevant to the factfinder's likelihood of confusion analysis,

including USPTO Examining Attorney determinations of no confusing similarity, the nature and number of similar federally registered third-party marks, CFA Institute failure's to police encroachment from certain federally registered third-party marks, and CFA Institute's prior inconsistent statements to the USPTO that directly impact the alleged strength of the CFA Institute Marks and the scope of protection they should be afforded.

(2)    CFA Institute seeks to exclude Judge Simms' testimony on the ground that Judge Simms offers no opinions in his report and instead presents an improper factual narrative unhelpful to the trier of fact.  (Mot., at 4-7.)  However, the facts in Judge Simms' report provide necessary foundation for his opinions on USPTO practice and procedure.

(3)    CFA Institute argues that Judge Simms improperly infers the state of mind of the USPTO examining attorneys as well as that of CFA Institute.  (Mot., at 7-9.)  To the contrary, Judge Simms discusses what USPTO Examining Attorneys and CFA Institute actually *did* and *stated*, not their state of mind.

(4)    CFA Institute contends that a factfinder may give undue weight to Judge Simms' testimony given his position as a former TTAB judge.  But CFA Institute fails to cite a single case where a court precluded a former judge from testifying due to such concerns.  Its conclusory argument here rings hollow.

For these reasons, and as explained more fully below, ARA respectfully requests that this Court deny CFA Institute's motion to exclude Judge Simms' report and testimony.

## III.    ARGUMENT

Federal Rule of Evidence ("FRE") 702 expressly allows expert testimony to assist the court or jury in determining a factual issue.  3 GILSON ON TRADEMARKS § 8.03 (2020).  When confronted with expert testimony, a district court must exercise its "gate-keeping role" to ensure that the expert testimony "is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm.,*

6

*Inc.*, 509 U.S. 579, 589, 597 (1993).  *Daubert* applies to all expert testimony, not just scientific testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  FRE 702 codifies *Daubert* and its progeny.  *See* Fed. R. Evid. 702.  Thus, where an expert is (1) qualified (i.e., the expert has the appropriate credentials and experience in the area of proffered testimony), (2) the testimony is reliable (i.e., the expert's testimony is methodologically sound and based on sufficient data), and (3) the testimony is relevant (i.e., the expert's testimony will help the factfinder), the expert meets the "trilogy of restrictions on expert testimony" and their testimony is admissible.  *See* 3 GILSON ON TRADEMARKS § 8.03 (citing *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003)); *see also Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("Rule 702 was intended to liberalize the introduction of relevant expert evidence.").  This is especially true when, along with satisfying the "trilogy," the expert helps the factfinder understand complex evidence and facts.  *See* Fed. R. Evid. 702 (advisor committee's note) (citation omitted) (experts may be used when "the untrained layman would [not] be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.").

"At this point, the court is merely determining whether the [expert] report is admissible, not the quality or effect of the testimony therein."  *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, No. 3:02-CV-2518-G, 2004 U.S. Dist. LEXIS 23691, at *16-17 (N.D. Tex. Nov. 22, 2004); *see also, e.g.*, *Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-20976-CIV-MORENO/TORRES, 2008 U.S. Dist. LEXIS 85140, at *20 (S.D. Fla. Oct. 6, 2008) (holding that the soundness of an expert's factual basis "more appropriately goes to the weight of the evidence, and not to its legal admissibility").  As long as an expert's theories meet the

threshold of reliability, criticism of the expert's testimony is merely "grist for the jury."  *See EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000).

### A.      Expert Testimony on USPTO Practice and Procedure is Generally Admissible

Courts generally admit expert testimony on USPTO practice and procedure.  *See Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, No. 13-cv-324, 2017 WL 3528606, at *6 (D. Del. Aug. 16, 2017); *Sam's Wines & Liquors, Inc. v. Wal-Mart Stores, Inc.*, 1994 U.S. Dist. LEXIS 13725, at *23 (N.D. Ill. Sept. 26, 1994) ("Courts generally have admitted expert testimony from intellectual property lawyers in trademark cases.").  This includes courts in the Fourth Circuit.  *See, e.g.*, *Olympia Grp., Inc. v. Cooper Indus., Inc.*, No. 5:01-CV-423, 2003 U.S. Dist. LEXIS 27857, at *2-4 (E.D.N.C. Apr. 12, 2003) (attorneys experienced in trademark law regularly "provide expert testimony in trademark cases").

