**EXHIBIT 5**
**TO**
**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**TO EXCLUDE THE TESTIMONY OF**
**RANY SIMMS**

1              UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF VIRGINIA
2                 Charlottesville Division

3

4       _____
                                       :
5    CFA INSTITUTE                     :
                                       :
6                   Plaintiff          :
                                       :
7    v.                                :
                                       :
8    AMERICAN SOCIETY OF PENSION:
     PROFESSIONALS & ACTUARIES; :
9    AMERICAN SOCIETY OF PENSION:  Civil Action No.
     PROFESSIONALS & ACTUARIES, :  3:19-cv-00012
10   D/B/A NATIONAL ASSOCIATION :
     OF PLAN ADVISORS; and         :
11   AMERICAN SOCIETY OF PENSION:
     PROFESSIONALS & ACTUARIES, :
12   D/B/A AMERICAN RETIREMENT   :
     ASSOCIATION                 :
13                               :
                   Defendants    :
14   _____:
15
16                 Friday, May 1, 2020
17
18          Video deposition of RANY SIMMS,
19   taken virtually via Zoom, with the witness
20   participating from his home address in
21   Fairfax Station, Virginia, beginning at 10:02
22   a.m., before Ryan K. Black, a Registered
23   Professional Reporter, Certified Livenote
24   Reporter and Notary Public in and for
25   the Commonwealth of Pennsylvania.

Page 2

```
 1           A P P E A R A N C E S:
 2
 3           DLA PIPER US LLP
             BY:   JOHN M. NADING, ESQ - Via Zoom
 4                 DEVIA PERSAUD, ESQ - Via Zoom
             500 8th Street NW
 5           Washington, DC  20036
             202.799.4000
 6           john.nading@dlapiper.com
             devika.persaud.@dlapiper.com
 7
             Representing - Plaintiff
 8
 9
             FINNEGAN, HENDERSON, FARABOW, GARRETT &
10           DUNNER LLP
             BY:   NARESH KILARU, ESQ. - Via Zoom
11           901 New York Avenue NW
             Washington, DC  20001
12           202.408.4236
             naresh.kilaru@finnegan.com
13
                       - and -
14
             FINNEGAN, HENDERSON, FARABOW, GARRETT &
15           DUNNER LLP
             BY:   BENJAMIN F. TOOKEY, ESQ. - Via Zoom
16           3300 Hillview Avenue
             Palo Alto, California  94304
17           650.849.6600
             benjamin.tookey@finnegan.com
18
             Representing - Defendants
19
20
21
22
23
24           ALSO PRESENT:
25            Jeff Menton - Legal Videographer
26
```

Page 3

1                            I N D E X

2       TESTIMONY OF:  RANY SIMMS                    PAGE

3          By Mr. Nading..........................7, 107

4          By Mr. Kilaru..............................97

5


6                          E X H I B I T S

7       EXHIBIT            DESCRIPTION              MARKED

8       Plaintiff's 1   Mr. Simms' expert report          21

9       Plaintiff's 2   TSDR printout for logo mark,

10                      Application Serial Number

11                      87103390                  37

12      Plaintiff's 3   Drawing for Logo Mark, U.S. App.

13                      Serial No. 87103390       37

14      Plaintiff's 4   CFE Certificate of Reg.

15                      No. 1714241               49

16      Plaintiff's 5   CFX Certificate of Reg.

17                      No. 2639605               49

18      Plaintiff's 6   CDFA Certificate of Reg.

19                      No. 4771896               49

20      Plaintiff's 7   CSFP Certificate of Reg.

21                      No. 3069136               49

22      Plaintiff's 8   Document pertaining to the

23                      CFL mark                  59

24

25

Page 4

1                          I N D E X (Cont'd)

2       EXHIBIT              DESCRIPTION              MARKED

3       Plaintiff's 9    CTP Certified Treasury

4                        Professional & Design

5                        Certificate of

6                        Reg. No. 3016770            61

7       Plaintiff's 10   CNC Certified Nonprofit

8                        Consultant & Design Certificate

9                        of Reg. No. 4067860         62

10      Plaintiff's 11   CFSP Chartered Senior Financial

11                       Planner Certificate of

12                       Reg. No. 3069136            64

13      Plaintiff's 12   CFL Certified Financially

14                       Literate & Design Certificate

15                       Reg. No. 3970928            68

16      Plaintiff's 13   CTP Certified Treasury

17                       Professional & Design

18                       Certificate of

19                       Reg. No. 3016770            68

20      Plaintiff's 14   CFA Institute Certificate of

21                       Reg. No. 4389314            69

22      Plaintiff's 15   CFA Institute Certificate of

23                       Reg. No. 4768863            69

24

25          (Exhibits attached to transcript.)