As detailed below, Judge Simms' testimony meets the standards of admissibility because it is both reliable and relevant.  Judge Simms' testimony on USPTO practice and procedure puts the actions of the USPTO into perspective as they relate to the USPTO's determination of whether a likelihood of confusion exists between the CFA Institute Marks and ARA's NAPA CPFA Logo.  This Court should accordingly deny CFA Institute's motion to exclude Judge Simms' testimony.  *See Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 U.S. Dist. LEXIS 11162, at *3-4 (W.D. Tex. Jan. 27, 2017) (denying motion to exclude expert testimony regarding the impact of USPTO practice and procedure on the subject trademark application because "nothing in the motion challenge[d] [the expert's] qualifications to offer opinions on trademark practice before the USPTO," and instead sought "to have the Court rule— in a vacuum—where precisely the line is [for] permissible testimony about how a trade dress application is processed."); *Alyn v. S. Land Co.*, No. 3:15-CV-00596, 2016 WL 7451546, at *5

8

(M.D. Tenn. Dec. 28, 2016) (allowing former USPTO personnel to testify regarding the effect of USPTO practice and procedure on the mark at issue); *Olympia Grp.*, 2003 U.S. Dist. LEXIS 27857, at *2-4 (holding that the USPTO expert "displays specialized knowledge that may be helpful to the trier of fact and is within the scope of evidence contemplated under [FRE] 702.").

**B.     Judge Simms' Expert Opinions are Highly Probative of the Issues in this Case and Critical to an Understanding of the Scope of Plaintiff's Trademark Rights**

CFA Institute argues that Judge Simms' report and testimony on USPTO practice and procedure are irrelevant because (1) "[t]his case does not . . . center on Defendants' applied-for logo mark" (Mot., at 3); (2) "Judge Simms' description does not shed light on . . . whether there is a likelihood of confusion between the marks at issue in this federal case" (Mot., at 4); and (3) "Defendants' counterclaim [under Section 18 of the Lanham Act] has [] been dismissed" (*id.*). None of these arguments has merit.

Courts have time and again held that expert testimony from experienced trademark attorneys and former USPTO personnel on USPTO practice and procedure is relevant. *See, e.g.*, *Int'l Mkt. Brands v. Martin Int'l Corp.*, 882 F. Supp. 2d 809, 816-19 (W.D. Pa. 2012) (finding testimony from trademark attorney on evaluating mark strength, differences in trade channels, similarities in sales efforts, and similarities in the nature of the goods, to be relevant); *Heartland Corp. v. Sifers*, No. 02-CV-2136, 2002 U.S. Dist. LEXIS 13581, at *8 (D. Kan. July 12, 2002) (testimony from a trademark attorney on "the search logic performed by the" USPTO Examining Attorney was relevant); *Best Buy Warehouse v. Best Buy Co.,* 751 F. Supp. 824, 826 (W.D. Mo. 1989), *aff'd*, 920 F.2d 536 (8th Cir. 1990) (trademark attorney's opinion that a term was generic and not entitled to trademark protection was relevant: "[S]uch opinions . . . bolster defendant's contention that the general buying public understands 'best buy' to merely describe a general retail practice of touting particular products"); *Big O Tire Dealers, Inc. v. Goodyear Tire &*

*Rubber Co.*, 561 F.2d 1365, 1371 (10th Cir. 1977) (testimony on USPTO practice and procedure was relevant).[2]

For example, in *Sam's Wines & Liquors*, the court admitted testimony from a trademark attorney "about the technical aspects of applying for and obtaining a federal trademark registration and . . . the similarities of the parties' respective marks"—including "the procedures, standards, customs, usage and practices in the [USPTO]" and how they "bear upon resolution of the factual issues at bar." 1994 U.S. Dist. LEXIS 13725, at *23, 28. The court held that the testimony was necessary to determine the weight of a trademark registration:

> The evidence adduced at trial of the [US]PTO's procedures, the nature and depth of the examination performed, and the type and amount of information on which the [US]PTO's decision was based will determine the weight this evidence ultimately will be entitled to.

*Id.* at *15 (citations omitted). Likewise, in *Sterling Acceptance Corp. v. Tommark, Inc.*, the court admitted testimony from a trademark attorney that the combination of (1) the USPTO's online database showing 18 registrations in the financial services class and over 350 registrations in other classes which included the word STERLING, and (2) the different wording and designs used by the parties, was sufficient to create different commercial impressions. 227 F. Supp. 2d 454, 462 (D. Md. 2002), *aff'd*, 91 F. App'x 880 (4th Cir. 2004). And in *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, the court admitted testimony that USPTO registrations of "many two-word marks consisting of NATURE'S/NATURE and a second word, for bakery