Page 75

1    plaintiff, things of that nature.

2              I don't know if I opined, and

3    I probably did not, about the strength or

4    weakness of plaintiff's mark, but, certainly,

5    the implication is there with the listing of

6    numerous third-party registrations.

7         Q.   So can you point me to an opinion in

8    your report that you plan to offer at trial?

9              MR. KILARU:  I'd object.  That

10   document speaks for itself.

11             MR. NADING:  Actually, it does not.

12   BY MR. NADING:

13        Q.   Can you point me to a -- a statement

14   in your report, where -- where your opinions are

15   in your report.

16        A.   Well, let me quickly review it.

17        Q.   Take as much time as you need.

18        A.   Well, I think in answer to your

19   question, I would say that it's the significance

20   of what I have done in this report as far as the

21   -- the trial -- trier of fact may look at it,

22   as far as the -- what happened in the history

23   of this case, the fact that the -- there are

24   numerous third-party registrations.  And I

25   had mentioned the DuPont case, the -- the fact

Page 76

1         that third-party registrations are -- have

2         a bearing on the strength or weakness of

3         plaintiff's mark, the fact that the -- the

4         various -- which I mentioned, various

5         third-party registrations issued without any

6         refusals by examining attorneys, I think these

7         are all facts which the trier of fact may want

8         to have before him or her in deciding the

9         ultimate issue in this case.

10                As far as offering an opinion that

11        says, oh, plaintiff's mark is weak because there

12        are a number of third-party registrations here,

13        there are a plethora of them, I never came

14        outright and stated that, but I did certainly

15        make that implication by listing page after page

16        of third-party registrations for related goods

17        and services in the financial servicing

18        industry.

19            Q.   So there are -- there are,

20        potentially, additional opinions that you plan

21        to offer that aren't contained in your report.

22        Is that what you're saying?

23                MR. KILARU:  Objection.

24        Mischaracterizes prior testimony.

25        BY MR. NADING:

Page 77

1          Q.   Is that what you're saying?
2          A.   If called upon to go beyond what I
3     stated, I would do so at trial, yes.  The
4     implications are there.  I mean, why else would
5     I list page after page of third-party
6     registrations unless it has some bearing upon
7     this case.
8          Q.   With all due respect, you've been
9     tendered as an expert in this case, and we'll be
10    dealing with that in the next few weeks.  But,
11    at the moment, we are entitled to know your
12    opinions in your report, and so I'm trying to
13    figure out here in your deposition what opinions
14    you plan -- excuse me, what opinions you have at
15    this moment.  It should -- it -- it's not on us
16    to -- to wait until trial to find out what those
17    opinions are.
18              Are you able to point me in your
19    report to what the opinions are that you
20    anticipate offering at trial, as set out in your
21    report?
22          A.   Well, --
23              MR. KILARU:  Objection.  Asked and
24    answered, and argumentative.
25    BY MR. NADING:

Page 79

1          -- it may or may not be part of the litigation.

2          I would have to review the pleadings to see if

3          -- if that specific mark is also mentioned by

4          itself in the -- in the complaint.

5               Q.   If you'll look at Paragraph 14 of your

6          report.

7                    Do you have it?

8               A.   Yes.

9               Q.   How do you know what the examining

10         attorney did?

11              A.   By reviewing the file and

12         looking at the sheet of paper which indicates

13         the -- the design sear -- the search history

14         information -- the search the examining attorney

15         conducted in this case.

16              Q.   Who was the examining attorney?

17              A.   I forget his name.

18              Q.   Do you know if it was the same

19         examining attorney the entire time?

20              A.   My recollection is it was.  I -- if it

21         was not, I stand corrected.