---

[2] Courts have likewise held that expert testimony offered by patent lawyers and former patent examiners on USPTO practice and procedure in patent cases is relevant. *See, e.g.*, *Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1145 (N.D. Cal. 2003); *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, No. 96-192, 1997 U.S. Dist. LEXIS 4117, at *2 (D. Del. Mar. 26, 1997); *Cameco Indus., Inc. v. La. Cane Mfg., Inc.*, No. 92-3158, 1995 U.S. Dist. LEXIS 11294, at *11 (E.D. La. July 28, 1995); *Ricon Corp. v. Adaptive Driving Sys., Inc.*, 229 USPQ 731, 734 (C.D. Cal. 1986), *aff'd*, 824 F.2d 980 (Fed. Cir. 1987).

products and/or other food/beverage products" implies that "the segment is relatively weak." No. 1:08-CV-2376-TWT, 2010 U.S. Dist. LEXIS 82638, at *5-6 (N.D. Ga. Aug. 4, 2010).  The court highlighted that the "real evidentiary value of third-party registrations per se is to show the sense in which a term, word, prefix, or suffix of a mark is used in ordinary parlance.  That is, third party registrations are similar to dictionaries showing how language is generally employed."  *Id*. at *7 (citation omitted).

As in these cases, Judge Simms' testimony is not only relevant, but critical to a proper understanding of how the USPTO evaluated whether a likelihood of confusion exists.  Judge Simms provides meaningful discussion on numerous points relevant to this issue, including the following:

1.  The USPTO Examining Attorney who examined the NAPA CPFA Logo and reviewed USPTO records for conflicting marks (i.e., those with whom there would be a likelihood of confusion) indicated that the USPTO database of registered and pending marks revealed no conflicting marks that would bar registration of the NAPA CPFA Logo based on a likelihood of confusion.  (Dkt. 94, Ex. 20, Simms Report, ¶¶ 8-14.)

2.  USPTO records show a number of third-party registrations for marks containing the letters "C," "F" and/or "A" in the business or financial services field, none of which were cited as confusingly similar to the NAPA CPFA Logo, and none of which were refused on the ground that they were confusingly similar to any prior registrations or applications (including the CFA Institute Marks).  Multiple Examining Attorneys did not consider marks that differed by only one letter from the CFA Institute Marks to be conflicting or likely to cause confusion.  (*Id*., ¶¶ 16-19.)

3.  If CFA Institute believed that the identification of services for certain third-party marks was broader than the services for which the mark was actually used and that its rights were harmed by such coverage, CFA Institute could have (but has not) filed an action to restrict or narrow such identification.  (*Id*., ¶ 22.)

4.  In an attempt to obtain a registration for its CFA mark, CFA Institute previously told the USPTO that "[t]here are numerous registered marks that are acronyms of professional designations in the financial industry," including CFP and CHFC, that are "used in connection with similar services."  CFA Institute also previously told the TTAB that certain third-party registrations—i.e., CFA, CFC, CFE, CFH, CFM, CFP, CFS, CFX, CLF, CMA, and CTFA—are "easily distinguishable"

11

from CFA "based on the marks and/or the goods and services."  CFA Institute's position that even a one-letter difference between marks can be sufficient to distinguish them appears consistent with the USPTO's own position that such marks can peacefully co-exist.  ( *Id*., ¶¶ 23-25.)

Judge Simms' testimony on these points is highly probative of (1) the process USPTO Examining Attorneys use to make their initial likelihood of confusion determinations, including the reality that Examining Attorneys do not make their decisions in a vacuum but consider the number and nature of similar third-party registrations of marks for similar goods/services in the same or related industries; (2) the significance of certain prior statements and admissions that CFA Institute made to the USPTO and TTAB; and (3) CFA Institute's lack of enforcement against other federal registrations of three- or four-letter credentials in the financial services field containing the letters "C," "F" and/or "A", which is relevant to assessing the strength or weakness of the CFA Institute Marks and the scope of protection they should be afforded.  *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264-65 (5th Cir. 1980) (plaintiff's lack of vigilance in protecting its rights weakened its mark); 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 11:88 (when a mark holder "tolerates [] encroachment" from similar third-party marks, "its trademark asset has 'eroded' and 'shrunken'"); *Id*., at § 11:91 ("The ultimate significance of non-enforcement" is whether plaintiff's mark has suffered loss of strength "resulting from a failure to enforce").

With respect to (3), the failure to enforce includes CFA Institute's failure to oppose certain *third-party* trademark applications as well as CFA Institute's failure to file restriction actions against *third-party* federal trademark registrations.  It has nothing to do with *ARA's* earlier restriction counterclaim against CFA Institute's registrations that was dismissed.  (*See* Ex. 5, Deposition of Rany Simms ("Simms Dep.") at 104:15-105:2.)