22              Q.   Were you there with the examining

23         attorney when he was doing what you describe in

24         Paragraph 14?

25              A.   Of course not.

Page 82

1           statements in Paragraph 14?  Are you reading

2           from the prosecution file history?

3                A.   Yes.  Of course.  Reading

4           through the -- the file history of applicant's

5           application, you see what the examining attorney

6           said and you can see what the examining attorney

7           did.

8                Q.   So do you have any independent basis

9           for your statements in Paragraph 14 beyond

10          reading from the prosecution file history here?

11               A.   No.  My statements are based upon

12          the -- the prosecution history and applicant's

13          application, that's correct.

14               Q.   If you'd look at Paragraph 18 of your

15          report, in the -- well, take a minute and tell

16          me when you're ready.

17               A.   Yes.  I have it.

18               Q.   The last sentence in -- in that

19          Paragraph 18 of your report, my question is,

20          what is the purpose of your statement that,

21          quote, the examining attorney handling

22          ARA's application did not cite any of those

23          registrations for applications as confusingly

24          similar to ARA's mark and allow ARA's mark to

25          register?

Page 83

1          A.    The purpose of that statement is just

2     to inform the reader of my report that that

3     happened; the examining attorney conducted a

4     search, no registrations, including those that

5     I listed, turned -- was -- were cited by the

6     examining attorney.

7          Q.    Are you offering any independent

8     -- excuse me, any expert testimony as regards

9     what you characterize as a fact beyond what is

10    ascertainable from the prosecution file history?

11         A.    You would have to rephrase that

12    question.

13         Q.    Is that statement -- the last sentence

14    of Paragraph 18, is that a legal opinion?

15         A.    No.  I'm simply recite -- reciting

16    the fact that the examining attorney didn't cite

17    any registrations, including those listed in

18    the Paragraph 17, as a -- a bar to appli --

19    applicant's mark.  In fact, no registrations

20    were cited at all.

21         Q.    So what -- so what's the purpose of

22    that statement, then, in Paragraph 18?  Why

23    -- why -- why make it?

24         A.    It's for the -- the reader of my

25    report knowing that that's a fact.  Just to

Page 84

1    educate the reader that the examining attorney

2    conducted a search, found no confusingly similar

3    registrations.  I mean, after all, this case at

4    its heart is about likelihood of confusion of

5    plaintiff's mark with the defendant's mark, and

6    in -- indicating that the examining attorney did

7    a search and found no confusingly similar

8    registrations.

9         Q.   And the defendant's mark is what?

10        A.   The mark shown reproduced on Page 4 of

11   my report.  That's the applied-for mark.  That's

12   the mark that's before the Office.

13        Q.   Understood.  And -- and you understand

14   we're here today on a case that's pending in

15   U.S. District Court in the Western District of

16   Virginia, Charlottesville?

17        A.   Yes.

18        Q.   In that same statement in Paragraph

19   18, when you refer to, "Did not cite any of

20   those registrations or applications," you're

21   referring to the chart at Paragraph 17, I

22   assume; is that correct?

23        A.   Yes.

24        Q.   And why those particular registrations

25   or applications, to use your words?

Page 85

1          A.   Well, because I'm listing those

2     third-party registrations as out there, and that

3     the fact that the examining attorney didn't cite

4     any of them or -- or any other registration

5     against the applicant's mark.  It's a statement

6     of fact.

7          Q.   If you look at Paragraph 19 of

8     your report, the last sentence, or the second

9     sentence, I guess, is, "In other words, under

10    USPTO practice and procedure, multiple examining

11    attorneys did not consider marks that differed

12    by only one letter from the plaintiff's

13    registered CFA marks to be conflicting or likely

14    to cause confusion.  Plaintiff also did not

15    oppose any of the above applications."

16          How do you know what the examining

17    attorneys did?

18          A.   We know what an examining attorney

19    did.  We -- we don't know what an examining

20    attorney was thinking.  But, certainly, that's

21    a -- a statement of fact, that the examining

22    attorney -- in none of the third-party

23    registrations was there any refusal on the basis

24    of a prior existing application of registration.

25          Q.   And so similar to the questions I was

Page 86

1           asking a few minutes ago, were you there with

2           any of those examining attorneys when they were

3           making their decisions and issuing their

4           reports?