12

## C.   Expert Opinions on USPTO Practice and Procedure are Regularly Recognized as Helpful

CFA Institute argues that Simms' testimony should be excluded "because he does not appear to offer any opinions in his report" (Dkt. 83, Mot., at 4-5) and "merely regurgitates factual information" (*id*., at 5).  This criticism not only mischaracterizes Judge Simms' report, but is baseless.  *See* 4 McCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23:275 (5th ed.) (noting the "venerable practice of using expert testimony to educate the fact finder on general principles") (citing Notes of Advisory Committee on Federal Rules of Evidence, Rule 702 (2000 amendments)).

First, an expert is allowed to tie facts to specific opinions supported by those facts; in other words, an expert is allowed to provide factual foundation for the expert's opinions.  *See, e.g.*, *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2020 U.S. Dist. LEXIS 39252, at *15 (N.D. Miss. Mar. 6, 2020) (refusing to exclude the challenged sections of an expert's report as impermissible factual narrative because it was apparent that the facts presented were foundation for the expert's opinions); *K.E.L.K. Corp. v. CCA Indus., Inc.*, No. 8:18-cv-644-T-30JSS, 2019 U.S. Dist. LEXIS 141132, at *11-12 (M.D. Fla. May 21, 2019) (rejected argument that USPTO expert merely provided recitations); *Am. Cruise Lines*, 2017 U.S. Dist. LEXIS 130430, at *18 ("Defendant argues that [the expert] provides excessive factual narrative in her reports . . . .  I disagree.  [The expert] ties factual accounts to specific opinions they support."); *Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 193 F. Supp. 3d 395, 412-13 (D.N.J. 2016) ("[T]he factual narrative underpinning [the expert's] various conclusions resonates with Smart Vent's view of the . . . evidence on the issue of infringement . . . .  [T]he Court finds [the expert's] opinion admissible."); *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 698 (5th Cir. 2001) (admitting testimony on ownership of rights, succession of rights, and geographic

remoteness because such testimony "included the bases for the expert's conclusion" and had "overwhelming factual support in the record to buttress [his] testimony") (citation omitted); 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23:275 ("[E]xpert testimony on the *factual factors* that go into the ultimate finding on the confusion issue is generally quite proper.") (emphasis added).  Similar to these cases, and as explained in detail in Section III(B), *supra*, Judge Simms' discussion of the prosecution and opposition histories of the parties' trademark applications and registrations is necessary foundation and context for the factfinder to meaningfully understand the significance of USPTO practice and procedure to this case.  CFA Institute's argument to the contrary is groundless.

Second, testimony explaining USPTO practice and procedure is helpful to the factfinder because the area is complex and specialized.  A USPTO expert can therefore help a layperson understand USPTO determinations and statements made to the USPTO within the proper context.  *See Bausch & Lomb, Inc. v. Alcon Labs., Inc.,* 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) ("[US]PTO procedures are foreign to the average person, and it may be helpful to the jury to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand."); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23:275 ("A trademark attorney can assist the judge and jury about matters such as the technical aspects of applying for and obtaining a federal trademark registration" and "understanding and applying trademark law concepts which are unfamiliar and perhaps counter-intuitive to the uninitiated").  Simply put:

> Expert testimony on the basic principles of U.S. trademark law can be quite useful in explaining the rules of the road to a jury or even to a judge with very little trademark experience.  Some jurors probably have basic misconceptions about trademarks: They may think they are patents or copyrights or that you do not own one unless you have a United States government document with a red

> seal and ribbons . . . .  A trademark law expert can clear up
> misconceptions of this type early in the case, without waiting for
> the court to instruct the jury at the end.

3 GILSON ON TRADEMARKS, § 8.03 (listing cases).

Here, Judge Simms' report and testimony draw on his decades of experience at the

USPTO to shed light on (and make accessible to the factfinder) the complexities of USPTO

practice and procedure that would otherwise require specialized knowledge, training, and/or

experience to understand.  Indeed, Judge Simms' testimony goes "to the heart of" CFA

Institute's claims in this case.  *See K.E.L.K.*, 2019 U.S. Dist. LEXIS 141132, at *11-12; (*see also*

Ex. 5, Simms Dep., 83:24-84:8 ("I mean, after all, this case at its heart is about likelihood of

confusion of plaintiff's mark with the defendants' mark, and . . . the examining attorney did a

search and found no confusingly similar registrations.")).  This is because it is necessary for the

factfinder to grasp the significance of:

1.  The trademark examination process and the USPTO Examining Attorney finding
    no likelihood of confusion between ARA's logo trademark application and any
    earlier issued registrations or prior-filed applications, including the CFA Institute
    Marks as well as other third-party registered marks comprising three- or four-
    letter credentials in the financial services field containing the letters "C," "F,"
    and/or "A," (*see* Dkt. 94, Ex. 20, Simms Report, ¶¶ 8-14);