5                    A.   Of course not.

6                    Q.   So your report -- this statement in

7           your report is based on your reading of the

8           prosecution file history for records before the

9           PTO?

10                   A.   My statement is a conclusion

11          from reviewing the file histories of the

12          third-party registrations, which are cited in

13          Paragraph 17, that no examining attorney refused

14          any of those registrations and -- well, --

15                   Q.   So did you --

16                   A.   -- I'll leave it at that.

17                   Q.   So, I mean, I -- similar que -- same

18          question:  Did you speak with each of those

19          examining attorneys in connection with preparing

20          your report?

21                   A.   Of course not.

22                   Q.   Have you met the examining attorneys?

23                   A.   We're talking about a number of

24          examining attorneys, and I don't recall any

25          of their names except, perhaps, I remember Dom

Page 88

1      recall at all.

2           Q.   Okay.  And you're talk -- no

3      opposition proceedings you mean?

4           A.   That's correct.  In -- in -- including

5      one brought by plaintiff.

6           Q.   In Paragraph 20 of your report you

7      say, "The coexistence of these marks on the

8      Federal Trademark Register also indicates that

9      during prosecution of those registrations the

10     USPTO did not find that any of these numerous

11     registrations conflicted with one another in

12     terms of a likelihood of confusion."

13          Same questions as we've been talking

14     about.  How do you know what the examining

15     attorneys did?

16          A.   We know from the file histories of,

17     I think, all but four of them, where there are

18     search strategies of records, what the examining

19     attorneys searched, and that each of those

20     applications, there was either a first

21     action pub -- publication, or an office action

22     indicating that a search was conducted and

23     no confusingly similar mark was found.

24          Q.   So your statement in Paragraph 20 is

25     based on your review of the prosecution file

Page 101

1          Q.   And in Paragraph 14, there's a

2      statement, it's in the middle of Paragraph 14, I

3      think it's the second sentence, which I'll read

4      it.  It says, "Because ARA's mark has a number

5      of -- let me start over.

6               The quote is, "Because ARA's mark has

7      a number of elements, open paren, the letters

8      NAPA and CF -- and CPFA, the words Certified

9      Plan Fiduciary Advisor, and design elements,

10     that search strategy would be reasonable to

11     retrieve all relevant previously registered and

12     applied-for marks."

13               Do you -- do you see that statement in

14     your report?

15          A.   Yes.

16          Q.   Is that -- is that statement based on

17     your experience as an examining attorney insofar

18     as your conclusion that the examining attorney's

19     search was reasonable?

20               MR. NADING:  Objection.

21               THE WITNESS:  Yes.  I mean, I was an

22     examining attorney, although it was a long time

23     ago, for three or four years, and I've conducted

24     numerous searches.  And in those days we didn't

25     have electronic searches, but we did search,

Page 102

1         by class, in the old paper files.  And we -- I

2         would have searched, in a similar method, the

3         initialism or acronym, NAP -- NAPA, and the --

4         the letters involved, CPFA, and the words, or

5         truncated versions of the words, Certified Plan

6         Fiduciary Adviser.  And then the design element,

7         you would have to, sort of, decide what it was

8         and search that.

9                 In view of the fact that all of those

10        elements are in the mark, yes, I think the

11        examining attorney's search of each of those

12        elements in -- in the electronic system was

13        -- was reasonable -- completely reasonable.

14        BY MR. KILARU:

15             Q.   I want to turn to your earlier

16        testimony in connection with Paragraph 22 of

17        your report, if you could turn to that

18        paragraph.

19             A.   Yes.

20             Q.   Now, I'll just -- for purposes of the

21        record, I'll just read the -- the -- the first

22        sentence of that, which says, "Here, if

23        plaintiff believed that the identification of

24        services for any of the above registrations was

25        broader than the services for which the mark was

Page 104

1          the counterclaim in this case or is that a -- is

2          that an independent fact on its own, the fact

3          that they did not file any restrictions actions

4          against any of these registrations, and -- and,

5          therefore, did not believe, presumably, that any

6          of those marks were confusingly similar?

7                    MR. NADING:  Objection.  Move to

8          strike the question.