2.  The number and nature of similar third-party registered marks for similar
    goods/services in the same or related industries (*see id*., at ¶¶ 16-20);

3.  CFA Institute's lack of enforcement against other third-party registered marks
    comprising three- or four-letter credentials in the financial services field
    containing the letters "C," "F," and/or "A," including CFA Institute's failure to
    file any actions under Section 18 of the Trademark Act (15 U.S.C. § 1068) to
    restrict the identifications of such marks (*see id*., ¶¶ 21-22); and

4.  CFA Institute's prior statements to the USPTO and TTAB (*see id*., ¶¶ 23-25).

This is the very type of "trademark esoterica" that a USPTO "expert can assist the

[factfinder] in understanding."  4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,

§ 23:275 (citing *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 861-63 (10th Cir. 2008)).

Third, as is evident from the immediate preceding paragraph illustrating the topics on which Judge Simms' opines and the impact of his testimony, CFA Institute's argument that Judge Simms "fails to offer a single opinion in his report," (Mot., at 6-7), is flatly wrong.  For example, during his deposition Judge Simms directly addressed this baseless contention and explained the impact of third-party registered marks on the strength or weakness of the CFA Institute's trademark rights as follows:

> Q.    Can you point me to a -- a statement in your report, where -- where your opinions are in your report.
>
>        . . .
>
> A.    Well, I think in answer to your question, I would say that it's the significance of what I have done in this report as far as the . . . trier of fact may look at it, as far as . . . what happened in the history of this case, the fact that . . . there are numerous third-party registrations.  And I had mentioned the *DuPont* case, . . . the fact that third-party registrations are -- have a bearing on the strength or weakness of plaintiff's mark, the fact that . . . the various -- which I mentioned, various third-party registrations issued without any refusals by examining attorneys, I think these are all facts which the trier of fact may want to have before him or her in deciding the ultimate issue in this case.  As far as offering an opinion that says, oh, plaintiff's mark is weak because there are a number of third-party registrations here, there are a plethora of them, I never came outright and stated that, but I did certainly make that implication by listing page after page of third-party registrations for related goods and services in the financial servicing industry.

(Ex. 5, Simms Dep., 75:13-76:18; *see also id*. at 77:2-7 ("The implications are there.  I mean, why else would I list page after page of third-party registrations unless it has some bearing upon this case.").  Judge Simms also explained the significance of CFA Institute's prior statements to the USPTO:

> Q.    Let me ask you, Mr. Simms, that statement that I've just read, "Plaintiff's apparent position that even a one-letter difference between marks can be sufficient to distinguish them, is apparently consistent with the USPTO position noted above," is that -- is that your opinion?

A.      Yes.  I mean, it is correct, from a review of what the plaintiff has stated and what the office has done, that those differences did lead to the results that we have seen, that no examining attorney cited any registrations -- when he or she examined the third-party registrations listed, didn't cite any marks that differed by one letter from any . . . of those applied-for marks.  And . . . here we have the plaintiff making comments in  his response to applicant's motion for summary judgment that . . . listed various marks, which did differ by letters, were easily distinguishable from its mark based upon the marks and/or goods and services.  So the statement is based on the marks and/or goods and services, so I think it's a fair statement to make that that appears to be the apparent position of the Office . . . and the plaintiff.

(*Id.*, 106:9-107:10.).

Notably, CFA Institute fails to cite a single case in which a USPTO expert was excluded because the expert's testimony was irrelevant, unhelpful to the factfinder, or amounted to mere factual narrative.  And the few cases CFA Institute cites are inapposite and actually undermine its own arguments.  In *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589 (S.D.W. Va. 2013),[3] which involved a products liability suit against a medical implant manufacturer, the court *admitted* the expert testimony at issue.  In *Hines v. Wyeth*, which involved an expert report on the development and marketing of certain pharmaceutical drugs and whether the pharmaceutical manufacturers acted reasonably, the court likewise *allowed* the expert to testify.[4]  No. 2:04-0690, 2011 WL 2680842, at *5 (S.D.W. Va. July 8, 2011), *reconsidered*, No. 2:04-0690, 2011 WL

---

[3] CFA Institute fails to disclose to the Court that the case was clarified (and a *different* result was reached) by *In re C. R. Bard, Inc.*, No. MDL No. 2187, 2013 U.S. Dist. LEXIS 90210 (S.D. W. Va. June 27, 2013), and *In re C. R. Bard, Inc.*, No. MDL No. 2187, 2013 U.S. Dist. LEXIS 183718 (S.D. W. Va. July 1, 2013).