9                    The -- Mr. Kilaru, you're testifying,

10         not asking questions.

11                   MR. KILARU:  It's a fair question.

12                   MR. NADING:  No, it's not.  That's

13         entirely inappropriate.  We've noted our

14         objection.

15                   THE WITNESS:  Certainly, the -- the

16         Section 18 comments in my report were prompted

17         by the counterclaim.  But, certainly, they

18         -- they can stand on their own, because, I mean,

19         it's a -- it's a true statement that the

20         plaintiff not only, apparently, did not seek to

21         cancel the registrations, but didn't file any

22         Section 18 restriction.  If the plaintiff

23         thought that those marks were similar and the --

24         the descriptions of goods or services was too

25         broad and needed to be restricted to avoid

Page 105

1          likelihood of confusion, that kind of action is

2          available to a plaintiff.

3       BY MR. KILARU:

4          Q.   I'd like to ask you to turn to

5          Paragraph 25.

6          A.   Yes.

7          Q.   Now, you test -- and I'm referring

8          to Page 75 of the realtime transcript, and you

9          -- you testified, as -- as I -- as I'm reading

10         from the realtime transcript in connection with

11         Page 25, I didn't mean to -- so the question

12         was, "Are you adding anything additional in

13         Paragraph 25, other than reading the pleadings?"

14         And your answer was, "I didn't mean to add

15         anything in addition.  I think I summarized the

16         registrations listed."

17              Now, I want to turn your attention to

18         the penultimate sentence in Paragraph 25, which

19         reads, "Plaintiff's apparent position that even

20         a one-letter difference between the marks can be

21         sufficient to distinguish them is, apparently,

22         consistent with the USPTO position noted above."

23              Is that -- is -- that opinion, as

24         you've stated it there, is that based on your

25         experience as a former Trademark Trial and

Page 106

1          Appeal Board Judge, as well as your experience

2          as a former trademark examining attorney?

3                    MR. NADING:   Objection.   The witness

4          offered no opinions.

5                    MR. KILARU:   Well, the doc -- the

6          document speaks for itself.   Well, let --

7                    MR. NADING:   It sure does.

8     BY MR. KILARU:

9          Q.   Let me ask you, Mr. Simms, that

10         statement that I've just read, "Plaintiff's

11         apparent position that even a one-letter

12         difference between marks can be sufficient to

13         distinguish them, is apparently consistent with

14         the USPTO position noted above," is that -- is

15         that your opinion?

16         A.   Yes.   I mean, it -- it is correct,

17         from a review of what the plaintiff has stated

18         and what the office has done, that those

19         differences did lead to the results that we have

20         seen, that no examining attorney cited any

21         registrations -- when he or she examined the

22         third-party registrations listed, didn't cite

23         any marks that differed by one letter from any

24         of -- of those applied-for marks.   And -- and

25         here we have the plaintiff making comments in

Page 107

1      his response to applicant's motion for summary

2      judgment that var -- various listed marks, which

3      did differ by letters, were easily

4      distinguishable from its mark based upon the

5      marks and/or goods and services.

6                    So the statement is based on the marks

7      and/or goods and services, so I think it's a

8      fair statement to make that that appears to be

9      the apparent position of the Office and the

10     -- and the plaintiff.

11                   MR. KILARU:  Thank you.

12                   Subject to any further questions from

13     Mr. Nading, I don't have any other questions.

14                   MR. NADING:  So I do have some

15     follow-up questions here.

16                        FURTHER EXAMINATION

17     BY MR. NADING:

18          Q.   Mr. Simms, when were you an examining

19     attorney?

20          A.   1972 to 1975 or 6.  I hope I have the

21     years right.

22          Q.   Your -- your resume, Exhibit 1 to your

23     report, says '72 to '75.  Does that sound right?

24          A.   That sounds right.

25          Q.   And you graduated from -- or you got

Page 110

1          motion that was filed in a matter between the

2          parties to this case?

3               A.   Yes.  I know it was not.  It was filed

4          between plaintiff and the -- the entity that

5          owns the CDFA mark.

6               Q.   And you know that based on reading the

7          pleadings; is that correct?