[4] Specifically, the court allowed the expert to testify on the practice and procedure for obtaining prescription drug approval from the Food and Drug Administration, the regulatory context, complex or specialized terminology, and inferences that would not be apparent without the benefit of experience or specialized knowledge.  No. 2:04-0690, 2011 WL 2730908, at *2.  If anything, this case supports the admission of Judge Simms' testimony on practice and procedure for obtaining a trademark registration at the USPTO and the regulatory context in which CFA Institute's prior statements were made.

2730908, at *2 (S.D.W. Va. July 13, 2011).  In *Scentsational Technologies, LLC v. Pepsi, Inc.*, No. 13-CV-8645, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018), *aff'd*, 773 F. App'x 607 (Fed Cir. 2019), the court partially *admitted* expert testimony concerning trade secrets related to the development and commercialization of scented packaging.  And in *United States v. Wilson*, 484 F.3d 267 (4th Cir. 2007), which concerned drug trafficking, the court *admitted* the testimony at issue.  *Id.* at 278.

### D. Judge Simms Discusses the Impact of What the USPTO Examining Attorneys and CFA Institute *Did* and *Stated*, Not What They Were *Thinking*

Courts generally allow expert testimony on the significance and effect of what USPTO Examining Attorneys did in the course of examining a trademark application, including the Examining Attorney's search strategy and the exchange of statements made to and/or from the USPTO.  *See, e.g.*, *Pods Enters., Inc.*, *v. U-Haul Int'l, Inc.*, No. 8:12-cv-01479, 2014 U.S. Dist. LEXIS 193897, at *3 (M.D. Fla. July 7, 2014) (permitting expert to testify to "practices and procedures of the [USPTO], as well as the process for examining trademark applications" because such "testimony will place evidence in context for the jury"); *Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 472 F. Supp. 2d 999, 1009 (N.D. Ill. 2007), *aff'd*, 616 F.3d 722 (7th Cir. 2010) (allowing expert testimony reconstructing the file history of the application and recounting what the trademark examiner did in the course of the application); *Heartland Corp.*, 2002 U.S. Dist. LEXIS 13581, at *7-8 (allowing expert to testify to "the search logic performed by the attorney who examined the SPOT STOP trademark application" and "that the examining attorney's search did not identify the SPOT SHOT trademark."); *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 996 (N.D. Ill. 1997) (permitted expert to testify to USPTO's statement "that the examining attorney had 'searched the office records and has found no similar registered or pending mark which would bar registration,'" and explain "the customary

procedures for conducting a trademark search" and the steps that should be taken); *Aetna Health Care Sys., Inc.*, *v. Health Care Choice, Inc.*, No. 84-C-642-E, 1986 U.S. Dist. LEXIS 25527, at *27-28 (N.D. Okla. May 14, 1986) (allowed expert to testify to the decisions the USPTO Examining Attorney made in the course of examining the application at issue and whether he agreed with those decisions); *Glamorene Prods. Corp. v. Boyle-Midway, Inc.*, 188 USPQ 145, 148 (S.D.N.Y. 1975) (allowing testimony on the application's history, including what the USPTO Examining Attorney did).

Courts also allow expert testimony on the significance and effect of a party's prior statements to the USPTO. *See, e.g.*, *Deckers Outdoor Corp. v. Australian Leather Pty Ltd.*, 340 F. Supp. 3d 706, 717 (N.D. Ill. 2018) (allowing expert to testify "that because the examining attorney reviewing UGG's application wrote '[t]here is no significance,' [the party applying for the mark at issue] must have answered that there was no meaning in the relevant industry"). This is because "[c]ourts have found probative a plaintiff's prior statements to the USPTO in cases analyzing infringement under the Lanham Act." *VMR Prods., LLC v. V2H ApS*, No. 2:13-CV-7719, 2016 WL 7669497, at *9 (C.D. Cal. Dec. 29, 2016). The Fourth Circuit treats prior inconsistent statements as especially probative:[5]

---

[5] This treatment is common across circuits. *See, e.g.*, *Newmark Realty Capital v. Bgc*, No. 16-cv-01702-BLF, 2017 U.S. Dist. LEXIS 228902, at *36 (N.D. Cal. Nov. 16, 2017) ("[Defendant's] representations before the [US]PTO are certainly persuasive evidence."); *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1340 (Fed. Cir. 2015) (statements to the USPTO during examination were relevant to assessing the strength of the mark); *Drew Estate Holding Co. v. Fantasia Distribution, Inc.*, 875 F. Supp. 2d 1360, 1366, 1370-71 (S.D. Fla. 2012) ("[Defendant's] previous allegations [in a counterclaim] regarding likelihood of confusion are . . . highly persuasive evidence of the similarity of the marks."); *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005) (where plaintiff argued to the USPTO that no one had the exclusive right to use "freedom" alone as a mark, and later alleged that CHASE FREEDOM for credit cards infringed its registered FREEDOM CARD, the court treated the arguments from the file wrapper as persuasive evidence); *Secular Orgs. for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1131 (9th Cir. 2000) (criticizing plaintiff's "naked about face"); *Kay*