8               A.   The pleadings?

9               Q.   How do you know that?

10               A.   Because I reviewed that document, and

11          it was not between plaintiff and the -- the ARA

12          or any of the defendants in this case.  It was

13          between plaintiff and the entity that owns the

14          CDFA mark, which I believe is one of the marks

15          listed in the Paragraph 17.

16               Q.   Looking at the penultimate sentence in

17          Paragraph 25, "Plaintiff's apparent position

18          that even a one-letter difference between marks

19          can be sufficient to distinguish them is

20          apparently consistent with the USPTO position

21          noted above," we talked about this at length

22          earlier, as well, when I was asking you

23          questions, what is your basis for -- for

24          commenting on plaintiff's apparent position?

25               A.   The fact that plaintiff, for example,

Page 111

1          stated that those marks listed earlier in

2          Paragraph 25 were easily distinguishable from

3          its mark based upon the marks and/or the goods

4          and services.  It's a statement from plaintiff

5          saying that those marks listed were easily

6          distinguishable based upon the marks and/or

7          goods and services.

8              Q.   So are you purporting to testify as to

9          what plaintiff's position is?

10             A.   That's not my intention.  My intention

11         is just to summar -- my summary of what has

12         happened in this case, including some -- my

13         summation of what happened as a result of

14         plaintiff's statements; that those marks were

15         ease -- easily distinguishable.

16             Q.   What is --

17             A.   And --

18             Q.   What is your basis -- I'm sorry.  I

19         didn't mean to cut you off.

20             A.   Well, that's why I said "apparent

21         position."  We don't know what's in plaintiff's

22         mind.  So, apparently, they were taking the

23         position that those marks were easily

24         distinguishable.  And why were they

25         distinguishable?  They all seemed -- they're

Page 112

1          not identical, but they all differ by one or

2          more letters from plaintiff's mark.

3                  Q.   So is it fair to say that you're

4          speculating about plaintiff's position?

5                  A.   I'll let the words speak for

6          themselves.

7                  Q.   Does the word opinion appear in your

8          report?

9                  A.   I don't know if it does or not.

10                 MR. NADING:   I don't have any further

11         questions, subject to Mr. Kilaru.

12                 MR. KILARU:   No.   No other questions

13         here.   Thank you.

14                 MR. NADING:   Thank you, Mr. Simms.

15                 THE WITNESS:   You're welcome.

16                 THE VIDEOGRAPHER:   We're going to go

17         off the video record.   The time is 12:55 p.m.,

18         and this concludes today's testimony given by

19         Rany Simms.   The total number of media disks was

20         two and will be retained by Veritext Legal

21         Solutions.

22                 (Deposition concluded -- 12:55 p.m.)

23

24

25

**CFA Institute V. American Society of Pension Professionals & Actuaries, et al.,
C.A. 3:19-cv-00012-NKM-RSB (W.D. Va.)**

**Errata to Deposition of Rany Simms
Taken May 1, 2020**

| Page | Line Number | Change | Reason |
|---|---|---|---|
| 36 | 9 | Paragraph 4 → Paragraph 12 | It's on page 4 but para. 12 |
| 46 | 6 | run/went → went through | should be "went through" |
| 47 | 12-13 | the sum → that some | should be "that some" |
| 60 | 21-22 | commercial and its impressions → commercial impression | obvious |
| 76 | 17 | servicing → services | should be "services" |
| 78 | 8 | six DuPont factors → sixth DuPont factor | obvious |

Rany Simms

1

Page 116

1   CFA Institute v. American Society Of Pension

        Professionals & Actuaries Et Al

2   Rany  Simms (#4080639)

3           ACKNOWLEDGEMENT OF DEPONENT

4      I, Rany  Simms, do hereby declare that I

5   have read the foregoing transcript, I have made any

6   corrections, additions, or changes I deemed necessary as

7   noted above to be appended hereto, and that the same is

8   a true, correct and complete transcript of the testimony

9   given by me.

10

11  _____          May 18, 2020

12  Rany  Simms                    Date

13  *If notary is required

14                  SUBSCRIBED AND SWORN TO BEFORE ME THIS

15  _____ DAY OF _____, 20___.

16

17

18  _____

19  NOTARY PUBLIC

20

21

22

23

24

25