> [The Fourth Circuit] indicated impatience with a registrant who, in order to obtain from the [US]PTO a registration for its "petro" mark for truck stop facilities, argued that because of extensive third party use and registration of "petro" as part of composite marks, "petro" was "entitled to a very narrow scope of protection," such that its PETRO mark was not confusingly similar to prior registered marks.  The court observed that: "[Plaintiff] now asks this court to accept precisely the opposite proposition."

6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 32:111 (citing *Petro Shopping Ctrs L.P. v. James River Petroleum*, 130 F.3d 88 (4th Cir. 1997)).

As in *Pods Enterprises*, *Specialized Seating*, *Knaack Manufacturing*, *Aetna Health Care Systems*, and *Glamorene Products*, Judge Simms opines as to what the USPTO Examining Attorney *did* and *stated*, not what the USPTO Examining Attorney was *thinking*.  (*See* Dkt. 94, Ex. 20, Simms Report, ¶¶ 14, 18-19; *see also* Ex. 5, Simms Dep., 79:9-15 (testifying that he knew what the USPTO Examining Attorney did "[b]y reviewing the file and looking at the sheet of paper which indicates—the search history information—the search the examining attorney conducted in this case."); 82:3-7 ("Reading through . . . the file history of applicant's application, you see what the examining attorney said and you can see what the examining attorney did."); 83:1-84:8; 85:1-24; 86:10-14 ("My statement is a conclusion from reviewing the file histories of the third-party registrations, which are cited in Paragraph 17, that no examining attorney refused any of those registrations.").  Judge Simms bases his testimony on "the file histories . . . where there are search strategies of records, what the examining attorneys searched, and . . . office action[s] indicating that a search was conducted and no confusingly similar mark was found" (*id.*, at 88:16-23), as well as the reasonableness of the USPTO Examining Attorney's search

---

*Corp. v. Weisfield's, Inc.*, 190 USPQ 565 (TTAB 1976) (opposer is "bound" by statements of its predecessor as to scope of its mark); 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 32:111 (the TTAB "generally holds that [prior inconsistent statements] are considered as evidence . . . of the truth of the assertions.'")

strategy for similar marks, which Judge Simms can opine on given that he was formerly a USPTO Examining Attorney (*id.*, at 101:21-102:13).

Likewise, and similar to *Deckers Outdoor*, Judge Simms testifies to what CFA Institute *did* and *stated*, not what CFA Institute was *thinking*. (*See id.*, 106:9-107:10; 110:25-111:7 ("The fact that plaintiff, for example, stated that those marks listed earlier in Paragraph 25 were easily distinguishable from its mark based upon the marks and/or the goods and services. It's a statement from plaintiff saying that those marks listed were easily distinguishable based upon the marks and/or goods and services."); 111:20-112:2.). Because CFA Institute's prior statements are facts, (*see Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 929 (C.C.P.A. 1978) ("That a party earlier indicated a contrary opinion respecting the conclusion in a similar proceeding involving similar marks and goods is a fact, and that fact may be received in evidence."), there is no support for CFA Institute's argument that Judge Simms is offering impermissible "state of mind" testimony.

Indicative of its lack of support, CFA Institute cites cases that are factually far afield and undermine its own arguments. The case *In re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation*, No. MDL 2187, 2018 WL 4212409, at *1 (S.D.W. Va. Sept. 4, 2018), concerned a multi-district litigation over the use of transvaginal surgical mesh to treat pelvic organ prolapse and urinary incontinence. In *In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 190-91 (S.D.N.Y. 2009), the court *admitted* expert testimony concerning FDA regulatory requirements relating to the development, testing, marketing, and surveillance of prescription drugs. In *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011), which involved securities regulations, the expert was also *admitted*. And in *Morgan v. On Deck Capital, Inc.*,

21

No. 3:17-CV-00045, 2019 WL 4093754, at *3 (W.D. Va. Aug. 29, 2019), the court *admitted* expert testimony in a case involving dialing system equipment.[6]

### E.   Plaintiff Offers No Support for Its Argument That a Factfinder May Give Undue Weight to Judge Simms' Testimony

CFA Institute argues that Judge Simms "has the potential to mislead the factfinder, as his status as a former TTAB judge, Interlocutory Attorney before the TTAB, and an Examining Attorney before the USPTO presents the risk that the trier of fact will give undue weight to his testimony." (Mot., at 9.)  To the extent CFA Institute had such concerns, it had every opportunity to designate its own USPTO rebuttal expert.  Having failed to do so, CFA Institute cannot now complain that a factfinder may give Judge Simms' testimony undue weight.

Courts generally allow former TTAB judges to testify regarding USPTO practice and procedure.  *See, e.g.*, *Flowers Bakeries Brands*, 2010 U.S. Dist. LEXIS 82638, at *5 (permitting testimony from expert who worked at the USPTO for more than 30 years as an Examining Attorney, Interlocutory Attorney, and TTAB judge); *Specialized Seating*, 472 F. Supp. at 1009 (allowing former TTAB judge to testify on USPTO practice and procedure); *Knaack*, 955 F. Supp. at 996 (former assistant commissioner of trademarks allowed to testify); *Aetna Health Care Sys.*, 1986 U.S. Dist. LEXIS 25527, at *27-28 (former "chairman of the [TTAB]" allowed to testify); *Glamorene Prods.*, 188 USPQ at 148 (testimony from former Board member and "long-experienced examiner of trademarks" was "of particular significance"); *Family Circle, Inc. v. Family Circle Assocs., Inc.*, 205 F. Supp. 940, 942 (D.N.J. 1962), *aff'd*, 332 F.2d 534 (3d Cir. 1964) (permitted expert testimony from former assistant commissioner for trademarks); 3

---

[6] CFA Institute cherry-picks this Court's quote "that experts may not offer legal conclusions." *Morgan*, 2019 WL 4093754, at *3.  In doing so, CFA Institute misattributes the quote—this Court cited *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002), for that proposition.  *See Morgan*, 2019 WL 4093754, at *3.

GILSON ON TRADEMARKS § 8.03 ("[F]ormer administrative trademark judges of the Trademark Trial and Appeal Board have testified in court regarding Board procedure and substantive issues.") (listing cases).

Despite the extent of cases permitting former TTAB judges to testify as experts on USPTO practice and procedure, CFA Institute argues that Judge Simms should be excluded because "the trier of fact will give undue weight to his testimony" (Mot., at 9), and cites *Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999). However, *Westberry* dealt with expert testimony on "sinus problems experienced by [plaintiff] caused by the inhalation of airborne talc in the workplace," and the court *admitted* the testimony because it "satisfied the reliability and relevance standards of Rule 702." *Id*. at 261, 266. Stated plainly, CFA Institute's argument is baseless.

## IV.    CONCLUSION

Judge Simms' testimony will help the factfinder understand USPTO practice and procedure as it relates to the core issue of likelihood of confusion in this case. For the foregoing reasons, ARA respectfully requests that this Court deny Plaintiff's motion to exclude Judge Simms' report and testimony.

Dated: June 24, 2020                    Respectfully submitted,

                                        */s/ Henry I. Willett III*
                                        Henry I. Willett III (VSB No. 44655)
                                        Shannan M. Fitzgerald (VSB No. 90712)
                                        CHRISTIAN & BARTON, L.L.P.
                                        909 East Main, Suite 1200
                                        Richmond, Virginia 23219
                                        Telephone: 804-697-4100
                                        Facsimile: 804-697-4112
                                        hwillett@cblaw.com
                                        sfitzgerald@cblaw.com

Mark Sommers (*admitted pro hac vice*)
Naresh Kilaru (*admitted pro hac vice*)
Douglas A. Rettew (*admitted pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, D.C.  20001-4413
Telephone: 202-408-4000
Facsimile: 202-408-4400
mark.sommers@finnegan.com
naresh.kilaru@finnegan.com
doug.rettew@finnegan.com

Morgan E. Smith (*admitted pro hac vice*)
Benjamin F. Tookey (*admitted pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: 650-849-6600
Facsimile: 650-849-6666
morgan.smith@finnegan.com
benjamin.tookey@finnegan.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2020, I will electronically file the foregoing with the

Clerk of Court using CM/ECF system, which will then send a notification of such filing (NEF) to

all counsel of record.

Ann K. Ford
John M. Nading
Benjamin S. Boyd
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
Telephone: 202-799-4000
Facsimile: 202-799-5000
ann.ford@dlapiper.com
john.nading@dlapiper.com
benjamin.boyd@dlapiper.com

Dated: June 24, 2020                    By:    */s/ Henry I. Willett III*
                                               Henry I. Willet III (VSB No. 44655)
                                               CHRISTIAN & BARTON, L.L.P.
                                               909 East Main, Suite 1200
                                               Richmond, Virginia 23219
                                               Telephone: 804-697-4100
                                               Facsimile: 804-697-4112
                                               hwillett@cblaw.com

                                               *Attorney for Defendants*